UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

JOSEPH CRACCO,

                                        Plaintiff,

                                                                        14-cv-8235 (PAC)

                    - against -

                                                              **AMENDED COMPLAINT**

THE CITY OF NEW YORK, Police Officer
JONATHAN CORREA, Shield 7869, Transit Division
District 4, Police Officer JOHN DOE (a fictitious name),
and CYRUS R. VANCE,  JR., in his official capacity as
District Attorney for the County of New York,

                                        Defendants.

----------------------------------------------------------------------X

        Plaintiff, JOSEPH CRACCO, by his attorney, James M. Maloney, as and for his

complaint against the above-named defendants, declares as follows:


                                    **PARTIES**

        1. At the commencement of this action and at all times hereinafter mentioned, Plaintiff

was a natural person, a citizen of the United States, and a resident of the State of New York, the

City of New York, and the County of New York.  Plaintiff is originally from the State of Iowa,

was 27 years old at the time of his arrest, and had come to the City of New York to work as a

chef, where he has since been so employed on a regular basis.  Plaintiff is currently employed in

the City and County of New York.

        2. Defendant THE CITY OF NEW YORK is a municipal corporation organized under the

laws of the State of New York, and maintains the New York City Police Department ("NYPD"),

including the Transit Division thereof.  NYPD is a duly authorized public authority and/or police

department, authorized to perform all functions of a police department as per the applicable

sections of the New York State Criminal Procedure Law, acting under the direction and

supervision of defendant THE CITY OF NEW YORK.  NYPD is responsible for the

appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

3. Defendant Police Officer JONATHAN CORREA, Shield 7869, was, at all times relevant herein, an officer, employee and agent of the NYPD, assigned to Transit Division District 4. Defendant JONATHAN CORREA is sued in his individual and official capacities.

4. At all times relevant herein, Defendant Police Officer JOHN DOE was a police officer, detective or supervisor employed by the NYPD. Plaintiff does not know the real name and/or shield number of Defendant Police Officer JOHN DOE. Defendant JOHN DOE is sued in his individual and official capacities.

5. Defendant CYRUS R. VANCE, JR. ("VANCE") is sued solely in his official capacity as District Attorney for the County of New York, in which capacity he is responsible for executing and administering the laws of the State of New York, including §§ 265.00(5) and 265.01(1) of the Penal Law. VANCE has enforced §§ 265.00(5) and 265.01(1) of the Penal Law against Plaintiff for possession of a so-called "gravity knife" and is the person responsible for the potential prosecution of Plaintiff under those criminal statutes in the future. VANCE is sued herein for the purpose of seeking declaratory judgment as to the applicability of said statutes to Plaintiff's future possession of a folding knife similar or identical to the folding knife that was in Plaintiff's possession on the Date of Arrest (defined at paragraph 10, *infra*) and for the purpose of securing the return of that property to Plaintiff.

## JURISDICTION AND VENUE

6. This action arises under the Constitution of the United States and is accordingly brought pursuant to the provisions of 42 U.S.C. §§ 1983 *et seq*.

7. This Court has subject matter jurisdiction over the federal causes of action stated herein pursuant to 28 U.S.C. § 1331, and has the power to render declaratory judgment and further relief pursuant to the provisions of 28 U.S.C. §§ 2201-2202. This Court has supplemental jurisdiction over the state law claim arising out of the same events pursuant to the provisions of

28 U.S.C. § 1367.  This action is also brought pursuant to the provisions of 42 U.S.C. § 1983.

8. Venue is properly placed in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b).

## CONTINUATION OF JURY DEMAND

9. Plaintiff has demanded and continues to demand a trial by jury in this action.

## BACKGROUND

10. On or about October 18, 2013 (the "Date of the Arrest"), at or about 4:00 p.m., Plaintiff was commuting in and through the City of New York by subway in the company of Jared Sippel ("Sippel"), who is not a party to this action.

