Exhibit D

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK   :

                                         :          **2013CN009690**

                - against -         :

                                         :

Jospeh Cracco,

                       Defendant.       :

-------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
The Court of Appeals Requirements As Set Forth in *People v. Dreyden* . . . . . . . . . . . . . . . . 2
The Sippel Affidavit, and the Federal Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
The Void-For-Vagueness Doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Introduction

      The Defendant is accused of violation of Penal Law § 265.01(1) for possession of a "gravity knife," which is defined as "any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device." *Id.* at § 265.00(5). On or about October 18, 2013, Defendant was approached by New York City Police Officer Jonathan Correa, Shield 7869 of Transit Division District 4 (hereinafter "P.O. Correa"), who asked Defendant if he had a knife in his pocket and then took a knife from Defendant's pocket. *See* misdemeanor complaint herein, Exhibit A to Affirmation of James M. Maloney (hereinafter, the "Misdemeanor Complaint").

      It is Defendant's contention that the Misdemeanor Complaint is fatally defective and, further, that the statutory prohibition of possession of "gravity knife," under the circumstances present here, would be void for vagueness as applied.

The factual basis for the charge, as set forth in the Misdemeanor Complaint, sworn to by P.O. Correa, consists entirely of the following two sentences: "**I took one gravity knife from defendant's pants pocket. I know that the knife was a gravity knife because I opened the knife with centrifugal force by flicking my wrist while holding the knife, thereby releasing the blade which locked into place by means of an automatic device that did not require manual locking.**"

The Court of Appeals Requirements As Set Forth in *People v. Dreyden*

In *People v. Dreyden*, 15 N.Y.3d 100, 905 N.Y.S.2d 542 (2010), the New York Court of Appeals held as follows:

> A conclusory statement that an object recovered from a defendant is a gravity knife does not alone meet the reasonable cause requirement. An arresting officer should, *at the very least*, explain briefly, *with reference to his training and experience*, how he or she formed the belief that the object observed in defendant's possession was a gravity knife.

15 N.Y. at 104, 905 N.Y.S.2d at 544 (emphasis added).

The Court of Appeals thus made it abundantly clear that an arresting officer's accusatory instrument charging a defendant with possession of a gravity knife must "at the very least" refer to the arresting officer's "training and experience" in establishing that the knife was a gravity knife (as opposed to many other kinds of knives, the *per se* possession of which has not been banned by statute). Here, the Misdemeanor Complaint makes no reference whatsoever to P.O. Correa's training and experience. Therefore, it is clearly defective (even jurisdictionally so, *see id.*, 15 N.Y. at 103, 905 N.Y.S.2d at 544).

**On this basis alone, the Misdemeanor Complaint must be dismissed.**

Even more forcefully mandating dismissal here, the defect in this case goes to the heart of the very issue that the Court of Appeals was addressing:

> Not every knife is a weapon for purposes of Penal Law § 265.01(1), which specifically outlaws possession of a gravity knife, among other weapons. The Penal Law defines a gravity knife as one with a blade that (1) "is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force" and that (2) "when released, is locked in place by means of a button, spring, lever or other device" (Penal Law § 265.00 [5]). This definition ***distinguishes***

      **gravity knives** from certain folding knives that cannot **readily** be opened by
      gravity or centrifugal force . . .

*Dreyden*, 15 N.Y. at 103-04, 905 N.Y.S.2d at 544 (emphasis added). It logically flows from the

above that a folding knife that cannot be *readily* opened by gravity or centrifugal force is not a

gravity knife. Here, P.O. Correa neither referred to his training and experience nor to any

observation on his part that the knife could "readily" be opened by centrifugal force. He stated

only: "I know that the knife was a gravity knife because I opened the knife with centrifugal force

by flicking my wrist while holding the knife." Not only did this statement fail to indicate, as

discussed above, that the officer had ever any training in applying the standards articulated by the

Court of Appeals some three years earlier in *Dreyden*,[1] but it also did not, for example, indicate

how many times the officer had to try to get the knife to open against its natural tendency to

remain closed.


