# EXHIBIT A

JUDGE CROTTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK   14 ₓCV   8235

JOSEPH CRACCO,

                              Plaintiff,

                - against -

THE CITY OF NEW YORK, Police Officer
JONATHAN CORREA, Shield 7869, Transit Division
District 4, and Police Officer JOHN DOE (a fictitious
name),

                              Defendants.

--------------------------------------------------------X

**COMPLAINT
AND
JURY TRIAL DEMAND**



RECEIVED
OCT 15 2014
U.S.D.C. S.D.N.Y.
CASHIERS

        Plaintiff, JOSEPH CRACCO, by his attorney, James M. Maloney, as and for his

complaint against the above-named defendants, declares as follows:

<u>**PARTIES**</u>

        1. At the commencement of this action and at all times hereinafter mentioned, Plaintiff

was a natural person, a citizen of the United States, and a resident of the State of New York, the

City of New York, and the County of New York.  Plaintiff is originally from the State of Iowa,

was 27 years old at the time of his arrest, and had come to the City of New York to work as a

chef, where he has since been so employed on a regular basis.

        2. Defendant THE CITY OF NEW YORK is a municipal corporation organized under the

laws of the State of New York, and maintains the New York City Police Department ("NYPD"),

including the Transit Division thereof.  NYPD is a duly authorized public authority and/or police

department, authorized to perform all functions of a police department as per the applicable

sections of the New York State Criminal Procedure Law, acting under the direction and

supervision of defendant THE CITY OF NEW YORK.  NYPD is responsible for the

appointment, training, supervision, promotion and discipline of police officers and supervisory

police officers, including the individually named defendants herein.

3. Defendant Police Officer JONATHAN CORREA, Shield 7869, was, at all times relevant herein, an officer, employee and agent of the NYPD, assigned to Transit Division District 4. Defendant JONATHAN CORREA is sued in his individual and official capacities.

4. At all times relevant herein, Defendant Police Officer JOHN DOE was a police officer, detective or supervisor employed by the NYPD. Plaintiff does not know the real name and/or shield number of Defendant Police Officer JOHN DOE. Defendant JOHN DOE is sued in his individual and official capacities.

## JURISDICTION AND VENUE

5. This action arises under the Constitution of the United States and is accordingly brought pursuant to the provisions of 42 U.S.C. §§ 1983 *et seq.*

6. This Court has subject matter jurisdiction over the federal causes of action stated herein pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claim arising out of the same events pursuant to the provisions of 28 U.S.C. § 1367.

7. Venue is properly placed in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

8. Plaintiff demands a trial by jury in this action.

## BACKGROUND

9. On or about October 18, 2013 (the "Date of the Arrest"), at or about 4:00 p.m., Plaintiff was commuting in and through the City of New York by subway in the company of Jared Sipple ("Sipple"), who is not a party to this action.

10. Plaintiff and Sipple at the time were employed by the same restaurant as chefs. Sipple was the chef and Plaintiff was the sous-chef, i.e., Sipple's assistant. Because the restaurant was in the process of starting up operations, Plaintiff during that time-frame was opening boxes of foods, seasonings, utensils and cookware with great frequency during the course of his typical workday, and had on his person, clipped to the inside of his pants pocket, a folding knife for the

purpose of quickly opening such sealed cardboard boxes.

11. Plaintiff did not believe on October 18, 2013, and does not believe as of the date hereof, that the folding knife in his possession, which he had used for the above-described purposes but never as a weapon or to threaten or menace anyone, was or is truly illegal to possess in the State of New York or in the City of New York.

12. While Plaintiff and Sipple were commuting through the subway station at Madison Avenue and East 42nd Street in the County, City, and State of New York at the above-described time and date, Defendant JONATHAN CORREA ("CORREA") approached Plaintiff.

13. At the aforementioned date, time, and place, neither Plaintiff nor Sipple were engaging in, nor had either of them engaged in, any disorderly, improper, or suspicious conduct.

14. At the aforementioned date and place, CORREA asked Plaintiff if he had a knife in his pants pocket.

15. Plaintiff responded in the affirmative, and CORREA thereafter seized the folding knife from Plaintiff's pants pocket.

16. CORREA thereafter attempted repeatedly to open the knife by means of "centrifugal" (properly termed "centripetal") force by flicking his wrist suddenly and forcibly while holding the folding knife in one hand.  For the first few attempts, CORREA was completely unable to open the folding knife by that means, so he increased the amount of force and wrist swing that he imparted to the folding knife.  Eventually the folding knife swung into an open position. CORREA tried four or five times to open the folding knife by that means before the folding knife finally swung open.  CORREA did not try to open the folding knife again after that.

17. CORREA then arrested Plaintiff for possession of a "gravity knife," handcuffing Plaintiff in public and within the plain view of Sipple and of many other persons, taking Plaintiff into custody and searching his person, depriving Plaintiff of his liberty, and resulting in Plaintiff's being subjected to the intentional infliction of mental distress, and reckless behavior exhibited by Police Officer JOHN DOE ("DOE") while Plaintiff was being transported to Central

Booking as is more fully described herein.

18. While Plaintiff waited for the police vehicle that would transport him to Central Booking, Plaintiff was kept underground below street level at a dirty location with his hands cuffed behind his back. He was taken up to the street, still handcuffed, some time thereafter.

19. DOE was the driver of the police vehicle that transported Plaintiff to Central Booking. Plaintiff was placed in the back seat of the vehicle, still handcuffed with his hands behind his back in an uncomfortable and at times painful position, with CORREA sitting next to him. Plaintiff was not protected in the event of a collision by a seat belt or air bags. Throughout the ride at relatively high speed through city traffic, DOE repeatedly turned around to face Plaintiff and/or CORREA while driving, looking away from the road and from his driving task in an unprofessional and dangerous manner, to utter loud comments, questions, and lewd and/or violent suggestions. Specifically, at one point, when a bicyclist was on the road ahead of them, DOE turned around and shouted: "Should I hit him and splatter his brains all over the road?" At another point when a young female pedestrian was in view, DOE turned around and said: "I'd like to fuck her in the ass!" Plaintiff was frightened, shocked, and disturbed by DOE's behavior.

