UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KNIFE RIGHTS, INC.; JOHN COPELAND; PEDRO PEREZ; KNIFE RIGHTS FOUNDATION, INC.; and NATIVE LEATHER, LTD.,<br><br>                     Plaintiffs,<br><br>     -against-<br><br>CYRUS VANCE, JR., in his Official Capacity as the New York County District Attorney; and CITY OF NEW YORK,<br><br>                     Defendants. | No. 11 Civ. 3918 (BSJ) (RLE)<br><br>ECF Case<br><br>**AMENDED COMPLAINT** |



Plaintiffs KNIFE RIGHTS, INC.; JOHN COPELAND; PEDRO PEREZ; KNIFE RIGHTS FOUNDATION, INC.; and NATIVE LEATHER, LTD., as and for their Amended Complaint against Defendants CYRUS VANCE, JR.; and CITY OF NEW YORK, allege as follows:

1. This action for deprivation of civil rights challenges New York City's enforcement of State laws that prohibit "switchblade" and "gravity" knives against ordinary folding pocket knives that are designed to resist opening from the closed position ("Common Folding Knives"). These Common Folding Knives fall into an entirely different class than switchblade and gravity knives because the mechanisms of Common Folding Knives (unlike switchblade and gravity knives) have a mechanical bias in favor of the closed position, and a user must overcome this bias in order to open the blade from its closed position. The State laws prohibiting switchblade and gravity knives do not provide adequate notice that ordinary Common Folding Knives might be prohibited, and hence, the enforcement of these State laws in

this manner violates the Due Process Clause of the Fourteenth Amendment as being void-for-vagueness. Plaintiffs seek declaratory and injunctive relief and attorney's fees and costs.

## INTRODUCTION

2. State law defines a switchblade knife as "any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife," N.Y. Penal Law § 265.00(4), and a gravity knife as "any knife having a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force," id. § 265.00(5). The essential attribute of both switchblade and gravity knives is that they have no mechanical resistance (or bias) against opening from the closed position that must be overcome in order for them to open.

3. Common Folding Knives are distinct from switchblade and gravity knives because Common Folding Knives are designed to resist opening from the closed position, and a person must overcome this resistance in order to open a Common Folding Knife. However, the New York City Police Department ("NYPD") and Defendant District Attorney Cyrus Vance, Jr. (the "District Attorney") apply the State laws prohibiting switchblade and gravity knives to include Common Folding Knives that – in their view – can be "readily" opened with a "wrist-flicking" motion. Defendants sometimes interpret these State laws so broadly that they deem *any* Common Folding Knife to be prohibited, regardless of how readily it can actually be opened. NYPD officers arrest and charge individuals found carrying such Common Folding Knives with Criminal Possession of a Weapon in the Fourth Degree, and the District Attorney prosecutes the alleged offenses. A person faces one year in prison if convicted, and most individuals choose to accept plea agreements, rather than bearing the expense, and risk, of a defense on the merits.

4.    In June 2010 the District Attorney announced he had initiated enforcement actions against various knife retailers in New York City (the "NYC Retailers"). The District Attorney asserted that many of the NYC Retailers' Common Folding Knives were switchblade or gravity knives and threatened to impose criminal charges. The District Attorney targeted reputable and established businesses such as Paragon, Orvis, Eastern Mountain Sports, and Home Depot, even deeming common utility knives found in hardware stores to be prohibited. Rather than face prosecution, the NYC Retailers ultimately agreed to make monetary payments to the City, to turn over their Common Folding Knives, and to refrain from selling alleged switchblade and gravity knives.

5.    Many of the NYC Retailers continue to sell a variety of Common Folding Knives at their New York State locations outside of New York City, including those that they no longer sell in the City. Although the Penal Law's prohibition on switchblade and gravity knives applies equally throughout all of New York State, see N.Y. Penal Law § 265.01(1), other localities have not attempted to strain the definitions to cover Common Folding Knives.

6.    Because it is impossible for retailers to know whether the NYPD or the District Attorney will contend that any particular Common Folding Knife is a "switchblade" or "gravity" knife, many retailers avoid the risk by refusing to carry *any* Common Folding Knives in their New York City locations. Other retailers severely limit the Common Folding Knives they offer for sale in the City in an attempt to avoid prosecution by only selling Common Folding Knives that are very difficult to open.

### JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

8. This Court has personal jurisdiction over each of the Defendants because, *inter alia*, they acted under the color of laws, policies, customs, and/or practices of the City and/or State of New York and/or within the geographic confines of the State of New York.

9. Venue is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

10. Plaintiff Knife Rights, Inc. is a non-profit member organization incorporated under the laws of the State of Arizona with its principal place of business in Gilbert, Arizona. Knife Rights promotes legislative and legal action, as well as research, publishing, and advocacy, in support of people's ability to carry and use knives and tools.

11. Plaintiff John Copeland ("Mr. Copeland") is a citizen and resident of the State of New York residing in Manhattan. Mr. Copeland is a 34 year-old painter whose work is recognized worldwide. Galleries in New York, Copenhagen, and Amsterdam currently feature Mr. Copeland's work, and galleries throughout the United States and the world have featured Mr. Copeland's work in recent years.

12. Plaintiff Pedro Perez ("Mr. Perez") is a citizen and resident of the State of New York residing in Manhattan. Mr. Perez is 44 years old and has been employed as a purveyor of fine arts and paintings for the past 18 years. He possesses two associates degrees and Series 7 and 63 securities licenses. In the course of his art business, he often transports artwork and tools throughout the City. One of the tools he finds especially useful is a knife, as he often needs to cut canvas and open packaging.

13. Plaintiff Knife Rights Foundation, Inc. ("Knife Rights Foundation") is a non-profit corporation organized under the laws of the State of Arizona with its principal place of business in Gilbert, Arizona. Knife Rights Foundation is organized to promote education and

research regarding knives and edged tools and is recognized under § 501(c)(3) of the Internal Revenue Code.

14. Plaintiff Native Leather, Ltd. ("Native Leather") is a corporation organized under the laws of the State of New York with its principal place of business at 203 Bleecker Street in New York, New York. Native Leather operates a retail store and sells leather goods and other items, including folding knives. Native Leather is one of the "NYC Retailers" referenced previously.

15. Defendant District Attorney Cyrus R. Vance (the "District Attorney") is sued in his official capacity as District Attorney for the County of New York, responsible for executing and administering the laws of the State of New York, including §§ 265.00 and 265.01 of the Penal Law. The District Attorney has enforced the State laws at issue against Plaintiffs, he continues to enforce the State laws at issue against Plaintiffs, and he threatens to enforce the State laws at issue against Plaintiffs in the future.

16. Defendant City of New York (the "City") is a municipal corporation incorporated under the laws of the State of New York. The City is authorized by law to maintain the NYPD, which acts for it in the area of law enforcement, and the City is ultimately responsible for the NYPD and assumes the risks incidental to the maintenance of it and its employees. The NYPD is an agency of the City. Officers of the NYPD have enforced the State laws at issue against Plaintiffs, they continue to enforce the State laws at issue against Plaintiffs, and they threaten to enforce the State laws at issue against Plaintiffs in the future.

### BACKGROUND OF SWITCHBLADE AND GRAVITY KNIVES

17. A switchblade knife features a blade under spring tension that opens automatically from the closed position when a user activates a button or lever in the knife's handle. When the user activates the button or lever, the spring-loaded mechanism causes the

-5-

knife's blade to open automatically and lock in place in its open position. When closed, the mechanism of a switchblade knife is mechanically inclined (or "biased") to open. The button or lever of a switchblade serves only to release the blade so that the knife's spring-loaded mechanism can open it.

18.  World War II German military engineers designed the gravity knife for paratroopers who might need to cut themselves free of their parachutes while they were injured, stuck in a tree, or for other reasons had limited use of their hands. When a user depresses a button (or other mechanism), the blade of a gravity knife simply falls out its front by the force of Earth's gravity alone, without mechanical assistance, so long as the knife is pointed downward. If the blade does not fall out, or if it falls out only partway, a user can "flick" the knife's body to help the blade fall completely out. See generally United States v. Irizarry, 509 F. Supp. 2d 198, 205 (E.D.N.Y. 2007).

### STATE LAWS AT ISSUE

19.  New York State law prohibits the possession of both gravity knives and switchblade knives. See N.Y. Penal Law § 265.01(1).

20.  A switchblade knife is "any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife." N.Y. Penal Law § 265.00(4). New York first prohibited switchblade knives in 1954. See 1954 N.Y. Laws ch. 268., sec. 1.

