UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Joseph Cracco,<br><br>                        Plaintiff,<br><br>-against-<br><br>City of New York, *et al.*,<br><br>                       Defendants. | DECLARATION OF ASSISTANT DISTRICT ATTORNEY DAN M. RATHER<br><br>14 Civ. 8235 (PAC) |

       DAN M. RATHER, an attorney duly admitted to practice in the State of New York, declares under penalty of perjury and pursuant to 28 U.S.C. §1746, that the following is true and correct:

       1.     I am an Assistant District Attorney at the New York County District Attorney's Office. I have served as a prosecutor with the District Attorney's Office since August, 1985 – for nearly thirty-two years.

       2.     From 1985 to 1991, I was a line Assistant in the Trial Division in Trial Bureau 60. In that capacity, I prosecuted cases involving a range of misdemeanor and felony offenses from inception to resolution, including homicides, sex crimes, street crimes, weapons and narcotics crimes, theft and fraud, and domestic violence.

       3.     As a first and second year Assistant, I was assigned to Criminal Court where I prosecuted primarily misdemeanor offenses, including the offense of possession of a gravity knife.

       4.     During my first year, my senior colleagues and supervisors instructed me to apply a wrist flick test to identify a gravity knife by gripping the handle of the knife and flicking my wrist to see if the blade would release and lock in place.

5. From 1990 to 1991, I served as a Criminal Court Supervisor and was responsible for the training and supervision of first and second year Assistants in the prosecution of misdemeanor offenses. During that time, I maintained my own active caseload of felony investigations and prosecutions.

6. I instructed the misdemeanor Assistants under my supervision to apply the wrist flick test to identify gravity knives.

7. From 1992 to 1993, I was assigned to the Homicide Investigations Unit where I conducted long term investigations and prosecutions of violent drug gangs.

8. The District Attorney's Office founded the Firearms Trafficking Unit in 1993, which was a specialized anti-violence unit tasked with targeting and reducing all violent crimes, including crimes involving knives. I was the first Unit Chief and served from 1993 until June, 2010.

9. As Chief of the Firearms Trafficking Unit, I directed and managed the investigation and prosecution of weapons traffickers and the criminals and organizations they supplied. Working with a team of Assistants, investigators, and analysts, I designed and executed the successful investigation and prosecution of several of the City's most violent gangs, dismantled violent criminal organizations throughout Manhattan, and convicted high-profile criminals.

10. From June, 2010 to June, 2012, I served as Chief of Trial Division Initiatives. In that capacity, I initiated and managed investigations into all types of organized criminal activity throughout the Trial Division and advised Assistants on complex and major cases throughout the Office.

11. From June, 2012 to the present, I have served as Counsel to the Trial Division. At the direction of the Chief of the Trial Division, I apply my experience to all Trial Division matters, consult and oversee significant cases, and assist in the development and execution of Trial Division training and policy.

12. The gravity knife statute was added to the Penal Law in 1958 in response to the increasing use of such knives in violent felonies.

13. Attached to this declaration as Exhibit DA-1 is a copy of the Governor's Bill Jacket for the gravity knife statute.

14. The continued presence of such knives on the streets exacerbates the ongoing problem of knife violence in New York City. For example, as recently as 2009 and early 2010, a substantial portion of the homicides, assaults, and violent felonies in New York County were committed with knives – including folding knives – prompting an investigation by the District Attorney's Office that led to enforcement actions against several retail stores that were selling a high volume of illegal gravity knives. In 2016, the City was confronted with a rise in the number of seemingly random assaults involving folding knives and other cutting instruments, creating fear in the community and among subway riders.

15. Over my career, I have personally handled or supervised hundreds of cases involving a gravity knife charge, ranging from misdemeanor prosecutions for criminal possession of a weapon to homicide prosecutions.

16. Without exception, the gravity knives I have encountered over the course of my career have been folding knives.

17. Attached to this declaration as Exhibit DA-2 is a copy of the standard jury instruction on possession of a gravity knife, which is simply a recitation of the statutory definition of the weapon.

18. I have conducted numerous training sessions for Trial Bureau Assistants wherein I have instructed them on the gravity knife statute and how to enforce it, including how to apply the statute to a particular knife via the wrist flick test.

19. The wrist flick test is the standard by which prosecutors at the District Attorney's Office apply the gravity knife statute to a particular knife.

20. That standard has remained constant before, during, and after the election of District Attorney Vance in January, 2010.

21. The direction of the wrist flick (i.e., downwards, upwards, or sideways) is immaterial; all directions create centrifugal force as described by the gravity knife statute.

22. I am regularly consulted by individual Assistants and their supervisors in connection with gravity knife prosecutions.

23. In my thirty-one years as a prosecutor, I have handled and tested thousands of gravity knives.

24. In my experience, certain knives – while not necessarily intended by the designer or manufacturer to be illegal – can nonetheless function as gravity knives.

25. For example, a knife with a tension screw at the fulcrum could function as a gravity knife if the screw has loosened, either by repeated use or intentional modification. This can be avoided, though, if the owner periodically checks the knife to ensure that the screw remains tight.

26. Conversely, a knife that once functioned as a gravity knife may cease to function as one if, for example, the blade has been taped shut during evidence collection, the knife has been stored continuously in a cold or arid location, or the knife has been exposed to moisture causing corrosion on the blade or in the handle.

27. The District Attorney's Office does not prosecute individuals because a knife could theoretically or potentially operate by gravity or centrifugal force; rather, the Office evaluates the actual function of the knife on a case-by-case basis in determining whether it meets the statutory definition.

28. In evaluating whether a gravity knife charge is appropriate in a particular case, the Assistant considers first whether the knife meets the statutory definition – i.e., can the knife be opened to a locked position by application of the wrist flick test – and, second, whether the People will be able to meet their burden of proof beyond a reasonable doubt at trial.

29. While the First Department of the Appellate Division is clear that the People can meet their burden even if multiple attempts of the wrist flick test are required to open a knife to a locked position, it is within the Assistant's prosecutorial discretion whether a particular prosecution should be commenced or continued.

30. I have never advised an Assistant to go to trial with a knife that the arresting officer could not open to a locked position via a flick of the wrist, nor am I aware of any prosecution going forward where the officer could not open the knife to a locked position by application of the wrist flick test in less than three attempts.

31. I am familiar with the prosecution of Reginald Herbin under New York County Indictment 0481/2008 and the associated decision by the First Department of the Appellate Division, *People v. Herbin*, 86 A.D.3d 446 (1st Dept. 2011).

32. Attached to this declaration as Exhibit DA-3 is a series of photographs of the gravity knife recovered from the defendant in *People v. Herbin*. I know Exhibit DA-3 to be the knife from the *Herbin* case based on my comparison of the NYPD invoice number on the bag containing the knife to the NYPD paperwork contained in the DA file, and based on my work done on the case in connection with the defendant's appeal.

Dated:   April 20, 2017
         New York, New York

DAN M. RATHER
Assistant District Attorney