UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Joseph Cracco, | DECLARATION OF JONATHAN CORREA |
| Plaintiff, | |
| -against- | 14 Civ. 8235 (PAC) |
| City of New York, *et al.*, | |
| Defendants. | |

JONATHAN CORREA declares pursuant to 28 U.S.C. §1746, under penalty of perjury, that the following is true and correct:

1. I have been a member of the New York City Police Department ("NYPD") since starting at the Police Academy in January, 2010. I am fully familiar with the facts set forth herein which are based on my personal knowledge.

2. Based on my training and experience, I understand a gravity knife to be a folding knife that possesses two characteristics: the knife will open by gravity or the application of centrifugal force and, once open, the blade will lock into place automatically.

3. At the Police Academy, I was instructed on the Penal Law provisions involving Criminal Possession of a Weapon in the Fourth Degree, which includes possession of a gravity knife.

4. Following my graduation from the Academy, I was assigned to Transit District 2, which is responsible for policing several subway stations in southern and mid-town (west) Manhattan. I spent six months assigned to the Impact Unit. During this time, I was received instruction from Field Training Officers on the criminal offenses that are particularly problematic in the subway system, including the possession of gravity knives.

1

5. While in the Impact Unit, I observed experienced police officers make arrests for possession of a gravity knife. By watching these officers, I learned how to apply the wrist flick test to identify a folding knife as a gravity knife.

6. To open a knife with the wrist flick test, I hold a knife by its handle and flick my wrist. If the blade exits the handle and locks into place automatically, it is a gravity knife.

7. Knives that function in this matter are inherently dangerous, as I know from personal experience. In employing the wrist flick test, I have seen officers who flick their wrist toward their own body, as I do, and I have also seen officers who flick their wrist away from their body. I employ the former motion because I was once cut on the arm as a result of standing too close to a fellow officer who was employing the latter motion to test a gravity knife.

8. I would not charge someone with possession of a gravity knife if I required more than two attempts to open the knife by application of the wrist flick test.

9. It is my practice to continue to test a knife that opens on the first attempt to ensure that the knife consistently functions as a gravity knife.

10. Upon completing my tenure in the Impact Unit, I was assigned to Transit District 4, which is responsible for policing several subway stations in midtown Manhattan, including Grand Central Terminal.

11. During my service with the NYPD, I have served as the arresting officer in seventy (70) New York County prosecutions involving a charge of possession of a gravity knife. Only one (1) out of the seventy prosecutions resulted in a termination favorable

to the defendant.[1] The vast majority of those prosecutions arose from arrests that were made in the subway system.

12. Without exception, those prosecutions involved folding knives that functioned in the manner described by Penal Law §265.00(5). I have never heard of an arrest for possession of a gravity knife that involved any other type of knife.

13. Other than the instant lawsuit – which I understand was dismissed as pled against me by virtue of Cracco's guilty plea – I have never been sued by a defendant claiming to have bene falsely charged with a violation of the gravity knife statute.

14. On October 18, 2013, at approximately 1617 hours (or, 4:17 p.m.), I was on duty within Grand Central when I observed a man later identified as Joseph Cracco walking from the shuttle train platform with what appeared to be a folding knife clipped to the front pocket of his pants.

15. The City Administrative Code prohibits carrying knives through the subway in public view.

16. Based on my years of experience policing the subway system, I know that gravity knives are often carried through the subway and are typically clipped to the owner's clothing so as to make the knife readily accessible.

17. I stopped Cracco and recovered the knife clipped to his pocket, which was folding knife with a black handle and a silver blade.

18. Cracco informed me that he used the knife in connection with his employment as a chef. The knife he possessed was undoubtedly not a kitchen knife. I asked

---

[1] Three (3) prosecutions are pending; in two (2) of those cases there are open bench warrants for the defendant.

if he could produce any form of work credentials, such as a union card, which he was unable to do.

19. In the presence of Cracco, I applied the wrist flick test by gripping the handle of the knife and flicking my wrist in a downward motion. The knife opened and the blade locked in place automatically. Contrary to the allegations of Cracco and his friend Jared Sipple – who I understand claims to have been present for the arrest – four or five attempts of the wrist flick test were not required to open the knife. If that were true, I would not have charged Cracco with possession of a gravity knife.

20. Having identified the knife as a gravity knife, I took Cracco into custody. At the precinct, I completed a desk appearance ticket and all other paperwork necessary to charge him with possession of a gravity knife and voucher the knife with the NYPD Property Clerk.

