UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Joseph Cracco,

                        Plaintiff,

-against-

City of New York, *et al.*,

                        Defendants.

DECLARATION OF
ASSISTANT DISTRICT
ATTORNEY LEAH BRANCH

14 Civ. 8235 (PAC)

     LEAH BRANCH, an attorney duly admitted to practice in the State of New York, declares under penalty of perjury and pursuant to 28 U.S.C. §1746, that the following is true and correct:

     1.     I am an Assistant District Attorney at the New York County District Attorney's Office. From September, 2013 to the present, I have served as a line Assistant in Trial Bureau 40. In that capacity, I have prosecuted cases involving a range of misdemeanor and felony offenses from inception to resolution.

     2.     As a first and second year Assistant, I was assigned to Criminal Court where I prosecuted primarily misdemeanor offenses, including the offense of possession of a gravity knife.

     3.     During my first year at the District Attorney's Office, I learned that the wrist flick test is the standard used by police and prosecutors to identify a gravity knife. The test consists of gripping the handle of a knife and flicking one's wrist to see if the blade will release and lock in place.

     4.     Over my career, I have personally handled twenty misdemeanor or felony cases involving a gravity knife charge.

5. In evaluating whether a gravity knife charge is appropriate in a particular case, I consider first whether the knife meets the statutory definition – i.e., can the knife be opened to a locked position by application of the wrist flick test – and, second, whether I can meet the burden of proof beyond a reasonable doubt at trial.

6. I was assigned to handle the case of *People v. Joseph Cracco*, Docket No. 2013CN009690, following the defendant's arraignment on the criminal court complaint. Cracco was charged with possession of a gravity knife in violation of Penal Law §265.01(1).

7. The parties were scheduled to appear in Criminal Court on March 26, 2014 for hearings and trial, and for the appearance of private defense counsel. I have reviewed Officer Correa's memo book entry for March 26, 2014 and the NYPD Chain of Custody Invoice for the knife recovered from Cracco, which reflect that on that date Officer Correa brought the knife from the Property Clerk's Office to the District Attorney's Office at my request. During the court appearance, the case was adjourned so that the defense could file a motion to dismiss.

8. On or about April 30, 2014, Cracco served a motion to dismiss. Attached to this declaration as Exhibit DA-9 is a copy of the papers filed in support of Cracco's motion.[1] The papers included an affidavit from a friend of the defendant, Jared Sipple, who claimed that he was present at the scene of the arrest and that Officer Correa required four or five attempts of the wrist flick test to open the knife.

9. When I was first assigned the case, I reviewed the criminal court complaint signed by the arresting officer, Police Officer Jonathan Correa. The criminal court

---

[1] The appendix to the motion papers, which was a copy of the amended complaint in the federal case *Knife Rights v. Vance, et al.*, 11 Civ. 3918 (S.D.N.Y.), is not included in Exhibit DA-9.

complaint, which Officer Correa signed under penalty of perjury, reflects that he "opened the knife with centrifugal force by flicking [his] wrist while holding the knife, thereby releasing the blade which locked in place by means of an automatic device that did not require manual locking." The criminal court complaint does not reflect that multiple attempts of the wrist flick test were required to open the knife, as Cracco claimed in his motion to dismiss.

10. Based on my review of Officer Correa's sworn statement in the criminal court complaint and the Sipple affidavit, I understood there to be a factual dispute between the defense and the People as to the number of attempts that were required to open the knife.

11. If I were assigned to draft a criminal court complaint at the inception of a potential prosecution and I learned from the arresting officer that he or she required five attempts of the wrist flick test to open the knife in question, I would speak to a supervisor about declining to prosecute the charge.[2]

12. Similarly, if I learned from the arresting officer during the course of a prosecution that he or she required five attempts of the wrist flick test to open the knife in question, I would notify the officer to appear at the District Attorney's Office to test the knife in my presence and I would speak to a supervisor about moving to dismiss the charge.

13. On or about May 14, 2014, the parties appeared in Criminal Court and I served the People's opposition papers. Attached to this declaration as Exhibit DA-10 is a copy of the People's opposition.

---

[2] It is the policy of the District Attorney's Office that decisions to decline to prosecute or to dismiss a charge must be approved by a supervisor.

3

14. The People did not credit (and still do not credit) the claim of Cracco and his friend that Officer Correa, who can be observed handling Cracco's knife in Exhibits DA-7 and DA-8, required five attempts of the wrist flick test to open the knife.

15. It was not the People's position in Cracco's case that the prosecution could or should continue were it undisputed that Officer Correa required five attempts to open Cracco's knife; it was the People's position that there was a factual dispute between the Officer and the defendant on this point and that the appropriate remedy was not dismissal of the charge but resolution of the dispute at trial.

16. On several occasions – either because the case was on for hearings or trial, or at the request of the defense attorney – I have notified the arresting officer in a gravity knife prosecution to appear at the District Attorney's Office to test the defendant's knife in the presence of myself and a supervisor.

17. I have reviewed Officer Correa's memo book for May 21, 2014 and the Chain of Custody Invoice for the knife recovered from Cracco, which reflect that the knife was brought to the District Attorney's Office at my request on that date and tested in my presence.

18. The parties were scheduled to appear back in Criminal Court on July 8, 2014 for a decision on Cracco's motion to dismiss.

19. In the early morning hours of July 6th, Cracco was arrested and subsequently charged with reckless endangerment, dealing in fireworks, and possession of marijuana. Attached to this declaration as Exhibit DA-11 is a copy of the criminal court complaint associated with that arrest, which reflects the factual basis for the charges.

20. At the July 8th court appearance, Cracco pled guilty to disorderly conduct in satisfaction of the gravity knife charge and received a sentence of time served and a $120 fine. Attached to this declaration as Exhibit DA-12 is a copy of the plea allocution.

Dated:    April 18, 2017
          New York, New York

                                        LEAH BRANCH
                                        Assistant District Attorney