11. Plaintiff and Sippel at the time were employed by the same restaurant as chefs.  Sippel was the chef and Plaintiff was the sous-chef, i.e., Sippel's assistant.  Because the restaurant was in the process of starting up operations, Plaintiff during that time-frame was opening boxes of foods, seasonings, utensils and cookware with great frequency during the course of his typical workday, and had on his person, clipped to the inside of his pants pocket, an ordinary folding knife, specifically a Spyderco® Endura 4, which he used at work for the purpose of quickly opening such boxes and for other routine tasks.

12. Plaintiff did not believe on October 18, 2013, and does not believe as of the date hereof, that the folding knife in his possession, which he had used for the above-described purposes but never as a weapon or to threaten or menace anyone, was or is truly illegal to possess in the State of New York or in the City of New York.

13. While Plaintiff and Sippel were commuting through the subway station at Madison Avenue and East 42nd Street in the County, City, and State of New York at the above-described time and date, Defendant JONATHAN CORREA ("CORREA") approached Plaintiff.

14. At the aforementioned date, time, and place, neither Plaintiff nor Sippel were engaging in, nor had either of them engaged in, any disorderly, improper, or suspicious conduct.

15. At the aforementioned date and place, CORREA asked Plaintiff if he had a knife in his pants pocket, having seen the clip visible at the exterior of Plaintiff's pocket.

16. Plaintiff responded in the affirmative, and CORREA thereafter seized the folding knife from Plaintiff's pants pocket.

17. CORREA thereafter attempted repeatedly to open the knife by flicking his wrist suddenly, forcibly, and with an abrupt reversal of direction, while holding the folding knife by the handle in one hand.  For the first few attempts, CORREA was completely unable to open the folding knife by that means, so he increased the amount of force and speed that he imparted to the folding knife.  Eventually the folding knife swung into an open position.  CORREA tried four or five times to open the folding knife by that means before the folding knife finally swung open. CORREA did not try to open the folding knife again after that.

18. CORREA then arrested Plaintiff for possession of a "gravity knife," handcuffing Plaintiff in public and within the plain view of Sippel and of many other persons, taking Plaintiff into custody and searching his person, depriving Plaintiff of his liberty, and resulting in Plaintiff's being subjected to intentional infliction of mental distress and reckless, threatening behavior by Police Officer JOHN DOE ("DOE") while Plaintiff was being transported to Central Booking, as is more fully described herein.

19. While Plaintiff waited for the police vehicle that would transport him to Central Booking, Plaintiff was kept underground below street level at a dirty location with his hands cuffed behind his back.  He was taken up to the street, still handcuffed, some time thereafter.

20. DOE was the driver of the police vehicle that transported Plaintiff to Central Booking. Plaintiff was placed in the back seat of the vehicle, still handcuffed with his hands behind his back in an uncomfortable and at times painful position, with CORREA sitting next to him. Plaintiff was not protected in the event of a collision by any seat belt or air bags. Throughout the ride at high speed through city traffic, DOE repeatedly turned around to face Plaintiff and/or CORREA while driving, looking away from the road and from his driving task in an unprofessional and dangerous manner, to utter loud comments, disturbing questions, and lewd

and/or violent suggestions.  For example, at one point, when a bicyclist was on the road ahead of them, DOE turned around and shouted: "Should I hit him and splatter his brains all over the road?"  At another point, when a young female pedestrian was in view, DOE turned around and said: "I'd like to fuck her in the ass!"  Plaintiff was frightened, shocked, and disturbed by DOE's behavior, and in reasonable fear for his own safety by virtue of DOE's aberrant behavior and failure to keep his eyes on the road and by virtue of the fact that Plaintiff had no seat belt or other restraint system to protect him in the event of a collision.

21. At Central Booking, Plaintiff was placed in a locked cell and deprived of liberty for several more hours.


## THE UNLAWFULNESS OF THE ARREST AND CORREA'S OTHER CONDUCT

22. As more fully appears herein, see, e.g., paragraph 36(d) at page 8, *infra*,  the New York Court of Appeals had explained some four years prior to CORREA's arrest of Plaintiff and execution of the Misdemeanor Complaint that a "gravity knife," as distinguished from other folding knives, is one that can ***readily*** be opened by gravity or centrifugal force.