<u>The Sippel Affidavit, and the Federal Case</u>

      As it happened, the entire police-citizen encounter between P.O. Correa and the

Defendant was witnessed by a third party, Jared Sippel, whose affidavit is submitted herewith

and appears immediately following the Misdemeanor Complaint (Exhibit A). Mr. Sippel has

sworn under oath to having witnessed the following:

      I personally observed Police Officer Jonathan Correa take the knife from
      Mr. Cracco and, without leaving my sight, attempt repeatedly to open the knife by
      means of centrifugal (centripetal) force by flicking his wrist suddenly and forcibly
      while holding the knife in one hand. For the first few attempts, Officer Correa
      was completely unable to open the knife by that means, so he increased the
      amount of force and wrist swing that he imparted to the knife. Eventually it did
      open. I would estimate that Officer Correa tried four or five times before the
      knife finally swung open. He did not try again after that.

Affidavit of Jared Sippel at ¶ 2.

      There obviously remains a possible factual dispute that would materialize should P.O.

---

      [1] *Dreyden*, as discussed above, holds that a folding knife that cannot be *readily* opened by
gravity or centrifugal force is not a gravity knife. Applying that standard would require an officer
to differentiate between a knife that may readily be opened by centrifugal force and one that may
not. This the Misdemeanor Complaint also fails to do.

Correa swear to having a different recollection of the events, but were the People to raise that factual dispute—or even to resolve it in their favor—that still would not change the fundamental flaw in the Misdemeanor Complaint itself, i.e., that it makes no reference whatsoever to P.O. Correa's training and experience, as is expressly required in *Dreyden*.

Nevertheless, in the interest of justice, it is worthwhile to bring to the attention of this Court the information gained from Mr. Sippel, a witness who uninterruptedly observed P.O. Correa's repeated attempts to open the knife before it eventually opened. According to Mr. Sippel's observations, the knife repeatedly (4-5 times) resisted opening by P.O. Correa's attempted "wrist-flicking," and therefore was not capable of "readily be[ing] opened by . . . centrifugal force," *Dreyden*, 15 N.Y. at 103-04, 905 N.Y.S.2d at 544.

Related to the foregoing, it should also be brought to the attention of this Court the fact that allegations consistent with Mr. Sippel's observations were recently made in a federal civil action, captioned *Knife Rights, et al. v. Cyrus Vance, Jr., et al.*, 11 Civ. 3918 (S.D.N.Y.), which challenged the manner of enforcement of the "gravity knife" prohibition in New York City. Specifically, one of the two individual plaintiffs in that case, John Copeland, alleged that he had been stopped by police in October 2010 by NYPD police officers who later "stated that they could open the [knife in his possession] by grasping the knife's handle and forcefully 'flicking' the knife body downwards. The NYPD police officers charged Mr. Copeland with Criminal Possession of a Weapon in the Fourth Degree [Penal Law § 265.01(1)] by issuing him a Desk Appearance Ticket." Amended Complaint at ¶¶ 25, 30 (true copy annexed as an Appendix to this brief).[2] Significantly, Mr. Copeland also alleged that, prior to the October 2010 charge, he had shown the same knife to other NYPD officers on two separate occasions, and that "[b]oth officers had tried to open the knife from its closed position using a 'flicking' motion, but they

---

[2] The federal court never reached the merits of the plaintiffs' claims, instead dismissing the case on the ground that they lacked standing to sue. *Knife Rights, Inc. v. Vance*, 2013 WL 5434610 (S.D.N.Y. Sept. 25, 2013). It appears from the opinion dismissing the action that neither of the individual plaintiffs, while a criminal defendant, had challenged the sufficiency of the accusatory instrument or argued that the "gravity knife" prohibition was void for vagueness as applied. This appears to have been part of the basis for the Court's finding that those plaintiffs lacked standing, *see id.* at * 3.

could not, so they told Mr. Copeland that the knife was legal and returned it to him." *Id.* at ¶ 29.