20. At Central Booking Plaintiff was placed in a locked cell and deprived of liberty for several more hours.

### THE UNLAWFULNESS OF THE ARREST

21. As more fully appears herein, see paragraph 32(d) at page 6, *infra*, the New York Court of Appeals had explained some four years prior to CORREA's arrest of Plaintiff and execution of the Misdemeanor Complaint that a "gravity knife," as distinguished from other folding knives, is one that can *readily* be opened by gravity or centrifugal force.

22. CORREA nonetheless arrested Plaintiff for the mere possession of a folding knife that could *not* readily be opened by gravity or centrifugal force.

23. Given the attributes of the folding knife in Plaintiff's possession, CORREA thus arrested Plaintiff unlawfully and/or without probable cause to have done so.

## THE MISDEMEANOR COMPLAINT

24. On or about November 13, 2013, CORREA executed a Misdemeanor Complaint, setting forth in substance the foregoing facts relating to time, place, and seizure of the folding knife from Plaintiff, and stating that "factual basis for the charge" was as follows: "I took one gravity knife from defendant's pants pocket. I know that the knife was a gravity knife because I opened the knife with centrifugal force by flicking my wrist while holding the knife, thereby releasing the blade which locked into place by means of an automatic device that did not require manual locking." A true copy of the Misdemeanor Complaint is annexed hereto as **Exhibit A** and incorporated by reference herein.

25. In the Misdemeanor Complaint, CORREA did not mention that he had tried four or five times to open the folding knife by centrifugal (centripetal) before the folding knife opened.

26. Annexed hereto as **Exhibit B** and incorporated by reference herein is a true copy of the Affidavit of Jared Sipple executed on April 22, 2014, corroborating the allegations made in paragraph 16, above.

27. In the Misdemeanor Complaint, CORREA did not make any reference whatsoever to any training or experience that may have provided a basis for his having formed the belief that the object observed in Plaintiff's possession was a gravity knife.

## THE CRIMINAL PROSECUTION

28. As a result of CORREA's arrest of Plaintiff and execution of the Misdemeanor Complaint, Plaintiff was required to make numerous criminal court appearances, which disrupted his life significantly, including by bearing the stigma of being a criminal defendant and by causing him to lose work and to have to explain his absence. Specifically, subsequent to CORREA's execution of the Misdemeanor Complaint, was Plaintiff required to appear, and did appear, at the following courts and dates, each of which required several hours of his day: one appearance in the Midtown Community Court on December 9, 2013, and four appearances at the Criminal Court of the City of New York in the County of New York on February 3, 2014, March

26, 2014, May 14, 2014, and July 8, 2014.

29. Plaintiff was initially represented by Legal Aid, but on January 24, 2014, Plaintiff received a telephone call from Legal Aid informing him that because he earned more than 350 dollars per week he could no longer be represented by Legal Aid. Plaintiff was unable to secure retained criminal defense counsel in time for the February 3, 2014, appearance, and appeared in person on time and appropriately dressed, but greatly fearful of the possible consequences of his not having obtained criminal defense counsel. The matter was adjourned by the Honorable Erika Edwards until March 26, 2014.

30. On or about March 18, 2014, Plaintiff retained the undersigned as his criminal defense counsel.

31. At the March 26, 2014, appearance, Plaintiff, through counsel, requested the opportunity to move to dismiss the Misdemeanor Complaint on grounds of insufficiency and unconstitutionality. A deadline of April 28, 2014, was ordered by the Honorable Erika Edwards for service of Plaintiff's moving papers, with the next appearance and the deadline for papers in opposition ordered as May 14, 2014.

32. On or about April 25, 2014, Plaintiff, through counsel, formally moved pursuant to §§ 170.30 and 170.35 of the New York Criminal Procedure Law to dismiss the Misdemeanor Complaint, arguing, *inter alia*, the following points:

(a)     that in *People v. Dreyden*, 15 N.Y.3d 100, 905 N.Y.S.2d 542 (2010), the New

York Court of Appeals had held as follows:

A conclusory statement that an object recovered from a defendant is a gravity knife does not alone meet the reasonable cause requirement. An arresting officer should, *at the very least*, explain briefly, *with reference to his training and experience*, how he or she formed the belief that the object observed in defendant's possession was a gravity knife.

15 N.Y. at 104, 905 N.Y.S.2d at 544 (emphasis added).

(b)     that the Court of Appeals had thus made it abundantly clear that an arresting

officer's accusatory instrument charging a defendant with possession of a gravity knife

must "at the very least" refer to the arresting officer's "training and experience" in

establishing that the knife was a gravity knife (as opposed to many other kinds of knives,

the *per se* possession of which has not been banned by statute).

(c)      that the Misdemeanor Complaint made no reference whatsoever to CORREA's

training or experience, if any, and that it was therefore defective, even jurisdictionally so,

under the express holdings of *Dreyden*.

(d)      that such defect went to the heart of the very issue that the Court of Appeals was

addressing in *Dreyden*, as evidenced by the part of the Court's opinion that reads:

> Not every knife is a weapon for purposes of Penal Law § 265.01(1), which
> specifically outlaws possession of a gravity knife, among other weapons. The
> Penal Law defines a gravity knife as one with a blade that (1) "is released from the
> handle or sheath thereof by the force of gravity or the application of centrifugal
> force" and that (2) "when released, is locked in place by means of a button, spring,
> lever or other device" (Penal Law § 265.00 [5]). This definition ***distinguishes
> gravity knives*** from certain folding knives that cannot ***readily*** be opened by
> gravity or centrifugal force . . .

*People v. Dreyden*, 15 N.Y. at 103-04, 905 N.Y.S.2d at 544 (emphasis added).

(e)      that it logically flows from the above-quoted passage that a folding knife that

cannot be *readily* opened by gravity or centrifugal force is not a gravity knife.

(f)      that the Misdemeanor Complaint neither referred to any training and experience

nor to any observation on CORREA's part that the knife could "readily" be opened by

centrifugal force, CORREA having stated only: "I know that the knife was a gravity knife

because I opened the knife with centrifugal force by flicking my wrist while holding the

knife." The Misdemeanor Complaint thus not only failed to indicate whether CORREA

had ever had any training provided by the City of New York in identifying and applying

the standards articulated by the Court of Appeals some three years earlier in *Dreyden*, but

also failed to indicate how many times CORREA had to try to get the knife to open

-7-

against its natural tendency to remain closed (a tendency not shared by true gravity

knives, which, as the Court of Appeals has explained, must open "readily").