21.  Four years later, the New York legislature amended the Penal Law to also prohibit gravity knifes, which it defined as:

> any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force and which, when released, is locked in place by means of a button, spring, lever or other device[.]

1958 N.Y. Laws ch. 107, sec. 1. This same definition remains substantively in force today. See N.Y. Penal Law § 265.00(5).

22.  The Court of Appeals has ruled that the statutory definition of gravity knife can include a Common Folding Knife if a police officer can cause the blade of the Common Folding Knife to *swivel* open by snapping the closed knife body downwards – if the blade opens "readily." People v. Dreyden, 15 N.Y.3d 100, 104, 931 N.E.2d 526, 528 (2010).

23.  However, because the mechanism of a Common Folding Knife resists opening from the closed position, the determination of whether the blade of any particular Common Folding Knife (or class of Common Folding Knives) opens "readily" is intrinsically vague. First, the extent to which any person can get any particular Common Folding Knife to "flick" open depends largely upon the strength of that person's arm and wrist and the extent to which the person has practiced the "wrist-snapping" maneuver. One police officer who has practiced the maneuver may be able to "flick" open a Common Folding Knife that another police officer – or the Common Folding Knife's owner – cannot. Furthermore, the amount of force required to overcome the bias toward closure varies from unit to unit of the same make and model of knife due to manufacturing inconsistencies. Additionally, some Common Folding Knives contain a tension adjustment screw that can be used to vary the amount of force required by the user to open the blade. Second, people can reasonably disagree about the relative effort that may be needed to "readily" open a Common Folding Knife. Does the Common Folding Knife need to "flick" open for *any* police officer, or is it sufficient if one police officer (alone) can get the blade to "flick" open? Does the officer need to be able to make the knife consistently "flick" open, or is it sufficient if the police officer is able to successfully perform the maneuver at least one time, out of multiple attempts?

24.     The possession of a switchblade or gravity knife constitutes the crime of Criminal Possession of a Weapon in the Fourth Degree, which is a Class A misdemeanor and is punishable by up to one year in prison. N.Y. Penal Law §§ 70.15(1), 265.01.

### ENFORCEMENT OF THE SWITCHBLADE AND GRAVITY KNIFE LAWS BY DEFENDANTS

25.     On October 10, 2010 NYPD police officers stopped Plaintiff John Copeland near his home on Manhattan's lower east side after observing a metal clip in Mr. Copeland's pocket.

26.     The NYPD police officers who detained and charged Mr. Copeland were acting in the course and scope of their duties for the City at all material times.

27.     Mr. Copeland was carrying a Benchmade brand Common Folding Knife with a blade of approximately 3 inches and a locking mechanism that locks the blade in place once it is in its fully open position. This Benchmade knife is designed so that its blade resists opening from the closed position.

28.     Mr. Copeland purchased his Benchmade knife at Paragon Sports in Manhattan in approximately October 2009. The knife features a stud mounted on the blade that allows a user to overcome the knife's resistance against opening and swivel the blade open with his or her thumb. Mr. Copeland selected this knife because he wanted a knife that he could open with one hand. Mr. Copeland found this feature especially useful because, among other reasons, he often needs to use his knife at the same time that he is using his other hand to paint or to hold canvas. Mr. Copeland could remove this knife from his pocket and manipulate the blade open by using only one hand. Mr. Copeland also selected this knife because the blade locked in place once open, and this prevented the blade from accidentally closing on his fingers.

29.     Prior to his October 2010 charge, Mr. Copeland had shown his Benchmade knife to NYPD police officers on two separate occasions, and he had asked the officers whether or not

his knife was illegal. Both officers had tried to open the knife from its closed position using a "flicking" motion, but they could not, so they told Mr. Copeland that the knife was legal and returned it to him.

30. The NYPD police officers who charged Mr. Copeland in October 2010 stated that they could open the Benchmade knife's blade by grasping the knife's handle and forcefully "flicking" the knife body downwards, and they alleged that it was therefore a prohibited gravity knife. The NYPD police officers charged Mr. Copeland with Criminal Possession of a Weapon in the Fourth Degree by issuing him a Desk Appearance Ticket.