21. After signing the desk appearance ticket, Cracco was released from custody. Attached to this declaration as Exhibit DA-4 is a copy of the desk appearance ticket with his signature.

22. On November 13, 2013, before Cracco was due to appear in court, I met with a representative of the District Attorney's Office to draw up the criminal court complaint. At this point, Assistant District Attorney Leah Branch had not yet been assigned to the case.

23. A criminal court complaint sets out the legal and factual grounds for the criminal charge against a defendant. It is created and kept in the ordinary course of business at the NYPD and the officer signing a criminal court complaint is under a business duty to ensure the accuracy of the document. Attached to this declaration as Exhibit DA-5 is

a copy of the criminal court complaint, which accurately reflects the fact that I was able to open Mr. Cracco's knife by application of the wrist flick test.

24. I did not tell the representative I spoke to when drafting the criminal court complaint that five attempts of the wrist flick test were required to open the knife – nor did I ever communicate such a scenario to anyone at the District Attorney's Office during Cracco's prosecution – because that is not what happened.

25. In connection with my gravity knife arrests, see ¶11, above, I have been notified on several occasions to appear at the District Attorney's Office during the course of the prosecution for the purpose of testing the defendant's knife in the presence of the Assistant assigned to the case.

26. On March 4, 2016 – during the pendency of this civil suit – I retrieved Mr. Cracco's knife from the Property Clerk's Office and brought it to the District Attorney's Office at the request of Assistant District Attorney Elizabeth Krasnow to ensure its continued preservation despite the conclusion of the criminal matter.

27. Attached to this declaration as Exhibit DA-6 is a series of photographs of the knife inside its sealed voucher envelops as it appeared when I removed it from the Property Clerk's Office and brought it to the District Attorney's Office on March 4, 2016. It is my understanding that the knife remained in the sealed voucher envelops in the custody of the District Attorney's Office from that date until March 13, 2017 (see ¶31 below).

28. When I collected the knife from the Property Clerk's Office on March 4, 2016, it was in two voucher envelops. The inner envelop had a tear in it, as reflected in the first and second photographs in Exhibit DA-6. The tear in the inner envelop indicated to me that I brought the knife to the District Attorney's Office during the course of Cracco's

prosecution and opened the voucher bag for the purpose of testing the knife, as I have done in connection with many of my other cases. I have drawn a red arrow to indicate the tear in the first and second photographs of Exhibit DA-6 and placed my initials.

29. I have reviewed the Chain of Custody Invoice for the knife recovered from Cracco. A Chain of Custody Invoice is the document used by the NYPD to record the movement of vouchered property, including all occasions the property is removed from the Property Clerk's Office, the location to which it is taken, when it is returned, and the custodians of the property. The Chain of Custody Invoice for Cracco's knife reflects that it was brought from the Property Clerk's Office to the District Attorney's Office on March 26 and May 21, 2014 and that, on both occasions, it was returned to the Property Clerk's Office the same day.

30. I have also reviewed my memo book entries for March 26 and May 21, 2014. A memo book is the document used by the NYPD to record the activities of its police officers. Officers are required to enter their daily activities and are under an obligation to do so accurately. My memo book entry for March 26, 2014 reflects that I was present at the District Attorney's Office in connection with Cracco's prosecution, which was on for hearings and trial, but the case was adjourned. My memo book entry for May 21, 2014 reflects that I was present at the District Attorney's Office in connection with Cracco's prosecution and that, on that date, I tested the knife in the presence of ADA Branch, which explains the inner tear in the property envelop.

31. On March 13, 2017, at the District Attorney's Office and in the presence of ADA Krasnow and my attorney, Assistant Corporation Counsel Richard Bahrenberg, I opened the voucher envelops again and removed the knife.

32. Attached to this declaration as Exhibit DA-7 is a video taken at the District Attorney's Office on March 13, 2017, that depicts me applying the wrist flick to the knife that I recovered from Cracco in the exact manner that I did on the date of his arrest. Attached to this declaration as Exhibit DA-8 is a second video taken at the District Attorney's Office that depicts me applying the wrist flick test to the knife five times in succession. The knife opens on every attempt. Cracco's knife has unambiguously functioned as a gravity knife on every occasion that I have applied the wrist flick test to it.

33. Throughout my career with the NYPD, I have consistently and exclusively used the wrist flick test to identify a gravity knife. Every time I have witnessed another officer test a suspected gravity knife, it was with the wrist flick test.

Dated:      New York, New York
            April 18, 2017

_____
JONATHAN CORREA