23. CORREA nonetheless arrested Plaintiff for the mere possession of a folding knife that could ***not*** readily be opened by gravity or centrifugal force.

24. Given the attributes of the folding knife in Plaintiff's possession, CORREA thus arrested Plaintiff unlawfully and/or without probable cause to have done so.

25. Further, CORREA made no reference whatsoever in the accusatory instrument to any training or experience that may have provided a basis for his having formed the belief that the folding knife observed in Plaintiff's possession was a "gravity knife," despite the fact that it could not readily be opened by gravity or centrifugal force, even though reference to such training and experience was and is required by law, as more fully appears herein.

26. CORREA has subsequently arrested another individual for wearing a ring that CORREA treated as prohibited "metal knuckles," charging that individual with violation of both § 265.01(1) of the Penal Law (possession of a *per se* prohibited weapon not requiring any

showing of intent to use the weapon) and § 265.01(2) of the Penal Law (possession of a weapon with intent to use the same unlawfully against another), the latter solely on the basis of that individual's answer to CORREA's hypothetical question about whether the ring could be used to hurt someone, and not on the basis of any actual culpable conduct on the part of the arrestee. Similarly, Plaintiff engaged in no disorderly or otherwise illegal conduct, but simply had the folding knife in his possession, clipped inside his pants pocket with the clip visible, when CORREA approached and arrested him as hereinbefore described.

27. Plaintiff did not admit that he could possibly hurt someone with the knife when CORREA asked him such hypothetical questions, and was thus spared an additional criminal charge under § 265.01(2) of the Penal Law.

## THE MISDEMEANOR COMPLAINT

28. On or about November 13, 2013, CORREA executed a Misdemeanor Complaint, setting forth in substance the foregoing facts relating to time, place, and seizure of the folding knife from Plaintiff, and stating that "factual basis for the charge" was as follows:  "I took one gravity knife from defendant's pants pocket.  I know that the knife was a gravity knife because I opened the knife with centrifugal force by flicking my wrist while holding the knife, thereby releasing the blade which locked into place by means of an automatic device that did not require manual locking."  A true copy of the Misdemeanor Complaint is annexed hereto as **Exhibit A** and incorporated by reference herein.

29. In the Misdemeanor Complaint, CORREA omitted any mention that he had tried four or five times to open the folding knife by the wrist-flick maneuver before the folding knife opened.

30. Annexed hereto as **Exhibit B** and incorporated by reference herein is a true copy of the Affidavit of Jared Sippel executed on April 22, 2014, corroborating the allegations made in paragraph 17, above, and further relied upon in the foregoing paragraph (i.e., that it had taken CORREA multiple attempts to get the knife to open by means of a series of ever-more-forceful

"wrist-flick" maneuvers).

31. In the Misdemeanor Complaint, CORREA did not make any reference whatsoever to any training or experience that may have provided a basis for his having formed the belief that the object observed in Plaintiff's possession was a gravity knife. Specifically, CORREA did not indicate whether he had been trained that a given knife is a "gravity knife" even if it cannot readily be opened by a single "wrist-flick," but, rather, requires several attempts to open by that means.

## THE CRIMINAL PROSECUTION OF PLAINTIFF

32. As a result of CORREA's arrest of Plaintiff and execution of the Misdemeanor Complaint, Plaintiff was required to make numerous criminal court appearances, which disrupted his life significantly, including by causing him to bear the stigma of being a criminal defendant and by causing him to miss work and to have to explain his absence. Specifically, subsequent to CORREA's execution of the Misdemeanor Complaint, Plaintiff was required to appear, and did appear, at the following courts and dates, each of which required several hours on each day: one appearance in the Midtown Community Court on December 9, 2013, and four appearances at the Criminal Court of the City of New York in the County of New York on February 3, 2014, March 26, 2014, May 14, 2014, and July 8, 2014.