The knife that Mr. Copeland possessed, like the one that the Defendant in this case possessed, was thus not capable of "readily be[ing] opened by . . . centrifugal force," *Dreyden*, 15 N.Y. at 103-04, 905 N.Y.S.2d at 544, but both individuals were nevertheless charged with possessing "gravity" knives, the *per se* possession of which is defined as a misdemeanor. In neither case, of course, was intent to use the knife as a weapon an element of the charged crime, nor was such behavior alleged. That misdemeanor criminal prosecutions should arise under such circumstances, where the question of whether a given folding knife in a citizen's possession will be deemed a "gravity" knife turns entirely on whether a given police officer is able to "flick" it open, perhaps after repeated tries,[3] is disturbing.

It is disturbing, of course, because it offends basic principles of criminal justice.


The Void-For-Vagueness Doctrine

In a 2003 opinion, Judge Rosenblatt of the Court of Appeals wrote a historical summary of the evolution of the void-for-vagueness doctrine, describing its progression from a general principle of criminal justice to a constitutional (due process) doctrine:

> It is axiomatic that a proscriptive law must provide people with reasonable notice of the conduct it prohibits. Defendant's challenge goes to the core of this precept. While he properly couches his argument in due process terms, courts had recognized the concept long before it took on constitutional status under the Fifth and Fourteenth Amendments. The point was made in this country's jurisprudential infancy, when almost two centuries ago a court explained that, as a rule of statutory construction, indefiniteness is a ground for nullification of penal laws. The court said: "It should be a principle of every criminal code, and certainly belongs to ours, that no person be adjudged guilty of an offence unless it be created and promulgated in terms which leave no reasonable doubt of their meaning" (*The Enterprise*, 1 Paine 32, 8 F. Cas. 732, 734 (1810)). The Supreme Court repeated the theme in *United States v. Brewer*, 139 U.S. 278, 288, 11 S. Ct. 538, 35 L. Ed. 190 (1891), still with no mention of the Constitution. Instead, these early decisions relied mostly on the familiar rule of construction that penal

---

[3] In Mr. Copeland's case, it is unclear from the pleading attached as the Appendix hereto how many times the arresting officer(s) had to "flick" the knife to get it to open. However, that other officers were unable to open it would indicate that it was not capable of "readily" being opened.

laws should be construed strictly, in the accused's favor (see Note, *Indefinite Criteria of Definiteness in Statutes*, 45 Harv. L. Rev. 160, 160 n. 2 (1931) (hereinafter Note, *Indefinite Criteria*)).

Courts soon came to believe that prosecution under a nullified or "void" statute amounts to a constitutional violation *(see International Harvester Co. v. Kentucky*, 234 U.S. 216, 34 S. Ct. 853, 58 L. Ed. 1284 [1914]; see generally Note, *Indefinite Criteria*, 45 Harv. L. Rev. at 160 n. 3). Eventually, the Supreme Court characterized vagueness as a due process infirmity, holding that a "statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law" *(see Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926)).

Our own decisional law took a similar path. We spoke early of the need for clear statutory warnings to alert people as to prohibited conduct *(see People v. Phyfe*, 136 N.Y. 554, 558 559, 32 N.E. 978 (1893); *see also People v. Taylor*, 192 N.Y. 398, 400, 85 N.E. 759 (1908)). By 1932, we equated vagueness with unconstitutionality *(see People v. Grogan*, 260 N.Y. 138, 145 149, 183 N.E. 273 (1932)) and in 1973 struck down a vague loitering statute on due process grounds *(see People v. Berck*, 32 N.Y.2d 567, 347 N.Y.S.2d 33, 300 N.E.2d 411 (1973)). We did so again nine years later when dealing with a noise control ordinance (see *People v. New York Trap Rock Corp.*, 57 N.Y.2d 371, 456 N.Y.S.2d 711, 442 N.E.2d 1222 (1982)), and most recently, when upholding a challenge to another loitering statute *(see People v. Bright*, 71 N.Y.2d 376, 526 N.Y.S.2d 66, 520 N.E.2d 1355 (1988)).