(g)     that the Court of Appeals in *Dreyden* reduced the vagueness in the statutory

definition ("any knife which has a blade which is released from the handle or sheath

thereof by the force of gravity or the application of centrifugal force which, when

released, is locked in place by means of a button, spring, lever or other device," New

York Penal Law § 265.00(5)), both (1) by requiring that the arresting officer explain, with

reference to his training and experience, how he or she formed the belief that the object

observed in defendant's possession was a gravity knife and (2) by interpreting the

definition to impose the requirement that a "gravity knife" be one capable of *readily*

being opened by gravity or centrifugal force.

(h)     that the void-for-vagueness doctrine is not only a due process principle giving rise

to a federal constitutional right, but is also an even more fundamental and historically

more ancient principle of criminal justice.

33. At the May 14, 2014, appearance, the People served and handed up papers in

opposition to the motion, following which Plaintiff, through counsel, requested the opportunity

to submit a reply.  That request was granted by the Honorable Erika Edwards, with the next

appearance ordered as July 8, 2014.

34. At the May 14, 2014, appearance, the Honorable Erika Edwards specifically

indicated, "I'd like everybody to come back for decision on July 8th," and "July 8, 2014, for

disposition."  A true copy of the transcript of the May 14, 2014, appearance is annexed hereto as

**Exhibit C** and incorporated by reference herein.

35. On or about May 16, 2014, Plaintiff, through counsel, served and filed his reply brief.

True copies of Plaintiff's main and reply briefs on the motion are annexed hereto as **Exhibit D**

and are incorporated by reference herein as if fully set forth herein.

36. Much to the surprise and worry of Plaintiff and his counsel, at the July 8, 2014, appearance there was no decision or disposition on the motion, as had been clearly indicated on the record at the prior appearance would be the case.  Nor was the Honorable Erika Edwards present in the courtroom, with the Honorable Kevin McGrath instead presiding and apparently knowing nothing of the motion.  Yielding to, among other things, the uncertainties engendered thereby, the mounting stigma of being a criminal defendant, and the ongoing costs and losses inherent in such status (see paragraph 21, 22, 23, 28, above, for a partial list thereof), Plaintiff, on July 8, 2014,  pleaded guilty to disorderly conduct, a violation, in satisfaction of the charge recited in the Misdemeanor Complaint, although Plaintiff had not engaged in any disorderly conduct whatsoever on October 18, 2013, the day the folding knife was seized from him by CORREA.

37. Plaintiff's folding knife has never been returned to him.

38. Plaintiff no longer dares to use any lockable[1] folding knife to open boxes of foods, seasonings, utensils and cookware, etc. while working in his chosen career as a chef within the City of New York because, if found with any lockable folding knife in his possession, he might again be arrested, deprived of liberty, might again be subjected to such intentional infliction of mental distress and reckless behavior as were exhibited by DOE, and might again suffer the stigma of being a criminal defendant requiring retained counsel and bearing the associated ongoing costs and losses.  Plaintiff reasonably believes, based on his experience as hereinbefore described, that he could all too easily once again be prosecuted for possession of a "gravity

_____

[1] The term "lockable" as used above means capable of being locked in the open position, reflecting the statutory definition's requirement, as clarified by the Court of Appeals, that a "gravity knife," after it has *readily* been opened by the force of gravity or centrifugal force, is then "locked in place by means of a button, spring, lever or other device."  Obviously, a folding knife that does not lock in place in the open position is dangerously ill-suited for the intended use of cutting open packages because it could easily close and cut the user's fingers during such use.

knife" for having any lockable folding knife (even if a proper work tool) if only one of the thousands of NYPD officers employed by the City of New York were to be able to open that folding knife only once after repeatedly attempting to "flick" it open, even if Plaintiff himself were not able to open the knife by that means no matter how many times he tried.

## FIRST CAUSE OF ACTION

39. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 38 as if fully set forth herein.

40. CORREA, acting under color of state law, falsely arrested Plaintiff, charging him with a misdemeanor without probable cause to have done so, and thereafter searching and detaining him, all in violation of the Fourth and Fourteenth Amendments.

41. The false arrest, search, and detention have caused and/or continue to cause Plaintiff deprivation of his liberty, psychological pain and suffering, mental anguish, humiliation, reputational injury, and other losses.

## SECOND CAUSE OF ACTION

42. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 38 as if fully set forth herein.

43. DOE and CORREA, acting under color of state law, used unreasonable force against Plaintiff under the circumstances by putting him in reasonable fear of being injured by DOE's dangerous and distracted driving of the police vehicle that was used to transport Plaintiff while Plaintiff was required to sit in the back seat handcuffed with his hands behind his back and not protected in the event of a collision by a seat belt or air bags.

44. The use of unreasonable force against Plaintiff under the circumstances has caused and/or continue to cause Plaintiff fear, psychological pain and suffering, mental distress, and other losses.

### THIRD CAUSE OF ACTION

45. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 38 as if fully set forth herein.

46. DOE intentionally inflicted mental distress upon Plaintiff by putting him in fear that he and/or others would be injured by DOE's dangerous driving of the police vehicle that was used to transport Plaintiff and by DOE's suggestions of intended violent and/or lewd acts.

47. This Third Cause of Action is brought under this Court's supplemental jurisdiction as provided at 28 U.S.C. § 1367.

### FOURTH CAUSE OF ACTION

48. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 38 as if fully set forth herein.

49. Up to and including the Date of the Arrest, Defendant THE CITY OF NEW YORK and/or the NYPD **_had_**, following the *People v. Dreyden* decision in 2010, adequately and appropriately trained CORREA that gravity knives are distinguishable from folding knives that cannot readily be opened by gravity or centrifugal force.

50. CORREA nonetheless disregarded or ignored that training and failed to make note of it in the Misdemeanor Complaint, subjecting him to individual liability.

51. This Fourth Cause of Action is pleaded in the alternative to the Fifth and Sixth Causes of Action, and incorporates by reference the deprivation of Plaintiff's constitutional rights alleged in the First, Second, Seventh, and Eighth Causes of Action.

### FIFTH CAUSE OF ACTION

52. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 38 as if fully set forth herein.

53. Up to and including the Date of the Arrest, Defendant THE CITY OF NEW YORK and/or the NYPD **_had not_**, following the *People v. Dreyden* decision in 2010, adequately and

appropriately trained CORREA that gravity knives are distinguishable from folding knives that cannot readily be opened by gravity or centrifugal force.