31. Mr. Copeland denied that his knife was a gravity knife, retained private counsel, and defended the charge on its merits. The City offered to resolve the charge against Mr. Copeland by entering into an Adjournment in Contemplation of Dismissal ("ACD"), and the City and Mr. Copeland consummated this arrangement on January 26, 2011. Mr. Copeland was not incarcerated and he did not have to pay any fine or fee or perform any community service.

32. Mr. Copeland no longer carries a Common Folding Knife in the City. Mr. Copeland would carry a Common Folding Knife, but he does not do so because he fears that he will again be charged with Criminal Possession of a Weapon, and he is unable to determine whether any particular Common Folding Knife might be deemed a prohibited switchblade or gravity knife by the District Attorney or NYPD. In addition, Mr. Copeland has been unable to purchase a Common Folding Knife similar to the Benchmade knife in the City. Mr. Copeland would purchase another similar Common Folding Knife, but he refrains from doing so because he fears arrest and prosecution, and also because he is unable to find any such knives for sale in the City.

33. On April 15, 2010 NYPD police officers stopped Plaintiff Pedro Perez in a Manhattan subway station after observing a metal clip in Mr. Perez's pocket.

34. The NYPD police officers who detained and charged Mr. Perez were acting in the course and scope of their duties for the City at all material times.

35. Mr. Perez was carrying a Gerber brand Common Folding Knife with a blade of approximately 3.75 inches and a "linerlock" locking mechanism that locks the blade in place once it is in its fully open position. This Gerber knife is designed so that its blade resists opening from the closed position.

36. Mr. Perez purchased the Gerber knife at Tent & Trail, an outdoor supply store in lower Manhattan, in approximately April 2008. The knife features a stud mounted on the blade that allows a user to overcome the knife's resistance against opening and swivel the blade open with his or her thumb. Mr. Perez selected the knife because he wanted a knife that he could open with one hand. Mr. Perez found this feature especially useful because, among other reasons, in his work as an art dealer he often needs to carefully cut artwork away from frames. A one-handed opening knife is useful because it allows him to use his other hand to hold the canvas while preparing for and making a cut. Mr. Perez also selected this knife because the blade locks in place once open, and this prevented the blade from accidentally closing on his fingers.

37. The NYPD police officers alleged that that the Gerber knife was a prohibited gravity knife. Although the officers could not themselves open the knife using a "flicking" motion, the officers asserted that it would (theoretically) be possible to do so, and that the possibility to open the knife using any type of a "flicking" motion made the knife a prohibited gravity knife. The NYPD police officers charged Mr. Perez with Criminal Possession of a Weapon in the Fourth Degree by issuing him a Desk Appearance Ticket.

38. Mr. Perez denied that his knife was a gravity knife, retained private counsel, and defended the charge on its merits. The City offered to resolve the charge against Mr. Perez by entering into an ACD, and the City and Mr. Perez consummated this arrangement on November 17, 2010. Mr. Perez was not incarcerated, but he agreed to perform 7 days' community service.

39. Mr. Perez no longer carries a Common Folding Knife in the City. Mr. Perez would carry a Common Folding Knife, but he does not do so because he fears that he will again be charged with Criminal Possession of a Weapon, and he is unable to determine whether any particular Common Folding Knife might be deemed a prohibited switchblade or gravity knife by the District Attorney or NYPD. In addition, Mr. Perez has been unable to purchase a Common Folding Knife similar to the Gerber knife in the City. Mr. Perez would purchase another similar Common Folding Knife, but he refrains from doing so because he fears arrest and prosecution, and also because he is unable to find any such knives for sale in the City.

40. On June 17, 2010 the District Attorney announced plans to pursue charges against the NYC Retailers, including sporting goods retailers such as Paragon, Eastern Mountain Sports, Orvis, hardware stores such as Home Depot, and Plaintiff Native Leather, on the ground that the NYC Retailers were marketing prohibited switchblade and gravity knives.

41. The alleged switchblade and gravity knives sold by the NYC Retailers were similar to the Benchmade and Gerber knives described above in that they were Common Folding Knives designed to resist opening from the closed position.

42. Rather than face prosecution, the NYC Retailers agreed to pay the City approximately $1.8 million and to generally turn over Common Folding Knives held in inventory, in exchange for the City's agreement not to pursue charges.