33. Plaintiff was initially represented by Legal Aid, but on January 24, 2014, Plaintiff received a telephone call from Legal Aid informing him that because he earned more than 350 dollars per week he could no longer be represented by Legal Aid. Plaintiff was unable to secure retained criminal defense counsel in time for the February 3, 2014, appearance, and appeared in person on time and appropriately dressed, but greatly fearful of the possible consequences of his not having obtained criminal defense counsel. The matter was adjourned by the Honorable Erika Edwards until March 26, 2014.

34. On or about March 18, 2014, Plaintiff retained the undersigned as his criminal defense counsel.

35. At the March 26, 2014, appearance, Plaintiff, through counsel, requested the

opportunity to move to dismiss the Misdemeanor Complaint on grounds of insufficiency and unconstitutionality.  A deadline of April 28, 2014, was ordered by the Honorable Erika Edwards for service of Plaintiff's moving papers, with the next appearance and the deadline for papers in opposition ordered as May 14, 2014.

36. On or about April 25, 2014, Plaintiff, through counsel, formally moved pursuant to §§ 170.30 and 170.35 of the New York Criminal Procedure Law to dismiss the Misdemeanor Complaint, arguing, *inter alia*, the following points:

(a)       that in *People v. Dreyden*, 15 N.Y.3d 100, 905 N.Y.S.2d 542 (2010), the New York Court of Appeals had held as follows:

A conclusory statement that an object recovered from a defendant is a gravity knife does not alone meet the reasonable cause requirement. An arresting officer should, *at the very least*, explain briefly, *with reference to his training and experience*, how he or she formed the belief that the object observed in defendant's possession was a gravity knife.

15 N.Y. at 104, 905 N.Y.S.2d at 544 (emphasis added).

(b)       that the Court of Appeals had thus made it abundantly clear that an arresting officer's accusatory instrument charging a defendant with possession of a gravity knife must "at the very least" refer to the arresting officer's "training and experience" in establishing that the knife was a gravity knife (as opposed to many other kinds of knives, the *per se* possession of which has not been banned by statute).

(c)       that the Misdemeanor Complaint made no reference whatsoever to CORREA's training or experience, if any, and that it was therefore defective, even jurisdictionally so, under the express holdings of *Dreyden*.

(d)       that such defect went to the heart of the very issue that the Court of Appeals was addressing in *Dreyden*, as evidenced by the part of the Court's opinion that reads:

Not every knife is a weapon for purposes of Penal Law § 265.01(1), which specifically outlaws possession of a gravity knife, among other weapons. The Penal Law defines a gravity knife as one with a blade that (1) "is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force" and that (2) "when released, is locked in place by means of a button, spring,

lever or other device" (Penal Law § 265.00 [5]). This definition **distinguishes gravity knives** from certain folding knives that cannot **readily** be opened by gravity or centrifugal force . . .

*People v. Dreyden*, 15 N.Y. at 103-04, 905 N.Y.S.2d at 544 (emphasis added).

(e)    that it logically flows from the above-quoted passage that a folding knife that cannot be *readily* opened by gravity or centrifugal force is not a gravity knife.

(f)    that the Misdemeanor Complaint neither referred to any training and experience nor to any observation on CORREA's part that the knife could "readily" be opened by centrifugal force, CORREA having stated only: "I know that the knife was a gravity knife because I opened the knife with centrifugal force by flicking my wrist while holding the knife."  The Misdemeanor Complaint thus not only failed to indicate whether CORREA had ever had any training provided by the City of New York in identifying and applying the standards articulated by the Court of Appeals some three years earlier in *Dreyden*, but also failed to indicate how many times CORREA had to try to get the knife to open against its natural tendency to remain closed (a tendency not shared by true gravity knives, which, as the Court of Appeals has explained, must open "readily").

(g)    that the Court of Appeals in *Dreyden* reduced the vagueness in the statutory definition ("any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device," New York Penal Law § 265.00(5)), both (1) by requiring that the arresting officer explain, with reference to his training and experience, how he or she formed the belief that the object observed in defendant's possession was a gravity knife and (2) by interpreting the definition to impose the requirement that a "gravity knife" be one capable of *readily* being opened by gravity or centrifugal force.

(h)    that the void-for-vagueness doctrine is not only a due process principle giving rise

to a federal constitutional right, but is also an even more fundamental and historically more ancient principle of criminal justice.