*People v. Stuart*, 100 N.Y.2d 412, 418-19, 765 N.Y.S.2d 1, 3 (2003) (footnotes omitted).

It is clear from the above history that the void-for-vagueness doctrine may be viewed as either a due process concept or as an even more fundamental—and historically more ancient—principle of criminal justice. Simply put, in the context of this case, if an individual is to be prosecuted for possession of a "gravity knife," it ought to be clear what sorts of folding knives are prohibited, since some are prohibited and some are not. The statutory definition of a "gravity knife" is "any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device," Penal Law § 265.00(5). The Court of Appeals, in turn, has said: "This definition distinguishes gravity knives from certain folding knives that cannot *readily* be opened by gravity or centrifugal force," *Dreyden, supra*, 15 N.Y. at

103-04, 905 N.Y.S.2d at 544 (emphasis added).  In that same case, the Court said: "An arresting officer should, *at the very least*, explain briefly, *with reference to his training and experience*, how he or she formed the belief that the object observed in defendant's possession was a gravity knife." *Id.*, 15 N.Y. at 104, 905 N.Y.S.2d at 544 (emphasis added).  This the Misdemeanor Complaint has utterly failed to do.

The Court of Appeals in *Dreyden* clearly sought to eliminate any vagueness in the statute, both (1) by requiring that the arresting officer explain, with reference to his training and experience, how he or she formed the belief that the object observed in defendant's possession was a gravity knife and (2) by reading the definition to impose the requirement that a "gravity knife" be *readily* be opened by gravity or centrifugal force.

Conclusion

For all of the foregoing reasons, the Misdemeanor Complaint should be DISMISSED.


Dated: April 25, 2014


Respectfully submitted,

James M. Maloney
Attorney for Defendant
33 Bayview Avenue
Port Washington, NY 11050
(516) 767-1395
maritimelaw@nyu.edu

*KNIFE RIGHTS*
*BRIEF TO BE*
*FILED 2d Cir.*

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: PART B

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK<br><br>-against-<br><br>JOSPEH CRACCO,<br><br>Defendant. | AFFIDAVIT IN RESPONSE TO THE DEFENDANT'S OMNIBUS MOTION<br><br>Docket No. 2013CN009690 |

*212 - 335 - 4226*

LEAH BRANCH, being duly sworn, deposes and states that:

1.   I am an Assistant District Attorney in New York County awaiting admission to the Bar.   I have been designated by CYRUS R. VANCE, JR., the New York County District Attorney, to prosecute the above-captioned case and am fully familiar with its facts.

2.   This affidavit is submitted in response to the defendant's omnibus motion in which the defendant seeks dismissal of the information as facially insufficient.

## PEOPLE'S RESPONSE TO THE DEFENDANT'S MOTION TO DISMISS FOR FACIAL INSUFFICIENCY

3.   The defendant has moved to dismiss the information, or a count thereof, as insufficient on its face. It is well settled that an information and/or any supporting depositions must contain "[n]on-hearsay allegations [which] establish, if true, every

element of the offense charged and the defendant's commission thereof." CPL §100.40(1) (c); see, People v. Alejandro, 70 N.Y.2d 133 (1987). This "prima facie" case requirement is designed to afford a defendant notice of the charges against him and to prevent baseless prosecutions. Id. at 137-38. Thus, "[h]owever awkwardly an information may be drawn, if it charges an offense ... and states acts done by the accused that constitute it, that will be sufficient." People v. Love, 306 N.Y. 18, 23 (1953). Therefore, a complaint is facially sufficient if the facts as presented in the four corners of the complaint establish the existence of a "prima facie case," even if those facts would not be legally sufficient to prove guilt beyond a reasonable doubt. See People v. Jennings, 69 N.Y.2d 103, 115, 512 N.Y.S.2d 652, 504 N.E. 2d 1079 (1986).