54. Such failure of the Defendant THE CITY OF NEW YORK and the NYPD to train their employees, in light of the holdings of *People v. Dreyden*, amounts to deliberate indifference to the constitutional rights of others, *see, e.g., City of Canton v. Harris*, 489 U.S. 378, 385 (1989), giving rise to a *Monell* claim cognizable at law.

55. This Fifth Cause of Action, together with the Sixth Cause of Action, are pleaded in the alternative to the Fourth Cause of Action, and incorporate by reference the deprivation of Plaintiff's constitutional rights alleged in the First, Second, Seventh, and Eighth Causes of Action.

## SIXTH CAUSE OF ACTION

56. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 38 as if fully set forth herein.

57. Up to and including the Date of the Arrest, Defendant THE CITY OF NEW YORK and/or the NYPD had, notwithstanding the statutory definition as interpreted by the Court of Appeals in the *People v. Dreyden* decision in 2010, trained CORREA and/or other NYPD officers that gravity knives need not be distinguished from folding knives that cannot readily be opened by gravity or centrifugal force, but that any folding knife that locks in the open position may be the basis for an arrest for misdemeanor possession of a gravity knife provided that the arresting officer eventually succeeds in opening the knife by centrifugal force, even if the knife is not capable of being *readily* opened in that manner.

58. Such deliberate wrongful training by Defendant THE CITY OF NEW YORK and/or the NYPD, which  Defendant THE CITY OF NEW YORK maintains, of their employees amounts to a municipal policy or custom, the existence of which had a causal connection to the deprivation of Plaintiff's constitutional rights, *see, e.g., Sarus v. Rotundo*, 831 F.2d 397, 400 (2d

Cir. 1987), giving rise to a *Monell* claim cognizable at law.

59. This Sixth Cause of Action, together with the Fifth Cause of Action, are pleaded in the alternative to the Fourth Cause of Action, and incorporates by reference the deprivation of Plaintiff's constitutional rights alleged in the First, Second, Seventh, and Eighth Causes of Action.

## SEVENTH CAUSE OF ACTION

60. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 38 as if fully set forth herein.

61. Defendant THE CITY OF NEW YORK and the NYPD owed a duty of care to Plaintiff to prevent the injuries sustained by him.

62. CORREA and/or DOE were unfit and/or incompetent for their positions.

63. Defendant THE CITY OF NEW YORK was negligent in its hiring and/or retention of CORREA and/or DOE, which negligence proximately caused some or all of Plaintiff's injuries.

64. This Seventh Cause of Action incorporates by reference the deprivation of Plaintiff's constitutional rights alleged in the First, Second, Fourth through Sixth, and Eighth Causes of Action.

## EIGHTH CAUSE OF ACTION

65. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 38 as if fully set forth herein.

66. Defendants have deprived and seized from Plaintiff's person, and continue to deprive Plaintiff of, his personal effect and property (namely, the folding knife that was in his possession and was seized from him on the Date of the Arrest) without due process of law, in violation of the Fourth and Fifth Amendments to the United States Constitution.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

(a) on the First through Fourth Causes of Action against Defendants CORREA and DOE compensatory and punitive damages in an amount to be determined at trial, and reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

(b) on the Fifth through Seventh Causes of Action against Defendant THE CITY OF NEW YORK: compensatory damages in an amount to be determined at trial, and reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

(c) on the Eighth Cause of Action against all Defendants jointly and severally: compensatory damages in an amount to be determined at trial, or, in the alternative, an Order compelling said Defendants to return Plaintiff's property to him; plus reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

(d) such other, further, and different relief as this Court may deem just and proper.

Dated: October 14, 2014
      Port Washington, New York

JAMES M. MALONEY (JM-5297)
*Attorney for Plaintiff*
33 Bayview Avenue
Port Washington, NY 11050
(516) 767-1395
maritimelaw@nyu.edu

Exhibit A

Page 1 of

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-                                          MISDEMEANOR

Jospeh Cracco (M 27),

                                    Defendant.

**2013CN009690**

Police Officer Jonathan Correa, Shield 7869 of the Transit Division District 4, states as follows:

*The defendant is charged with:*

> PL 265.01(1)                    Criminal Possession of a Weapon in the Fourth
>                                 Degree
>                                 (defendant #1: 1 count)

On or about October 18, 2013 at about 4:17 P.M., in the subway station at Madison Avenue & East 42nd Street in the County and State of New York, the defendant possessed a gravity knife.

*The factual basis for this charge is as follows:*

I took one gravity knife from defendant's pants pocket.

I know that the knife was a gravity knife because I opened the knife with centrifugal force by flicking my wrist while holding the knife, thereby releasing the blade which locked in place by means of an automatic device that did not require manual locking.

False statements made in this written instrument are punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law, and as other crimes.

_____        _11.13.13_      _1027_
Police Officer Jonathan Correa            Date          Time

Exhibit B

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK

- against -

Jospeh Cracco (M 27),

                              Defendant.

------------------------------------------------------------x

**AFFIDAVIT**
**OF**
**JARED SIPPEL**

**2013CN009690**

**JARED SIPPEL**, having been duly sworn, declares as follows:

1. On or about October 18, 2013, at about 4:17 P.M., in the subway station at Madison Avene & East 42nd Street in the County and State of New York, I was present with the defendant, Mr. Cracco, who is known to me, when Police Officer Jonathan Correa approached Mr. Cracco and asked him for his pocket knife.

2. I personally observed Police Officer Jonathan Correa take the knife from Mr. Cracco and, without leaving my sight, attempt repeatedly to open the knife by means of centrifugal (centripetal) force by flicking his wrist suddenly and forcibly while holding the knife in one hand. For the first few attempts, Officer Correa was completely unable to open the knife by that means, so he increased the amount of force and wrist swing that he imparted to the knife. Eventually it did open. I would estimate that Officer Correa tried four or five times before the knife finally swung open. He did not try again after that.

I declare that the foregoing is true and correct to the best of my knowledge.