43. Although the NYC Retailers and the City agreed that the NYC Retailers would remove some Common Folding Knives from their New York City stores, the City agreed to permit certain of the NYC Retailers, such as Paragon, to continue selling certain "custom" Common Folding Knife models. Aside from their significant value, these "custom" knives were and are functionally identical to the other Common Folding Knives that the District Attorney had alleged were illegal and that the NYC Retailers had agreed not to (otherwise) sell in the City.

44. Like other NYC Retailers, Plaintiff Native Leather entered into a Deferred Prosecution Agreement ("DPA") with DA Vance to avoid prosecution. Under this DPA, Native Leather turned over many of its folding knives to DA Vance, paid monetary penalties, adopted a compliance policy that DA Vance approved, and pledged to cease from selling switchblade and gravity knives as defined in N.Y. Penal Law § 265.00(4)-(5).

45. Although most provisions of Native Leather's DPA have expired, Native Leather continues to adhere to its compliance program in an attempt to avoid running afoul of DA Vance's interpretation of the State laws that prohibit switchblade and gravity knives. Under this compliance program, a designated employee tries several times to open each folding knife that Native Leather receives using the "wrist-flick" procedure otherwise described in this Amended Complaint. Native Leather only sells folding knives that the designated employee is not able to "wrist-flick" open even one time. However, there is no assurance that some other person will not be able to "wrist-flick" such a knife open in the future.

46. Prior to June 2010, Native Leather sold a variety of Common Folding Knives with locking blades, but it now sells only lock-blade Common Folding Knives that have passed the test described above. Plaintiff Native Leather would currently sell a significantly wider variety of Common Folding Knives but for Defendant DA Vance's threat to enforce the gravity knife

law against them. Prior to June 2010, Native Leather also sold Common Folding Knives that featured "assisted-opening" mechanisms, which are designed to assist the user in opening the blade to its fully open position after it has been being opened partway. Native Leather now no longer sells "assisted-opening" knives out of its fear that DA Vance would contend they were switchblade knives prohibited by the Penal Law.

## ORGANIZATIONAL STANDING OF PLAINTIFFS KNIFE RIGHTS AND KNIFE RIGHTS FOUNDATION

47. Knife Rights is a membership organization that has members and supporters throughout the United States, including members and supporters who live in both the City and State of New York, as well as members and supporters who travel through the City and State. One of the core purposes of Knife Rights is to vindicate the legal rights of individuals and businesses who are unable to act on their own behalf in light of the costs and time commitments involved in litigation. Knife Rights brings this action on behalf of both itself and its members.

48. Defendants have arrested, charged, prosecuted, and/or threatened to arrest, charge, and prosecute individual members and supporters of Knife Rights found carrying Common Folding Knives for alleged violations of the State laws that prohibit switchblade and gravity knives. Individual members and supporters of Knife Rights face an ongoing threat of arrest and prosecution by Defendants for violating the State laws prohibiting switchblade and gravity knives if they carry Common Folding Knives in the City.

49. The members and supporters of Knife Rights also include individuals who would possess and/or carry Common Folding Knives in New York City, but who refrain from doing so based on their understanding that Defendants would arrest, charge, and prosecute them for allegedly violating the State laws prohibiting switchblade and gravity knives. These individual members and supporters face an ongoing threat of arrest and prosecution by Defendants for

violating the State laws prohibiting switchblade and gravity knives if they carry Common Folding Knives in the City.

50. The members and supporters of Knife Rights also include businesses that have sold Common Folding Knives to individuals and/or businesses in New York City in the past, but that now refrain from doing so based on their understanding that Defendants would arrest and/or prosecute them for allegedly violating the State laws prohibiting switchblade and gravity knives. These individual members and supporters face an ongoing threat of arrest and prosecution by Defendants for violating the State laws prohibiting switchblade and gravity knives if they sell Common Folding Knives to individuals or businesses in New York City.

51. Finally, the members and supporters of Knife Rights include businesses that would sell Common Folding Knives to retailers in New York City, but that are unable to do so because the retailers now refuse to sell some or all of their products in the City in light of Defendants' past and ongoing threatened enforcement of the State laws prohibiting switchblade and gravity knives. The ongoing enforcement and threatened enforcement of the Defendants prevent these members and supporters from making sales of Common Folding Knives to potential customers in the City.