37. At the May 14, 2014, appearance, the People served and handed up papers in opposition to the motion, following which Plaintiff, through counsel, requested the opportunity to submit a reply.  That request was granted by the Honorable Erika Edwards, with the next appearance ordered for July 8, 2014.

38. At the May 14, 2014, appearance, the Honorable Erika Edwards specifically indicated, "I'd like everybody to come back for decision on July 8th," and "July 8, 2014, for disposition."  A true copy of the transcript of the May 14, 2014, appearance is annexed hereto as **Exhibit C** and incorporated by reference herein.

39. On or about May 16, 2014, Plaintiff, through counsel, served and filed his reply brief. True copies of Plaintiff's main brief, the People's affidavit in response, and Plaintiff's reply brief on the motion are annexed hereto as **Exhibit D** and are incorporated by reference herein as if fully set forth herein, except that Plaintiff disavows certain statement made in the People's affidavit in response as detailed more fully in Plaintiff's reply brief.

40. Much to the surprise and worry of Plaintiff and his counsel, at the July 8, 2014, appearance there was no decision or disposition on the motion, as had been clearly indicated on the record at the prior appearance would be the case.  Nor was the Honorable Erika Edwards present in the courtroom, with the Honorable Kevin McGrath instead presiding and apparently knowing nothing of the motion.  Yielding to, among other things, the uncertainties engendered thereby, the reasonable loss of confidence in the state criminal justice system, the continuing stigma of being a criminal defendant, and the ongoing costs and losses inherent in such status (see paragraph 32, above, for a partial list thereof), Plaintiff, on July 8, 2014,  pleaded guilty to disorderly conduct, a violation, in satisfaction of the sole charge recited in the Misdemeanor Complaint, although Plaintiff had not engaged in any disorderly conduct whatsoever on October 18, 2013, the day the folding knife was seized from him by CORREA, and Plaintiff made no

allocution to the effect that he had engaged in any disorderly conduct.

41. Plaintiff's folding knife, a Spyderco® Endura 4, has never been returned to him.

## PLAINTIFF'S STANDING TO SUE FOR DECLARATORY JUDGMENT

42. Plaintiff no longer dares to use any lockable[1] folding knife to open boxes of foods, seasonings, utensils and cookware, etc. while working in his chosen career as a chef within the City of New York because, if found with any lockable folding knife in his possession, he might again be arrested and deprived of liberty, might again be subjected to such intentional infliction of mental distress and reckless behavior as were exhibited by DOE, and might again suffer the stigma of being a criminal defendant requiring retained counsel and bearing the associated ongoing costs and losses.  Plaintiff reasonably believes, based on his experience as hereinbefore described, that he could all too easily once again be prosecuted for possession of a "gravity knife" for having any ordinary lockable folding knife (including a proper work tool) if only one of the thousands of NYPD officers employed by the City of New York were to be able to open that folding knife only once after repeatedly attempting to "flick" it open, even if Plaintiff himself were not able to open the knife by that means no matter how many times he tried.

43. Because Plaintiff was charged with a Class A misdemeanor for the simple possession of an ordinary folding knife that could not be readily opened by gravity or centrifugal force, Plaintiff must reasonably either: (1) forgo possession of any ordinary folding knife that might possibly be opened by a "wrist-flick" maneuver, even after several failed attempts by an arresting officer and even if Plaintiff himself cannot open a given knife in that manner, making it

---

[1] The term "lockable" as used above means capable of being locked in the open position, reflecting the statutory definition's requirement, as clarified by the Court of Appeals, that a "gravity knife," after it has *readily* been opened by the force of gravity or centrifugal force, is then "locked in place by means of a button, spring, lever or other device."  Obviously, a folding knife that does not lock in place in the open position is dangerously ill-suited for the intended use of cutting open packages because it could easily close and cut the user's fingers during such use.

impossible to identify which knives he may lawfully possess; or (2) risk being the target of another prosecution for "gravity knife" possession for possessing an ordinary folding knife even though it reasonably appears not to be a prohibited "gravity knife."