4.    Applying these principles to the instant matter, by reading the facts alleged in the complaint in the light most favorable to the prosecution, the complaint establishes a prima facie case of Criminal Possession of a Weapon in the Fourth Degree (Penal Law § 265.01(1)).  Under section 265.01(1), a gravity knife is defined as a knife that has a blade which is released from the handle or sheath by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device. The Penal Law imposes a simple functional test—holding the knife by the handle and by a flick of the wrist opening the blade into a locked position—to determine whether a knife constitutes an illegal gravity knife, regardless of its make, model, or intended use. See People v Neal, 79 AD3d 523 (1st Dept. 2010) (evidence that an officer "could open the knife by using

2

centrifugal force, created by flicking his wrist, and the blade automatically locked in place after being released" was sufficient to confirm that the knife conformed to the statutory definition of a gravity knife); but see, People v Zuniga, 303 AD2d 773 (2d Dept 2003) (a "butterfly knife" does not constitute a gravity knife because it requires manual locking).

5.    In the instant matter Police Officer Jonathan Correa states that he knew the knife recovered from the defendant was a gravity knife because he opened the knife with centrifugal force by flicking his wrist while holding the knife, thereby releasing the blade which locked in place by means of an automatic device that did not require manual locking. The Police Officer's observations as outlined in the complaint meet the "functional test" required under the Penal Law.    Accordingly, the defendant's motion to dismiss for facial insufficiency should be denied.

6.    The defendant argues that the complaint is facially insufficient under People v. Dreyden, 15 N.Y.3d 100 because it does not provide an adequate basis for the charges; namely, a basis to believe that the knife in question is a gravity knife. However, the facts in Dreyden are distinct from the instant matter. In Dreyden, "the misdemeanor complaint included no nonconclusory allegations establishing the basis of the arresting officer's belief that defendant's knife was a gravity knife as defined in the statute—only a conclusory statement that the police officer had obseed the defendant in possession of a gravity knife and recovered one from him." Id. At 102.

The court held that such a conclusory complaint was not sufficient as the instrument did not provide any factual information as to why the knife is a gravity knife.

7.    Unlike Dreyden, the instant complaint not only states that the weapon recovered from the defendant is a gravity knife but includes a full description of why the officer knew the knife is a gravity knife.  Because the complaint provides a factual basis for Police Officer Correa's conclusions, it is not merely conclusory.  Instead, the criminal complaint provides the necessary factual basis and conclusion establishing a prima facie case for the crime charged.

8.    Finally, the affidavit filed by the defense witness does not negate the validity of the complaint and instead raises factual issues to be adjudicated at trial.  The sufficiency of the complaint must be judged not on collateral fact finding but instead on the four corners of the document itself.   The affidavit conflicts with Police Officer Correa's statements in the complaint but does not negate the sufficiency of the charging instrument.  Instead, it merely presents a possible defense that can be litigated at trial.

Wherefore, it is respectfully requested that, except as consented to herein, the defendant's motion should be denied.

Dated:          New York, New York
                May 14, 2014

                                        Respectfully submitted,

                                        Cyrus R. Vance, Jr.
                                        District Attorney
                                        New York County

                                        By:  _____
                                             Leah Branch
                                             Assistant District Attorney
                                             Of Counsel
                                             212 335-4226

Sworn to before me this
_14th_ day of __May_____, 20_14_

_____
Notary Public

        MALLORY B. EVANS
   NOTARY PUBLIC-STATE OF NEW YORK
        No. 01EV6279072
     Qualified in Kings County
 My Commission Expires April 08, 2017

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK   :
                                                                          :                         **2013CN009690**
                                    - against -                        :
                                                                          :
JOSPEH CRACCO,                                          :
                                             Defendant.          :
------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION

The crux of the People's opposition to the instant motion is to be found in paragraph 4 of

the Affidavit in Response to the Defendant's Omnibus Motion ("Opp. Aff."), where the

designated Assistant District Attorney swears to the truth of the following proposition:

> The Penal Law imposes a simple functional test—holding the knife by the handle
> and by *a flick of the wrist* opening the blade into a locked position—to determine
> whether a knife constitutes an illegal gravity knife, regardless of its make, model,
> or intended use.