_____
**JARED SIPPEL**

Subscribed and sworn to before me this
_22nd_ day of April, 2014

_____
**Notary Public**

JAMES M. MALONEY
Notary Public, State of New York
No. 02 5067250
Qualified in Nassau County
Commission Expires _10/15/2014_

Exhibit C

```
 1   CRIMINAL COURT OF THE CITY OF NEW YORK
     COUNTY OF NEW YORK            PART B
 2   - - - - - - - - - - - - - - - - - - -x
     THE PEOPLE OF THE STATE OF NEW YORK,
 3                                         :
        -against-                              Docket No.:
 4                                         :   2013CN009690

 5   JOSEPH CRACCO,

 6                      Defendant.         :
     - - - - - - - - - - - - - - - - - -x
 7
                        100 Centre Street
 8                      New York, New York 10013

 9                      May 14, 2014

10   B E F O R E:

11        THE HONORABLE ERICA EDWARDS, Judge

12   A P P E A R A N C E S:

13   FOR THE PEOPLE:

14   OFFICE OF CYRUS VANCE JR., ESQ.
             District Attorney New York County
15           One Hogan Place
             New York, New York 10013

16
             BY:  LEAH BRANCH, ESQ.
17                Assistant District Attorney

18   FOR THE DEFENDANT:

19           JAMES MALONEY, ESQ.
             Attorneys for Defendant
20           33 Bayview Avenue
             Port Washington, New York 11050

21
             BY:  JAMES MALONEY, ESQ.
22

23

24
                              Donna McNeill, CSR
25                            Official Court Reporter
```

1              THE COURT OFFICER:  Calendar 112, People.  Joseph

2    Cracco.

3           Counsel?

4              MR. MALONEY:  James Maloney, 33 Bayview Avenue,

5    Port Washington, New York 11050.  Good morning, Your

6    Honor.

7              THE COURT:  Good morning.

8              MS. BRANCH:  Your Honor, the People are filing

9    and serving a copy of the response and the defendant's

10   motion to dismiss.

11             THE COURT:  Okay.  Take a look at it.  Any offer

12   recommendation?

13             MS. BRANCH:  People are offering a 240.20 with

14   one day of community service.

15             THE COURT:  Okay.  Give me a moment to take a

16   look at it.

17             MR. MALONEY:  Defendant rejects that offer, Your

18   Honor.

19          Can I have a reply date?

20             THE COURT:  I'm about to do it now.

21             MR. MALONEY:  Thank you.

22             THE COURT:  Tell you what, Counsel.  Do you want

23   an opportunity to reply?

24             MR. MALONEY:  I appreciate that.

25             THE COURT:  I'll give you that opportunity, and

```
1      then I'll decide this at a later date.  How would you
2      like--
3                  MR. MALONEY:  Two weeks will be fine, Your
4      Honor.
5                  THE COURT:  I'll give you until July to file and
6      serve it off calendar.
7            I'd like everybody to come back for decision on July
8      8th.  Is that a good date for you?
9                  MR. MALONEY:  Yes, Your Honor.
10                  THE COURT:  July 8, 2014 for disposition.
11     Parole is continued.
12           Thank you.
13                  MR. MALONEY:  Thank you, Your Honor.
14                         *     *     *     *
15
16
17     Certified to be a true and accurate transcript.
18
19
20
21     _Donna McNeill, CSR_____
22     Donna McNeill, CSR, Official Court Reporter
23
24
25
```

Exhibit D

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK     :

                  - against -                            :         **2013CN009690**

                                                         :

Jospeh Cracco,                                           :

                        Defendant.                       :
------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
The Court of Appeals Requirements As Set Forth in *People v. Dreyden* . . . . . . . . . . . . . . . . . 2
The Sippel Affidavit, and the Federal Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
The Void-For-Vagueness Doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Introduction

        The Defendant is accused of violation of Penal Law § 265.01(1) for possession of a
"gravity knife," which is defined as "any knife which has a blade which is released from the
handle or sheath thereof by the force of gravity or the application of centrifugal force which,
when released, is locked in place by means of a button, spring, lever or other device." *Id.* at §
265.00(5). On or about October 18, 2013, Defendant was approached by New York City Police
Officer Jonathan Correa, Shield 7869 of Transit Division District 4 (hereinafter "P.O. Correa"),
who asked Defendant if he had a knife in his pocket and then took a knife from Defendant's
pocket. *See* misdemeanor complaint herein, Exhibit A to Affirmation of James M. Maloney
(hereinafter, the "Misdemeanor Complaint").

        It is Defendant's contention that the Misdemeanor Complaint is fatally defective and,
further, that the statutory prohibition of possession of "gravity knife," under the circumstances
present here, would be void for vagueness as applied.

The factual basis for the charge, as set forth in the Misdemeanor Complaint, sworn to by P.O. Correa, consists entirely of the following two sentences: "**I took one gravity knife from defendant's pants pocket. I know that the knife was a gravity knife because I opened the knife with centrifugal force by flicking my wrist while holding the knife, thereby releasing the blade which locked into place by means of an automatic device that did not require manual locking.**"

The Court of Appeals Requirements As Set Forth in *People v. Dreyden*

In *People v. Dreyden*, 15 N.Y.3d 100, 905 N.Y.S.2d 542 (2010), the New York Court of Appeals held as follows:

> A conclusory statement that an object recovered from a defendant is a gravity knife does not alone meet the reasonable cause requirement. An arresting officer should, *at the very least*, explain briefly, *with reference to his training and experience*, how he or she formed the belief that the object observed in defendant's possession was a gravity knife.

15 N.Y. at 104, 905 N.Y.S.2d at 544 (emphasis added).

The Court of Appeals thus made it abundantly clear that an arresting officer's accusatory instrument charging a defendant with possession of a gravity knife must "at the very least" refer to the arresting officer's "training and experience" in establishing that the knife was a gravity knife (as opposed to many other kinds of knives, the *per se* possession of which has not been banned by statute). Here, the Misdemeanor Complaint makes no reference whatsoever to P.O. Correa's training and experience. Therefore, it is clearly defective (even jurisdictionally so, *see id.*, 15 N.Y. at 103, 905 N.Y.S.2d at 544).

**On this basis alone, the Misdemeanor Complaint must be dismissed.**

Even more forcefully mandating dismissal here, the defect in this case goes to the heart of the very issue that the Court of Appeals was addressing:

> Not every knife is a weapon for purposes of Penal Law § 265.01(1), which specifically outlaws possession of a gravity knife, among other weapons. The Penal Law defines a gravity knife as one with a blade that (1) "is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force" and that (2) "when released, is locked in place by means of a button, spring, lever or other device" (Penal Law § 265.00 [5]). This definition ***distinguishes***

> *gravity knives* from certain folding knives that cannot ***readily*** be opened by
> gravity or centrifugal force . . .