52. Knife Rights Foundation has paid or contributed towards, and continues to pay and contribute towards, some of the monetary expenses that Knife Rights has incurred and continues to incur in consequence of Defendants' threatened enforcement of the State laws prohibiting switchblade and gravity knives against Common Folding Knives. These expenditures have come at the expense of other organizational priorities of Knife Rights Foundation.

## THE DUE PROCESS CLAUSE INVALIDATES
## VAGUE APPLICATIONS OF STATE LAWS

53.  The Fourteenth Amendment provides in pertinent part:

> No State shall . . . deprive any person of life, liberty, or property, without due process of law[.]

U.S. Const. Amend. XIV, § 1.

54.  "Our Constitution is designed to maximize individual freedoms within a framework of ordered liberty. Statutory limitations on those freedoms are examined for substantive authority and content as well as for definiteness or certainty of expression." Kolender v. Lawson, 461 U.S. 352, 357 (1983).

55.  "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926); accord Farrell v. Burke, 449 F.3d 470, 485 (2d Cir. 2006).

56.  A law that burdens constitutional rights or that imposes criminal penalties must meet a higher standard of specificity than a law that merely regulates economic concerns. Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498-99 (1982). This higher standard applies here because the laws at issue impose criminal penalties. In addition, a higher standard also applies because the Common Folding Knives at issue here can be used as weapons, and the Second Amendment protects "the individual right to possess and carry *weapons* in case of confrontation." Heller v. District of Columbia, 554 U.S. 570, 592 (2008) (emphasis added).

### FIRST CAUSE OF ACTION

### N.Y. PENAL LAW §§ 265.01(1) AND 265.00(4) ARE VOID-FOR-VAGUENESS AS APPLIED TO FOLDING KNIVES THAT RESIST OPENING FROM THE CLOSED POSITION

57. The invalidities of the aforesaid statutes, and Defendants' application of same, violate Plaintiffs' Fourteenth Amendment due process right and damage Plaintiffs in violation of 42 U.S.C. § 1983.

58. The Due Process Clause of the Fourteenth Amendment invalidates Penal Law §§ 265.01(1) and 265.00(4) as void-for-vagueness, as applied to Common Folding Knives that are designed to resist opening from their folded and closed position.

### SECOND CAUSE OF ACTION

### N.Y. PENAL LAW §§ 265.01(1) AND 265.00(5) ARE VOID-FOR-VAGUENESS AS APPLIED TO FOLDING KNIVES THAT RESIST OPENING FROM THE CLOSED POSITION

59. The invalidities of the aforesaid statutes, and Defendants' application of same, violate Plaintiffs' Fourteenth Amendment due process right and damage Plaintiffs in violation of 42 U.S.C. § 1983.

60. The Due Process Clause of the Fourteenth Amendment invalidates Penal Law §§ 265.01(1) and 265.00(5) as void for vagueness, as applied to Common Folding Knives that are designed to resist opening from their folded and closed position.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

    i.    declaratory judgment that N.Y. Penal Law §§ 265.01(1) and 265.00(4) are void-for-vagueness in violation of the Due Process Clause of the Fourteenth Amendment, as applied to Common Folding Knives that are designed to resist opening from their folded and closed position;

    ii.    declaratory judgment that N.Y. Penal Law §§ 265.01(1) and 265.00(5) are void-for-vagueness in violation of the Due Process Clause of the

                Fourteenth Amendment, as applied to Common Folding Knives that are designed to resist opening from their folded and closed position;

iii.    preliminary and/or permanent injunctive relief restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of this injunction, from enforcing N.Y. Penal Law §§ 265.01(1) and 265.00(4) as to Common Folding Knives that are designed to resist opening from their folded and closed position;

iv.    preliminary and/or permanent injunctive relief restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of this injunction, from enforcing N.Y. Penal Law §§ 265.01(1) and 265.00(5) as to Common Folding Knives that are designed to resist opening from their folded and closed position;

v.    such other and further relief, including injunctive relief, against all Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and

vi.    attorney's fees and costs pursuant to 42 U.S.C. § 1988.

Dated: New York, New York
       September 24, 2012

                            **DAVID JENSEN** PLLC

                            By: /s/ David D. Jensen
                                David D. Jensen, Esq.
                            111 John Street, Suite 230
                            New York, New York 10038
                            Tel: 212.380.6615
                            Fax: 917.591.1318
                            david@djensenpllc.com
                            *Attorney for Plaintiffs*