44. Plaintiff still wishes to possess an ordinary folding knife for work use and for other practical purposes, provided that he may do so lawfully.  Thus, Plaintiff is forced to choose between risking further criminal prosecution and forgoing conduct that should not, under constitutionally significant and established principles of the "as applied" vagueness doctrine, see paragraph 36, *supra*, give rise to criminal prosecution.  Plaintiff is thus caught "between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding," *Steffel v. Thompson*, 415 U.S. 452, 462 (1974), and has standing to seek appropriate declaratory judgment.

45. Although a recent case in this District, *Knife Rights, Inc. et al. v. Vance et al.*, 11 Civ. 3918 (KBF), 2013 WL 5434610 (S.D.N.Y., Sept. 25, 2013) (currently on appeal and docketed before the Second Circuit as 13-4840-cv), has held that the individual plaintiffs lacked standing to seek declaratory judgment as to the applicability of the vague-as-applied doctrine to prospective future prosecutions involving so-called "gravity knives," that decision was based in part on the failure of those individual plaintiffs to have moved to dismiss the criminal charges against them on vagueness grounds before seeking redress in federal court, 2013 WL 5434610 at *4 ("But no Plaintiff moved to dismiss the charges on the basis that the provisions in question were unconstitutionally vague.").  The Plaintiff here, in contrast, has done so, see paragraph 36, *supra*, and Exhibit D.

46. The District Court's decision in *Knife Rights, Inc. et al. v. Vance et al.* also held that the individual plaintiffs lacked standing because "Plaintiffs fail[ed] to describe with specificity the nature of the knives they wish[ed] to own or the injury caused by their inability to do so." 2013 WL 5434610 at *4.

47. This Plaintiff specifically wishes to continue to own the very knife that was taken from him on the Date of the Arrest, i.e., a Spyderco® Endura 4 folding knife, and herein seeks the specific relief that that particular knife be returned to him, see paragraphs 75-76, *infra*. Alternatively, Plaintiff wishes to own and possess a different Spyderco® Endura 4 folding knife or any other folding knife that has the following three specific characteristics: (a) a bias toward closure, by which is meant a natural tendency to remain in the closed position (which is an attribute of the Spyderco® Endura 4 folding knife); (b) a "lockable" blade as defined in footnote 1, *q.v.*, for the safety reasons stated therein; and (c) the inability to be readily be opened by gravity or centrifugal force.

48. If deprived of the ability to own and possess such a folding knife, as he currently is, Plaintiff now suffers and in the future would suffer concrete and redressable injuries by virtue of his being prohibited from possessing a tool reasonably needed for his work, especially given that the prohibition on *per se* prohibited "weapons" such as "gravity knives" set forth at section 265.01(1) of the Penal Code applies to possession at any location, whether in public or in one's home or place of work.

## FIRST CAUSE OF ACTION

49. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 48 as if fully set forth herein.

50. CORREA, acting under color of state law, falsely arrested Plaintiff, charging him with a misdemeanor without probable cause to have done so, and thereafter searching and detaining him, all in violation of the Fourth and Fourteenth Amendments.

51. The false arrest, search, and detention have caused and/or continue to cause Plaintiff deprivation of his liberty, psychological pain and suffering, mental anguish, humiliation, reputational injury, and other losses.

## SECOND CAUSE OF ACTION

52. Plaintiff repeats and realleges each and every allegation set forth in the foregoing

paragraphs 1 through 48 as if fully set forth herein.

53. DOE and CORREA, acting under color of state law, used unreasonable force against Plaintiff under the circumstances by putting him in reasonable fear of being injured by DOE's dangerous and distracted driving of the police vehicle that was used to transport Plaintiff while Plaintiff was required to sit in the back seat handcuffed with his hands behind his back and not protected in the event of a collision by a seat belt or air bags.

54. The use of unreasonable force against Plaintiff under the circumstances has caused and/or continue to cause Plaintiff fear, psychological pain and suffering, mental distress, and other losses.

## THIRD CAUSE OF ACTION

55. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 48 as if fully set forth herein.