> Opp. Aff. at 2 (emphasis added).

While it would be reasonable for police stopping persons suspected of having pocket

knives in their possession to apply the above-defined "simple functional test"—whether a knife

can be opened by "a [i.e., *one*] flick of the wrist"—the actual test being applied in New York

City is that of "holding the knife by the handle and by *as many flicks of the wrist as it takes*

opening the blade into a locked position."  This is a substantially different test from the one that

the designated Assistant District Attorney has sworn is the one imposed by the Penal Law.  The

latter "test," which would allow an unspecified number of repeated attempts, may indeed be

"simple" and/or "functional," but it is neither reliable nor consistent.  This is so because whether

a given knife may open after an undefined and infefinite number of attempts will depend on such factors as the upper body strength and skill of the Officer doing the "wrist flick test" and how many times he or she is willing to try to get the knife to open before giving up and letting the suspect go free.

Significantly, the test articulated by the designated Assistant District Attorney—whether a knife can be opened by "a [*one*] flick of the wrist"—would arguably be consistent with the Court of Appeals' explanation of the definition of a "gravity knife" as detailed in *People v. Dreyden*, 15 N.Y.3d 100, 905 N.Y.S.2d 542 (2010):

> Not every knife is a weapon for purposes of Penal Law § 265.01(1), which specifically outlaws possession of a gravity knife, among other weapons. The Penal Law defines a gravity knife as one with a blade that (1) "is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force" and that (2) "when released, is locked in place by means of a button, spring, lever or other device" (Penal Law § 265.00 [5]). This definition ***distinguishes gravity knives*** from certain folding knives that cannot ***readily*** be opened by gravity or centrifugal force . . .

*Dreyden*, 15 N.Y. at 103-04, 905 N.Y.S.2d at 544 (emphasis added).  As already posited in Defendant's Main Brief and not contested by the People in their opposition, it logically flows from the above that a folding knife that cannot be *readily* opened by gravity or centrifugal force is not a gravity knife.  But the test that was employed here, which allows an indefinite number of undocumented attempts, does not distinguish between knives that may readily be opened by such means and those that may not.  Obviously, a knife that will open only after an indefinite number of repeated attempts cannot reasonably be said to be capable of being *readily* opened by gravity or centrifugal force.

The People argue that "the affidavit filed by the defense witness [which states that it took

the Officer several tries to get the knife to open] does not negate the validity of the complaint," Opp. Aff. at 4 (¶ 8).  However, in the Misdemeanor Complaint, Officer Correa nowhere states how many times he tried to flick open the knife before it eventually opened.  Thus it is quite incorrect to state, as the designated Assistant District Attorney has done, that "the affidavit conflicts with Police Officer Correa's statements in the complaint." *Id*.  He made no statements at all on the subject.  Likewise, he made no reference whatsoever to his training and experience, as is expressly required by the Court of Appeals (a point the People never address in their opposition):

> A conclusory statement that an object recovered from a defendant is a gravity knife does not alone meet the reasonable cause requirement. An arresting officer should, *at the very least*, explain briefly, *with reference to his training and experience*, how he or she formed the belief that the object observed in defendant's possession was a gravity knife.

*Dreyden*, 15 N.Y. at 104, 905 N.Y.S.2d at 544 (emphasis added).

Had the Misdemeanor Complaint made some reference to Officer Correa's training and experience (which presumably would have included training to make him aware that, as the Court of Appeals has also explained in *Dreyden*, *see supra*, a gravity knife is one capable of being *readily* opened by gravity or centrifugal force), the Misdemeanor Complaint would have satisfied the requirements of *Dreyden*.  But it did not.