*Dreyden*, 15 N.Y. at 103-04, 905 N.Y.S.2d at 544 (emphasis added).  It logically flows from the above that a folding knife that cannot be *readily* opened by gravity or centrifugal force is not a gravity knife.  Here, P.O. Correa neither referred to his training and experience nor to any observation on his part that the knife could "readily" be opened by centrifugal force.  He stated only: "I know that the knife was a gravity knife because I opened the knife with centrifugal force by flicking my wrist while holding the knife."  Not only did this statement fail to indicate, as discussed above, that the officer had ever any training in applying the standards articulated by the Court of Appeals some three years earlier in *Dreyden*,[1] but it also did not, for example, indicate how many times the officer had to try to get the knife to open against its natural tendency to remain closed.

The Sippel Affidavit, and the Federal Case

As it happened, the entire police-citizen encounter between P.O. Correa and the Defendant was witnessed by a third party, Jared Sippel, whose affidavit is submitted herewith and appears immediately following the Misdemeanor Complaint (Exhibit A).  Mr. Sippel has sworn under oath to having witnessed the following:

> I personally observed Police Officer Jonathan Correa take the knife from Mr. Cracco and, without leaving my sight, attempt repeatedly to open the knife by means of centrifugal (centripetal) force by flicking his wrist suddenly and forcibly while holding the knife in one hand.  For the first few attempts, Officer Correa was completely unable to open the knife by that means, so he increased the amount of force and wrist swing that he imparted to the knife.  Eventually it did open.  I would estimate that Officer Correa tried four or five times before the knife finally swung open.  He did not try again after that.

Affidavit of Jared Sippel at ¶ 2.

There obviously remains a possible factual dispute that would materialize should P.O.

---

[1] *Dreyden*, as discussed above, holds that a folding knife that cannot be *readily* opened by gravity or centrifugal force is not a gravity knife.  Applying that standard would require an officer to differentiate between a knife that may readily be opened by centrifugal force and one that may not.  This the Misdemeanor Complaint also fails to do.

Page 3 of 7

Correa swear to having a different recollection of the events, but were the People to raise that factual dispute—or even to resolve it in their favor—that still would not change the fundamental flaw in the Misdemeanor Complaint itself, i.e., that it makes no reference whatsoever to P.O. Correa's training and experience, as is expressly required in *Dreyden*.

Nevertheless, in the interest of justice, it is worthwhile to bring to the attention of this Court the information gained from Mr. Sippel, a witness who uninterruptedly observed P.O. Correa's repeated attempts to open the knife before it eventually opened. According to Mr. Sippel's observations, the knife repeatedly (4-5 times) resisted opening by P.O. Correa's attempted "wrist-flicking," and therefore was not capable of "readily be[ing] opened by . . . centrifugal force," *Dreyden*, 15 N.Y. at 103-04, 905 N.Y.S.2d at 544.

Related to the foregoing, it should also be brought to the attention of this Court the fact that allegations consistent with Mr. Sippel's observations were recently made in a federal civil action, captioned *Knife Rights, et al. v. Cyrus Vance, Jr., et al.*, 11 Civ. 3918 (S.D.N.Y.), which challenged the manner of enforcement of the "gravity knife" prohibition in New York City. Specifically, one of the two individual plaintiffs in that case, John Copeland, alleged that he had been stopped by police in October 2010 by NYPD police officers who later "stated that they could open the [knife in his possession] by grasping the knife's handle and forcefully 'flicking' the knife body downwards. The NYPD police officers charged Mr. Copeland with Criminal Possession of a Weapon in the Fourth Degree [Penal Law § 265.01(1)] by issuing him a Desk Appearance Ticket." Amended Complaint at ¶¶ 25, 30 (true copy annexed as an Appendix to this brief).[2]  Significantly, Mr. Copeland also alleged that, prior to the October 2010 charge, he had shown the same knife to other NYPD officers on two separate occasions, and that "[b]oth officers had tried to open the knife from its closed position using a 'flicking' motion, but they

---

[2] The federal court never reached the merits of the plaintiffs' claims, instead dismissing the case on the ground that they lacked standing to sue. *Knife Rights, Inc. v. Vance*, 2013 WL 5434610 (S.D.N.Y. Sept. 25, 2013). It appears from the opinion dismissing the action that neither of the individual plaintiffs, while a criminal defendant, had challenged the sufficiency of the accustaory instrument or argued that the "gravity knife" prohibition was void for vagueness as applied. This appears to have been part of the basis for the Court's finding that those plaintiffs lacked standing, *see id.* at * 3.

could not, so they told Mr. Copeland that the knife was legal and returned it to him." *Id.* at ¶ 29.

The knife that Mr. Copeland possessed, like the one that the Defendant in this case possessed, was thus not capable of "readily be[ing] opened by . . . centrifugal force," *Dreyden*, 15 N.Y. at 103-04, 905 N.Y.S.2d at 544, but both individuals were nevertheless charged with possessing "gravity" knives, the *per se* possession of which is defined as a misdemeanor. In neither case, of course, was intent to use the knife as a weapon an element of the charged crime, nor was such behavior alleged. That misdemeanor criminal prosecutions should arise under such circumstances, where the question of whether a given folding knife in a citizen's possession will be deemed a "gravity" knife turns entirely on whether a given police officer is able to "flick" it open, perhaps after repeated tries,[3] is disturbing.

It is disturbing, of course, because it offends basic principles of criminal justice.

The Void-For-Vagueness Doctrine

In a 2003 opinion, Judge Rosenblatt of the Court of Appeals wrote a historical summary of the evolution of the void-for-vagueness doctrine, describing its progression from a general principle of criminal justice to a constitutional (due process) doctrine:

> It is axiomatic that a proscriptive law must provide people with reasonable notice of the conduct it prohibits. Defendant's challenge goes to the core of this precept. While he properly couches his argument in due process terms, courts had recognized the concept long before it took on constitutional status under the Fifth and Fourteenth Amendments. The point was made in this country's jurisprudential infancy, when almost two centuries ago a court explained that, as a rule of statutory construction, indefiniteness is a ground for nullification of penal laws. The court said: "It should be a principle of every criminal code, and certainly belongs to ours, that no person be adjudged guilty of an offence unless it be created and promulgated in terms which leave no reasonable doubt of their meaning" (*The Enterprise*, 1 Paine 32, 8 F. Cas. 732, 734 (1810)). The Supreme Court repeated the theme in *United States v. Brewer*, 139 U.S. 278, 288, 11 S. Ct. 538, 35 L. Ed. 190 (1891), still with no mention of the Constitution. Instead, these early decisions relied mostly on the familiar rule of construction that penal

---

[3] In Mr. Copeland's case, it is unclear from the pleading attached as the Appendix hereto how many times the arresting officer(s) had to "flick" the knife to get it to open. However, that other officers were unable to open it would indicate that it was not capable of "readily" being opened.

laws should be construed strictly, in the accused's favor (see Note, *Indefinite Criteria of Definiteness in Statutes*, 45 Harv. L. Rev. 160, 160 n. 2 (1931) (hereinafter Note, *Indefinite Criteria*)).