56. DOE intentionally inflicted mental distress upon Plaintiff by putting him in fear that he and/or others would be injured by DOE's dangerous driving of the police vehicle that was used to transport Plaintiff and by DOE's suggestions of intended violent and/or lewd acts.

57. This Third Cause of Action is brought under this Court's supplemental jurisdiction as provided at 28 U.S.C. § 1367.

## FOURTH CAUSE OF ACTION

58. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 48 as if fully set forth herein.

59. Up to and including the Date of the Arrest, Defendant THE CITY OF NEW YORK and/or the NYPD ***had***, following the *People v. Dreyden* decision in 2010, adequately and appropriately trained CORREA that gravity knives are distinguishable from folding knives that cannot readily be opened by gravity or centrifugal force.

60. CORREA nonetheless disregarded or ignored that training and failed to make note of it in the Misdemeanor Complaint, subjecting him to individual liability.

61. This Fourth Cause of Action is pleaded in the alternative to the Fifth and Sixth Causes of Action, and incorporates by reference the deprivation of Plaintiff's constitutional rights alleged in the First, Second, Seventh, and Eighth Causes of Action.

## FIFTH CAUSE OF ACTION

62. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 48 as if fully set forth herein.

63. Up to and including the Date of the Arrest, Defendant THE CITY OF NEW YORK and/or the NYPD **_had not_**, following the *People v. Dreyden* decision in 2010, adequately and appropriately trained CORREA that gravity knives are distinguishable from folding knives that cannot readily be opened by gravity or centrifugal force.

64. Such failure of the Defendant THE CITY OF NEW YORK and the NYPD to train their employees, in light of the holdings of *People v. Dreyden*, amounts to deliberate indifference to the constitutional rights of others, *see, e.g., City of Canton v. Harris*, 489 U.S. 378, 385 (1989), giving rise to a *Monell* claim cognizable at law.

65. This Fifth Cause of Action, together with the Sixth Cause of Action, are pleaded in the alternative to the Fourth Cause of Action, and incorporate by reference the deprivation of Plaintiff's constitutional rights alleged in the First, Second, Seventh, and Eighth Causes of Action.

## SIXTH CAUSE OF ACTION

66. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 48 as if fully set forth herein.

67. Up to and including the Date of the Arrest, Defendant THE CITY OF NEW YORK and/or the NYPD had, notwithstanding the statutory definition as interpreted by the Court of Appeals in the *People v. Dreyden* decision in 2010, trained CORREA and/or other NYPD officers that gravity knives need not be distinguished from folding knives that cannot readily be opened by gravity or centrifugal force, but that any folding knife that locks in the open position

may be the basis for an arrest for misdemeanor possession of a gravity knife provided that the arresting officer eventually succeeds in opening the knife by centrifugal force, even if the knife is not capable of being *readily* opened in that manner.

68. Such deliberate wrongful training by Defendant THE CITY OF NEW YORK and/or the NYPD, which  Defendant THE CITY OF NEW YORK maintains, of their employees amounts to a municipal policy or custom, the existence of which had a causal connection to the deprivation of Plaintiff's constitutional rights, *see, e.g., Sarus v. Rotundo*, 831 F.2d 397, 400 (2d Cir. 1987), giving rise to a *Monell* claim cognizable at law.

69. This Sixth Cause of Action, together with the Fifth Cause of Action, are pleaded in the alternative to the Fourth Cause of Action, and incorporates by reference the deprivation of Plaintiff's constitutional rights alleged in the First, Second, Seventh, and Eighth Causes of Action.

## SEVENTH CAUSE OF ACTION

70. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 48 as if fully set forth herein.

71. Defendant THE CITY OF NEW YORK and the NYPD owed a duty of care to Plaintiff to prevent the injuries sustained by him.

72. CORREA and/or DOE were unfit and/or incompetent for their positions.

73. Defendant THE CITY OF NEW YORK was negligent in its hiring and/or retention of CORREA and/or DOE, which negligence proximately caused some or all of Plaintiff's injuries.