The People further argue that "the affidavit filed by the defense witness . . . raises factual issues to be adjudicated at trial." Opp. Aff. at 4 (¶ 8).  But this argument is premised on the flawed proposition (see above) that "the affidavit conflicts with Police Officer Correa's statements in the complaint." *Id*.  Again, it does not.

A moment's reflection reveals the systemic flaw in the People's reasoning as to the

sufficiency of the accusatory instrument in the current context.  The People essentially posit that NYPD Officers may arrest persons for having pocket knives that, only after repeated attempts, are capable of being "flicked" open, but nevertheless omit from the accusatory instruments charging those persons with misdemeanor weapons possession any mention of how many attempts it took to get the knife open, leaving that question as "an issue for trial," while at the same time also omitting from the accusatory instruments charging those persons with misdemeanor weapons possession any "reference to [the] training and experience [providing the basis for] how he or she formed the belief that the object observed in defendant's possession was a gravity knife," *Dreyden*, 15 N.Y. at 104, 905 N.Y.S.2d at 544.  Such a situation, if tolerated,[1] would not only allow an end run around both of the requirements articulated in *Dreyden* as discussed above (reference to training and experience, and the knife's capability of being readily opened by gravity or centrifugal force), but would permit or even encourage the City to train its officers to try as many times as possible to flick open a given knife even if it were not capable of being *readily* opened in that manner, since neither the number of attempts nor any reference to such training would need to appear in the accusatory instruments.

Indeed, the federal lawsuit referenced in Defendant's Main Brief, *Knife Rights, et al. v. Cyrus Vance, Jr., et al.*, 11 Civ. 3918 (S.D.N.Y.), indicates that this is precisely what has, within the past few years, occurred on a City-wide scale, leaving individuals and businesses at a loss to determine with clarity whether certain folding knives might ever be deemed "gravity knives" by

---

[1]It is, of course, urged that this Court *not* tolerate the above-described situation, and that it impose the requirement that an arresting officer "at the very least, explain briefly, *with reference to his training and experience*, how he or she formed the belief that the object observed in defendant's possession was a gravity knife." *Dreyden*, 15 N.Y. at 104, 905 N.Y.S.2d at 544 (emphasis added).

virtue of the possibility of their being opened by repeated wrist-flicking.  As noted in Defendant's Main Brief, the substantive issues in that case were not reached, and the federal complaint was dismissed on putative lack-of-standing grounds, but it is currently on appeal to the Second Circuit.  On May 15, 2014, the Appellant's brief and a two-volume Joint Appendix consisting of some 375 pages were filed electronically.  For the benefit of this Court and others, the undersigned has obtained same from PACER and made the documents available for downloading, exactly as filed in pdf format, free of charge online at the following secure url:

**https://files.nyu.edu/jmm257/public/hoplological/13-4840**

A declaration made by the President of a New York corporation, consisting of pages A59 through A61 of the Joint Appendix (volume 1) in *Knife Rights, et al. v. Cyrus Vance, Jr., et al.* (2d Cir. Docket No. 13-4840), is annexed hereto as an Appendix.  In it, the declarant describes his inability "to determine with any certainty whether particular common folding knives in its product line are legal in New York City."  *Id*. at ¶ 8.

As noted in Defendant's Main Brief (but not addressed in the People's opposition and therefore not discussed at length here), the uncertainty regarding whether a given knife can be "flicked" open after repeated attempts is closely related to the vagueness doctrine.  Here, the Defendant could not have known with any degree of certainty whether the knife he possessed would be deemed a "gravity knife" under New York City's new enforcement initiative.

To charge Mr. Cracco with a crime under these circumstances, without even specifying in the accusatory instrument the very items that the Court of Appeals has explicitly required, is unjust and wholly at odds with a fair and impartial criminal justice system.

<u>Conclusion</u>

For all of the foregoing reasons, the Misdemeanor Complaint should be DISMISSED.

Dated: May 16, 2014

Respectfully submitted,

James M. Maloney
Attorney for Defendant
33 Bayview Avenue
Port Washington, NY 11050
(516) 767-1395
maritimelaw@nyu.edu