Courts soon came to believe that prosecution under a nullified or "void" statute amounts to a constitutional violation *(see International Harvester Co. v. Kentucky,* 234 U.S. 216, 34 S. Ct. 853, 58 L. Ed. 1284 [1914]; see generally Note, *Indefinite Criteria,* 45 Harv. L. Rev. at 160 n. 3). Eventually, the Supreme Court characterized vagueness as a due process infirmity, holding that a "statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law" *(see Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926)).

Our own decisional law took a similar path. We spoke early of the need for clear statutory warnings to alert people as to prohibited conduct *(see People v. Phyfe,* 136 N.Y. 554, 558 559, 32 N.E. 978 (1893); *see also People v. Taylor,* 192 N.Y. 398, 400, 85 N.E. 759 (1908)). By 1932, we equated vagueness with unconstitutionality (*see People v. Grogan,* 260 N.Y. 138, 145 149, 183 N.E. 273 (1932)) and in 1973 struck down a vague loitering statute on due process grounds *(see People v. Berck,* 32 N.Y.2d 567, 347 N.Y.S.2d 33, 300 N.E.2d 411 (1973)). We did so again nine years later when dealing with a noise control ordinance (*see People v. New York Trap Rock Corp.,* 57 N.Y.2d 371, 456 N.Y.S.2d 711, 442 N.E.2d 1222 (1982)), and most recently, when upholding a challenge to another loitering statute (*see People v. Bright,* 71 N.Y.2d 376, 526 N.Y.S.2d 66, 520 N.E.2d 1355 (1988)).

*People v. Stuart*, 100 N.Y.2d 412, 418-19, 765 N.Y.S.2d 1, 3 (2003) (footnotes omitted).

It is clear from the above history that the void-for-vagueness doctrine may be viewed as either a due process concept or as an even more fundamental—and historically more ancient—principle of criminal justice. Simply put, in the context of this case, if an individual is to be prosecuted for possession of a "gravity knife," it ought to be clear what sorts of folding knives are prohibited, since some are prohibited and some are not. The statutory definition of a "gravity knife" is "any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device," Penal Law § 265.00(5). The Court of Appeals, in turn, has said: "This definition distinguishes gravity knives from certain folding knives that cannot *readily* be opened by gravity or centrifugal force," *Dreyden, supra,* 15 N.Y. at

Page 6 of 7

103-04, 905 N.Y.S.2d at 544 (emphasis added).  In that same case, the Court said: "An arresting officer should, *at the very least*, explain briefly, *with reference to his training and experience*, how he or she formed the belief that the object observed in defendant's possession was a gravity knife." *Id.*, 15 N.Y. at 104, 905 N.Y.S.2d at 544 (emphasis added).  This the Misdemeanor Complaint has utterly failed to do.

The Court of Appeals in *Dreyden* clearly sought to eliminate any vagueness in the statute, both (1) by requiring that the arresting officer explain, with reference to his training and experience, how he or she formed the belief that the object observed in defendant's possession was a gravity knife and (2) by reading the definition to impose the requirement that a "gravity knife" be *readily* be opened by gravity or centrifugal force.

Conclusion

For all of the foregoing reasons, the Misdemeanor Complaint should be DISMISSED.

Dated: April 25, 2014

Respectfully submitted,

James M. Maloney
Attorney for Defendant
33 Bayview Avenue
Port Washington, NY 11050
(516) 767-1395
maritimelaw@nyu.edu

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK   :

                - against -   :

JOSPEH CRACCO,   :

                     Defendant.   :

-------------------------------------------------------------------x

         **2013CN009690**

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION

The crux of the People's opposition to the instant motion is to be found in paragraph 4 of

the Affidavit in Response to the Defendant's Omnibus Motion ("Opp. Aff."), where the

designated Assistant District Attorney swears to the truth of the following proposition:

> The Penal Law imposes a simple functional test—holding the knife by the handle
> and by *a flick of the wrist* opening the blade into a locked position—to determine
> whether a knife constitutes an illegal gravity knife, regardless of its make, model,
> or intended use.
>
> Opp. Aff. at 2 (emphasis added).

While it would be reasonable for police stopping persons suspected of having pocket

knives in their possession to apply the above-defined "simple functional test"—whether a knife

can be opened by "a [i.e., *one*] flick of the wrist"—the actual test being applied in New York

City is that of "holding the knife by the handle and by *as many flicks of the wrist as it takes*

opening the blade into a locked position." This is a substantially different test from the one that

the designated Assistant District Attorney has sworn is the one imposed by the Penal Law. The

latter "test," which would allow an unspecified number of repeated attempts, may indeed be

"simple" and/or "functional," but it is neither reliable nor consistent. This is so because whether

a given knife may open after an undefined and indefinite number of attempts will depend on such

factors as the upper body strength and skill of the Officer doing the "wrist flick test" and how

many times he or she is willing to try to get the knife to open before giving up and letting the

suspect go free.

Significantly, the test articulated by the designated Assistant District Attorney—whether a

knife can be opened by "a [*one*] flick of the wrist"—would arguably be consistent with the Court

of Appeals' explanation of the definition of a "gravity knife" as detailed in *People v. Dreyden*, 15

N.Y.3d 100, 905 N.Y.S.2d 542 (2010):

> Not every knife is a weapon for purposes of Penal Law § 265.01(1), which
> specifically outlaws possession of a gravity knife, among other weapons. The
> Penal Law defines a gravity knife as one with a blade that (1) "is released from the
> handle or sheath thereof by the force of gravity or the application of centrifugal
> force" and that (2) "when released, is locked in place by means of a button, spring,
> lever or other device" (Penal Law § 265.00 [5]). This definition *distinguishes*
> *gravity knives* from certain folding knives that cannot *readily* be opened by
> gravity or centrifugal force . . .