74. This Seventh Cause of Action incorporates by reference the deprivation of Plaintiff's constitutional rights alleged in the First, Second, Fourth through Sixth, and Eighth Causes of Action.

## EIGHTH CAUSE OF ACTION

75. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 48 as if fully set forth herein.

76. Defendants have seized from Plaintiff's person, and continue to deprive Plaintiff of, his personal effect and property (namely, the folding knife that was in his possession and was seized from him on the Date of the Arrest) without due process of law, in violation of the Fourth and Fifth Amendments to the United States Constitution.

### NINTH CAUSE OF ACTION[2]

77. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 76 as if fully set forth herein.

78. As Plaintiff argued and supported in his motion to dismiss the Misdemeanor Complaint (which was never decided), the void-for-vagueness doctrine is not only a due process principle giving rise to a federal constitutional right under the Due Process Clause of the Fourteenth Amendment, but is also an even more fundamental and historically more ancient principle of criminal justice long recognized and applied in the State of New York.

79. If a given folding knife cannot reliably be opened by a police officer's "wrist-flick" maneuver, which reasonably means that it must open by such means on the first and virtually every attempt to do so, it is not capable of being "readily" opened by gravity or centrifugal force as required under *People v. Dreyden*, and cannot, under principles of due process including the void-for-vagueness doctrine, give rise to a criminal prosecution for possession of a "gravity knife."

80. Accordingly, Plaintiff seeks, in this cause of action, as against Defendant VANCE and his successor(s) in their official capacity, a declaration that §§ 265.00(5) and 265.01(1) of the Penal Law of the State of New York, which define the simple possession of a "gravity knife" as a crime, are void for vagueness as applied to criminal prosecutions for the simple possession of any folding knife that has the following three specific characteristics: (a) a "bias toward closure"

---

[2] This Ninth Cause of Action, and VANCE in his official capacity as the named defendant necessary in order to plead it, have been added subsequent to the filing of the initial Complaint (ECF Document 2).

as defined at paragraph 47, *supra*; (b) a "lockable" blade as defined in footnote 1, *supra*; and (c) the inability to be readily be opened by gravity or centrifugal force, with the specific finding of law in connection with this last characteristic that any knife that does not open by means of a "wrist-flick" test on the first attempt to do so cannot be readily opened by gravity or centrifugal force and therefore cannot be the basis for a criminal prosecution for mere possession under §§ 265.00(5) and 265.01(1) of the Penal Law of the State of New York.

   **WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

   (a) on the First through Fourth Causes of Action against Defendants CORREA and DOE, compensatory and punitive damages in an amount to be determined at trial;

   (b) on the Fifth through Seventh Causes of Action as against Defendant THE CITY OF NEW YORK, compensatory damages in an amount to be determined at trial;

   (c) on the Eighth Cause of Action as against all Defendants jointly and severally, compensatory damages in an amount to be determined at trial, or, in the alternative, an Order compelling said Defendants to return Plaintiff's property to him;

   (d) on the Ninth Cause of Action, a declaration that §§ 265.00(5) and 265.01(1) of the Penal Law of the State of New York, which define the simple possession of a "gravity knife" as a crime, are void for vagueness as applied to criminal prosecutions for the simple possession of any folding knife that has the following three specific characteristics: (a) a "bias toward closure" as defined at paragraph 47, *supra*; (b) a "lockable" blade as defined in footnote 1, *supra*; and (c) the inability to be readily be opened by gravity or centrifugal force, with the specific finding of law in connection with this last characteristic that any knife that does not open by means of a "wrist-flick" test on the first attempt to do so cannot be readily opened by gravity or centrifugal force and therefore cannot be the basis for a criminal prosecution for mere possession under §§ 265.00(5) and 265.01(1) of the Penal Law of the State of New York;

   (e) reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

   (f) such other, further, and different relief as this Court may deem just and proper.

Dated: February 17, 2015
   Port Washington, New York

             _____/s_____
             JAMES M. MALONEY (JM-5297)
             *Attorney for Plaintiff*
             33 Bayview Avenue
             Port Washington, NY 11050
             (516) 767-1395