*Dreyden*, 15 N.Y. at 103-04, 905 N.Y.S.2d at 544 (emphasis added).  As already posited in

Defendant's Main Brief and not contested by the People in their opposition, it logically flows

from the above that a folding knife that cannot be *readily* opened by gravity or centrifugal force

is not a gravity knife.  But the test that was employed here, which allows an indefinite number of

undocumented attempts, does not distinguish between knives that may readily be opened by such

means and those that may not.  Obviously, a knife that will open only after an indefinite number

of repeated attempts cannot reasonably be said to be capable of being *readily* opened by gravity

or centrifugal force.

The People argue that "the affidavit filed by the defense witness [which states that it took

Page 2 of 6

the Officer several tries to get the knife to open] does not negate the validity of the complaint,"

Opp. Aff. at 4 (¶ 8).  However, in the Misdemeanor Complaint, Officer Correa nowhere states

how many times he tried to flick open the knife before it eventually opened.  Thus it is quite

incorrect to state, as the designated Assistant District Attorney has done, that "the affidavit

conflicts with Police Officer Correa's statements in the complaint."  *Id.*  He made no statements

at all on the subject.  Likewise, he made no reference whatsoever to his training and experience,

as is expressly required by the Court of Appeals (a point the People never address in their

opposition):

> A conclusory statement that an object recovered from a defendant is a gravity
> knife does not alone meet the reasonable cause requirement. An arresting officer
> should, *at the very least*, explain briefly, *with reference to his training and
> experience*, how he or she formed the belief that the object observed in
> defendant's possession was a gravity knife.

*Dreyden*, 15 N.Y. at 104, 905 N.Y.S.2d at 544 (emphasis added).

Had the Misdemeanor Complaint made some reference to Officer Correa's training and

experience (which presumably would have included training to make him aware that, as the

Court of Appeals has also explained in *Dreyden, see supra*, a gravity knife is one capable of

being *readily* opened by gravity or centrifugal force), the Misdemeanor Complaint would have

satisfied the requirements of *Dreyden*.  But it did not.

The People further argue that "the affidavit filed by the defense witness . . . raises factual

issues to be adjudicated at trial."  Opp. Aff. at 4 (¶ 8).  But this argument is premised on the

flawed proposition (see above) that "the affidavit conflicts with Police Officer Correa's

statements in the complaint."  *Id.*  Again, it does not.

A moment's reflection reveals the systemic flaw in the People's reasoning as to the

sufficiency of the accusatory instrument in the current context.  The People essentially posit that

NYPD Officers may arrest persons for having pocket knives that, only after repeated attempts,

are capable of being "flicked" open, but nevertheless omit from the accusatory instruments

charging those persons with misdemeanor weapons possession any mention of how many

attempts it took to get the knife open, leaving that question as "an issue for trial," while at the

same time also omitting from the accusatory instruments charging those persons with

misdemeanor weapons possession any "reference to [the] training and experience [providing the

basis for] how he or she formed the belief that the object observed in defendant's possession was

a gravity knife," *Dreyden*, 15 N.Y. at 104, 905 N.Y.S.2d at 544.  Such a situation, if tolerated,[1]

would not only allow an end run around both of the requirements articulated in *Dreyden* as

discussed above (reference to training and experience, and the knife's capability of being readily

opened by gravity or centrifugal force), but would permit or even encourage the City to train its

officers to try as many times as possible to flick open a given knife even if it were not capable of

being *readily* opened in that manner, since neither the number of attempts nor any reference to

such training would need to appear in the accusatory instruments.

Indeed, the federal lawsuit referenced in Defendant's Main Brief, *Knife Rights, et al. v.

Cyrus Vance, Jr., et al.*, 11 Civ. 3918 (S.D.N.Y.), indicates that this is precisely what has, within

the past few years, occurred on a City-wide scale, leaving individuals and businesses at a loss to

determine with clarity whether certain folding knives might ever be deemed "gravity knives" by

---

[1] It is, of course, urged that this Court *not* tolerate the above-described situation, and that it impose the requirement that an arresting officer "at the very least, explain briefly, *with reference to his training and experience,* how he or she formed the belief that the object observed in defendant's possession was a gravity knife." *Dreyden*, 15 N.Y. at 104, 905 N.Y.S.2d at 544 (emphasis added).

virtue of the possibility of their being opened by repeated wrist-flicking.  As noted in

Defendant's Main Brief, the substantive issues in that case were not reached, and the federal

complaint was dismissed on putative lack-of-standing grounds, but it is currently on appeal to the

Second Circuit.  On May 15, 2014, the Appellant's brief and a two-volume Joint Appendix

consisting of some 375 pages were filed electronically.  For the benefit of this Court and others,

the undersigned has obtained same from PACER and made the documents available for

downloading, exactly as filed in pdf format, free of charge online at the following secure url:

**https://files.nyu.edu/jmm257/public/hoplological/13-4840**

A declaration made by the President of a New York corporation, consisting of pages A59

through A61 of the Joint Appendix (volume 1) in *Knife Rights, et al. v. Cyrus Vance, Jr., et al.*

(2d Cir. Docket No. 13-4840), is annexed hereto as an Appendix.  In it, the declarant describes

his inability "to determine with any certainty whether particular common folding knives in its

product line are legal in New York City."  *Id*. at ¶ 8.

As noted in Defendant's Main Brief (but not addressed in the People's opposition and

therefore not discussed at length here), the uncertainty regarding whether a given knife can be

"flicked" open after repeated attempts is closely related to the vagueness doctrine.  Here, the

Defendant could not have known with any degree of certainty whether the knife he possessed

would be deemed a "gravity knife" under New York City's new enforcement initiative.

To charge Mr. Cracco with a crime under these circumstances, without even specifying in

the accusatory instrument the very items that the Court of Appeals has explicitly required, is

unjust and wholly at odds with a fair and impartial criminal justice system.

Conclusion

For all of the foregoing reasons, the Misdemeanor Complaint should be DISMISSED.

Dated: May 16, 2014

Respectfully submitted,

James M. Maloney
Attorney for Defendant
33 Bayview Avenue
Port Washington, NY 11050
(516) 767-1395
maritimelaw@nyu.edu