UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Joseph Cracco,

                       Plaintiff,

-against-

City of New York, *et al.*,

                       Defendants.

LOCAL RULE 56.1 STATEMENT
OF THE DISTRICT ATTORNEY

14 Civ. 8235 (PAC)

New York County District Attorney Cyrus R. Vance, Jr., for his statement pursuant to Local Rule 56.1, for purposes of this summary judgment motion only and no other purpose, including trial of this matter, states as follows:

       1.      Penal Law §265.01(1) provides that a person is guilty of Criminal Possession of a Weapon in the Fourth Degree when he possesses a gravity knife – thus rendering a gravity knife a *per se* illegal weapon. Penal Law §265.01(1).

      2.      Penal Law §265.00(5) defines a gravity knife as "any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device." Penal Law §265.00(5).

      3.      These two provisions (collectively, "the gravity knife statute") were added to the Penal Law in 1958 in response to the increasing use of such knives in violent felonies. Rather Decl. at ¶¶12-13 and p. 17 of Ex. DA-1.

      4.      The definition of a gravity knife has long been applied by trial courts and juries, and convictions under the statute based on possession of a folding knife are routinely upheld on

appeal. *People v. Herbin*, 86 A.D.3d 446 (1st Dept. 2011), *lv. denied*, 17 N.Y.3d 850 (2011);[1] *see also* Rather Decl. at ¶¶15-17 and 31-32, p. 1-2 of Ex. DA-2, and Ex. DA-3.

5. In contrast to other weapons, a gravity knife is defined by its function and not its design. *Compare* Penal Law §265.00(5) *with* Penal Law §265.11 ("'Rifle' means a weapon <u>designed</u> …"), §265.12 ("'Shotgun' means a weapon <u>designed</u> …"), and §265.14 ("'Chuka stick' means a weapon <u>designed</u> …") (emphasis added).

6. "The intended use or design of the knife by its manufacturer is not an element of the crime and is irrelevant to the issue of whether the knife is a gravity knife." *People v. Fana*, 2009 N.Y. Misc. LEXIS 956, at *9 (N.Y. County Crim. Ct. 2009).

7. The wrist flick test is the standard by which police officers and prosecutors assess the functionality of a potential gravity knife. Correa Decl. at ¶¶5-7, 33; Rather Decl. at ¶¶19-20; Branch Decl. at ¶3.

8. The wrist flick test is "just what its name suggests: using the force of a one-handed flick-of-the-wrist to determine whether a knife will open from a closed position." *Copeland v. Vance*, 2017 U.S. Dist. LEXIS 11654, at *7 (S.D.N.Y. Jan. 27, 2017) (Forrest, J.); *see also* Correa Decl. at ¶6; Rather Decl. at ¶4; Branch Decl. at ¶3.

---

[1] *People v. Parrilla*, 27 N.Y.3d 400 (2016); *People v. Sans*, 26 N.Y.3d 13 (2015); *People v. Cabrera*, 135 A.D.3d 412 (1st Dept. 2016), *lv. denied*, 27 N.Y.3d 994; *People v. Neal*, 79 A.D.3d 523 (1st Dept. 2010), *lv. denied*, 16 N.Y.3d 799 (2011), *habeas denied*, *Neal v. Yelich*, 2012 U.S. Dist. LEXIS 173919 (S.D.N.Y. Dec. 7, 2012); *People v. Birth*, 49 A.D.3d 290 (1st Dept. 2008), *lv. denied*, 10 N.Y.3d 859 (2008); *People v. Carter*, 51 A.D.3d 576 (1st Dept. 2008), *lv. denied*, 11 N.Y.3d 735 (2008), *habeas denied*, *Carter v. McKoy*, 2010 U.S. Dist. LEXIS 83246, at *13 (S.D.N.Y. Aug. 9, 2010); *People v. Jouvert*, 50 A.D.3d 504 (1st Dept. 2008), *lv. denied*, 11 N.Y.3d 790 (2008); *People v. Best*, 57 A.D.3d 279 (1st Dept. 2008), *lv. denied*, 12 N.Y.3d 756 (2008); *People v. Wang*, 17 Misc. 3d 133(A) (N.Y. App. Term 2007), *lv. denied*, 10 N.Y.3d 767 (2008); *People v. Smith*, 309 A.D.2d 608 (1st Dept. 2003), *lv. denied*, 1 N.Y.3d 580 (2003).

9. The direction of the wrist flick (i.e., downwards, upwards, or sideways) is immaterial; all directions create centrifugal force as described by the gravity knife statute. Rather Decl. at ¶21.

10. The bill jacket includes a New York Times article from December, 1957 that describes a sponsor of the statute opening a gravity knife by "flick[ing] his wrist sharply downward." Rather Decl. at p. 21 of Ex. DA-1.

11. "Then, as now, knives which could be opened by a flick of the wrist were considered to be particularly dangerous." *Copeland*, 2017 U.S. Dist. LEXIS 11654, at *7 n.6; *see also* Correa Decl. at ¶7.

12. The continued presence of such knives on the streets exacerbates the ongoing problem of knife violence in New York City. Rather Decl. at ¶14.

13. For example, as recently as 2009 and early 2010, a substantial portion of the homicides, assaults, and violent felonies in New York County were committed with knives – including folding knives – prompting an investigation by the District Attorney's Office that led to enforcement actions against several retail stores that were selling a high volume of illegal gravity knives. Rather Decl. at ¶14.

14. By way of further example, in 2016 the City was confronted with a rise in the number of seemingly random assaults involving folding knives and other cutting instruments, creating fear in the community and among subway riders. Rather Decl. at ¶14.

15. The highest court of this State and the intermediate appellate court with jurisdiction over New York County, the First Department, have endorsed the use of the wrist flick test to identify a folding knife as a gravity knife. *Sans*, 26 N.Y.3d at 17; *Parrilla*, 27 N.Y.3d at 403; *Herbin*, 86 A.D.3d at 446; and *Neal*, 79 A.D.3d at 524.

16. "Courts have [also] examined whether a knife must open on every attempt of the wrist flick test in order to be considered a gravity knife and have found that it does not." *Copeland*, 2017 U.S. Dist. LEXIS 11654, at *8 n.8; *see also Cabrera*, 135 A.D.3d at 413 (the fact that "the officer needed to make several attempts before the knife opened" did not preclude a finding that it was a gravity knife); *Smith*, 309 A.D.2d at 609 (same, where "the knife malfunctioned on some of the detective's attempts to operate it"); *Carter v. McKoy*, 2010 U.S. Dist. LEXIS 83246, at *13 (S.D.N.Y. Aug. 9, 2010) (same, where the officer "needed several attempts to open the knife;" reasoning that "a knife need not work consistently in order to support the finding that it is a gravity knife"); *see also* Rather Decl. at ¶29.

17. "This [premise, *see* ¶16, *supra*] is plainly correct as the statute does not, on its face, require any particular number of applications of gravity or centrifugal force." *Copeland*, 2017 U.S. Dist. LEXIS 11654, at *8 n.8; *see also* Penal Law §265.00(5).

18. Certain folding knives – while not necessarily intended by the designer or manufacturer to be illegal – can nonetheless function as gravity knives. Rather Decl. at ¶24.

19. "The fact that some knives which meet the statutory definition of a gravity knife are sold in local stores as 'folding knives' … for use as tools does not render the statute unconstitutionally vague," nor does it "alter [their] obvious and inherently dangerous nature." *Fana*, 2009 N.Y. Misc. LEXIS 956, at *8-9; *see also Parilla*, 27 N.Y.3d at 403 (affirming a conviction for possession of a gravity knife where the defendant bought the knife at a "large retail store" and used it in connection with his work as a tradesman).

20. Folding knives that were legal when purchased can begin to function as gravity knives over time, either through the wear of regular use or through intentional modification. Rather Decl. at ¶¶24-25.

21. For example, a knife with a tension screw at the fulcrum could function as a gravity knife if the screw has loosened; the owner, however, can avoid this by periodically checking the knife to ensure that the screw remains tight. Rather Decl. at ¶25.

22. Conversely, a knife that once functioned as a gravity knife may cease to function as one if, for example, the blade has been taped shut during evidence collection, the knife has been stored continuously in a cold or arid location, or the knife has been exposed to moisture causing corrosion on the blade or in the handle. Rather Decl. at ¶26.

23. On October 18, 2013, while inside Grand Central subway station, plaintiff Joseph Cracco was arrested for possession of a folding knife that, in the estimation of the arresting officer, functioned as a gravity knife. Correa Decl. at ¶¶14-20; Cracco Dep. at 46, 57-58, and 69.

24. Cracco, who lived in Connecticut and worked in Manhattan, commuted through Grand Central terminal each day, using the Metro North line to travel between Connecticut and Grand Central and a shuttle subway to travel between Grand Central and his place of employment. Cracco Dep. at 50-51, 57; *see also* Sipple Dep. at 35.

25. At the time, Cracco worked as a sous chef at a restaurant that was preparing to open on West 27th Street in Manhattan. Cracco Dep. at 43-44, 47-49.

26. While at work, Cracco kept the knife clipped to his pants pocket so that it was readily accessible to him. Cracco Dep. at 56-57.

27. To open the knife from a closed position, Cracco would place his thumb in the circular hole in the blade and use his thumb to pivot the blade into an open position. Cracco Dep. at 27-28.

28. Because the restaurant had not yet opened, Cracco's responsibilities at the time included unpacking boxes of kitchen equipment and inventory. Cracco Dep. at 49-50, 52-53.

29. Cracco used the knife to cut the packing tape on the boxes. Cracco Dep. at 53-54.

30. There were box cutters and scissors available in the restaurant that could have been used for the same purpose. Sipple Dep. at 55-56.

31. Using the knife in this manner caused tape residue to collect on the blade – although the residue did not impact the force required to open the knife because the tip of the blade, where the residue collected, did not touch the handle. Cracco Dep. at 95-97.

32. Cracco had owned the knife for "several years" and used it open boxes (as he was doing on the date of his arrest), to open beer bottles, and when working on cars or on his motorcycle. Cracco Dep. at 69-71, 73-74.

33. He never attempted to open the knife by application of the wrist flick test. Cracco Dep. at 62-63.

34. At approximately 4:00 p.m., Cracco and Jared Sipple – his friend, co-worker, and roommate – left the restaurant and began the commute back to Connecticut. Cracco Dep. at 40-43, 54, 56, and 79-80; Sipple Dep. at 30, 32-34, and 39-40.

35. Although Cracco was carrying a messenger bag in which he could have stored the knife, and although he had no intention of using the knife during his commute, he continued to wear the knife clipped to his pants pocket as he traveled through the subway. Cracco Dep. at 55-57.

36. Police Officer Jonathan Correa saw Cracco on the platform of the subway shuttle within Grand Central with the knife clip visible on his pants pocket. Correa Decl. at ¶14; Cracco Dep. at 56-58.

37. As of the date of Cracco's arrest, Officer Correa had been with the New York City Police Department for over three years. Correa Decl. at ¶¶1, 14.

38. He had been consistently assigned to the Transit District, which is responsible for policing the City's subway system. Correa Decl. at ¶¶4, 10.

39. The City Administrative Code makes it unlawful for a person to wear a knife outside his or her clothing in a public place such as the subway. Admin. Code §10-133(c); Correa Decl. at ¶15.

40. In Officer Correa's experience, gravity knives are typically clipped to the owner's clothing so as to make the knife readily accessible. Correa Decl. at ¶16.

41. Officer Correa also knew gravity knives to be a common problem in the subway. Correa Decl. at ¶¶11, 16; *see also* Cracco Dep. at 71-72 (admitting that he regularly wore the knife clipped to his pants while traveling through the subway).

42. Officer Correa stopped Cracco, recovered the knife, and applied the wrist flick test. Cracco Dep. at 58-60; Sipple Dep. at 13-16, 40-41, and 44-45; Correa Decl. at ¶17.

43. Cracco and Sipple claim that Officer Correa applied the wrist flick test unsuccessfully four times, and with increasing force, until the knife finally opened on the fifth attempt. Cracco Dep. at 60-62, 93-94; Sipple Dep. at 13-16, 45.

44. Officer Correa maintains that he applied the wrist flick test to the knife and the blade opened – as reflected in the video exhibit submitted by the District Attorney depicting the officer applying the test to Cracco's knife in the same manner that he did on the day of Cracco's arrest. Correa Decl. at ¶¶19, 32 and Ex. DA-7.

45. It is Officer Correa's practice to continue to test a knife that opens on the first attempt to ensure that it functions consistently as a gravity knife. Correa Decl. at ¶9.

46. Officer Correa maintains that Cracco's knife has unambiguously functioned as a gravity knife on every occasion that he has applied in the wrist flick – as reflected in a second video exhibit submitted by the District Attorney's Office depicting the officer applying the test to Cracco's knife five times in succession.  Correa Decl. at ¶32 and Ex. DA-8.

47. If Officer Correa had required five attempts of the wrist flick test to open the knife, it would not be consistent with his personal practice as a police officer to charge Cracco with possession of a gravity knife.  Correa Decl. at ¶¶8, 19.

48. Officer Correa would not charge someone with possession of a gravity knife if he required more than two attempts to open the knife by application of the wrist flick test.  Correa Decl. at ¶8.

49. To date, Officer Correa has served as the arresting officer for seventy New York County prosecutions involving a charge of possession of a gravity knife, only one of which has resulted in a termination favorable to the defendant.  Correa Decl. at ¶11.

50. Other than the instant lawsuit – which was barred by Cracco's guilty plea as pled against the officer – Officer Correa has never been sued by a defendant claiming to have been falsely charged with a violation of the gravity knife statute.  Correa Decl. at ¶13.

51. Having, in his estimation, identified the knife to be a gravity knife, Officer Correa took Cracco into custody.  Cracco Dep. at 64-65; Correa Decl. at ¶20.

52. At the precinct, Officer Correa completed a desk appearance ticket directing Cracco to appear in Criminal Court on December 9, 2013.  Cracco Dep. at 65-66; Correa Decl. at ¶¶20-21 and Ex. DA-4.

53. After signing the desk appearance ticket, Cracco was released from the precinct.  Correa Decl. at ¶21.

54. On November 13, 2013, Officer Correa met with a representative of the District Attorney's Office in the Early Case Assessment Bureau to draft a criminal court complaint, which is the document that sets out the factual and legal ground for the charges against a defendant. Correa Decl. at ¶¶22-23.

55. Officer Correa did not tell the representative of the District Attorney's Office that five attempts were required to open the knife because, from the Officer's perspective, that is not what happened. Correa Decl. at ¶24.

56. Officer Correa signed a criminal court complaint that charged Cracco with possession of a gravity knife and read as follows:

> I know that the knife was a gravity knife because I opened the knife with centrifugal force by flicking my wrist while holding the knife, thereby releasing the blade which locked in place by means of an automatic device that did not require manual locking.

Correa Decl. at ¶23 and Ex. DA-5.

57. If Cracco's version of events is to be credited, the criminal court complaint is misleading in that it omits the fact that Officer Correa required multiple attempts to open the knife and creates the impression that he opened the knife with the first flick of his wrist. Cracco Dep. at 75-79; Sipple Dep. at 57-58.

58. After Cracco's arraignment on the criminal court complaint, Assistant District Attorney Leah Branch was assigned to prosecute the case. Branch Decl. at ¶6.

59. Upon being assigned to the case, ADA Branch reviewed the criminal court complaint signed by Officer Correa. Branch Decl. at ¶9.

60. On or about April 30, 2014, Cracco served a motion to dismiss that advanced the following theories of relief:

    a.  First, Cracco submitted an affidavit from Sipple claiming that Officer Correa required four or five attempts of the wrist flick test to open the knife.

    b.  Second, Cracco argued that the Court of Appeals' decision in *People v. Dreyden*, 15 N.Y.3d 100 (2010), requires that a criminal complaint include a reference to the arresting officer's training and experience in identifying gravity knives;

    c.  Third, Cracco argued that *Dreyden* also requires that a criminal complaint include an observation that the knife in question can be "readily" opened by centrifugal force.

    d.  Fourth, Cracco argued that, without the requirements identified in *Dreyden*, the gravity knife statute is void for vagueness.

    Branch Decl. at ¶8 and Ex. DA-9.

  61.  On May 14, 2014, the parties appeared in Criminal Court and the People served their opposition papers. Branch Decl. at ¶13 and Ex. DA-10.

  62.  In opposition, ADA Branch argued that the version of events in the Sipple affidavit did not render the criminal court complaint insufficient – which is standard that applies in the context of a motion to dismiss a criminal charge – but merely created a factual dispute with the officer's statement as to the functionality of the knife to be resolved at trial. Branch Decl. at p. 4 of Ex. D-10.

  63.  The District Attorney's Office does not prosecute individuals because a knife could theoretically or potentially operate by gravity or centrifugal force; rather, the Office evaluates the actual function of the knife on a case-by-case basis in determining whether it meets the statutory definition. Rather Decl. at ¶27.

64. In evaluating whether a gravity knife charge is appropriate, the assigned Assistant considers first whether the knife meets the statutory definition – i.e., can the knife be opened to a locked position by application of the wrist flick test – and, second, whether the People will be able to meet their burden of proof beyond a reasonable doubt at trial. Rather Decl. at ¶28; Branch Decl. at ¶5.

65. Based on her review of Officer Correa's sworn statement in the criminal court complaint and the Sipple affidavit, ADA Branch understood there to be a factual dispute between the defense and the People as to the number of attempts that were required to open the knife. Branch Decl. at ¶10.

66. If ADA Branch were assigned to draft a criminal court complaint at the inception of a potential prosecution and she learned from the arresting officer that he or she required five attempts of the wrist flick test to open the knife in question, she would speak to a supervisor about declining to prosecute the charge. Branch Decl. at ¶11.

67. If ADA Branch learned, during the course of a prosecution, that it was undisputed that the arresting officer required five attempts to open the knife in question, she would speak to a supervisor about moving to dismiss the charge and notify the officer to appear at the District Attorney's Office to test the knife in her presence. Branch Decl. at ¶12.

68. Assistants regularly notify the arresting officers in gravity knife prosecutions to appear at the District Attorney's Office to test the knife in their presence, most often when the case is scheduled for hearings and trial or at the request of defense counsel. Branch Decl. at ¶16; Correa Decl. at ¶25.

69. After Cracco raised the allegation that Officer Correa required five attempts of the wrist flick test to open his knife, Officer Correa appeared at the District Attorney's Office at the request of ADA Branch and tested the knife in her presence. Branch Decl. at ¶17; Correa Decl. at ¶¶28-30.

70. Assistant District Attorney Dan M. Rather has been a prosecutor in New York County for nearly thirty-two years and presently serves as Counsel to the Trial Division. Rather Decl. at ¶¶1, 11.

71. He regularly advises and provides training to Assistants regarding weapon-related prosecutions and has personally prosecuted or supervised hundreds of cases involving a gravity knife charge, ranging from misdemeanor criminal possession to homicide prosecutions. Rather Decl. at ¶¶8-9, 11, 15, 18, and 22-23.

72. ADA Rather has never advised an Assistant to go to trial with a knife that the arresting officer could not open to a locked position via a flick of the wrist, nor is he aware of any prosecution going forward where the officer could not open the knife to a locked position by application of the wrist flick test in less than three attempts. Rather Decl. at ¶30.

73. It was not the People's position in Cracco's case that the prosecution could or should continue were it undisputed that Officer Correa required five attempts to open Cracco's knife. Branch Decl. at ¶15.

74. Rather, the People did not credit (and still do not credit) the claim of Cracco and his friend that Officer Correa – who can be observed handling Cracco's knife in Exhibits DA-7 and DA-8 and who maintains that it has never functioned other than as depicted therein – required five attempts of the wrist flick test to open the knife. Branch Decl. at ¶14.

75. The parties were scheduled to appear back in Criminal Court on July 8, 2014 for a decision on Cracco's motion to dismiss. Branch Decl. at ¶18.

76. At approximately 1:00 am in the morning on July 6th, Cracco lit fireworks on a public sidewalk near a row of parked cars and a twelve-year-old child. Cracco Dep. at 88-91; Branch Decl. at ¶19 and Ex. DA-11.[2]

77. He was arrested while in possession of a marijuana cigarette and charged with reckless endangerment, dealing in fireworks, and possession of marijuana. Branch Decl. at ¶19 and Ex. DA-11.

78. At the July 8th court appearance, rather than having his vagueness challenge resolved by a state court tasked with interpreting and enforcing the gravity knife statute, Cracco pled guilty to disorderly conduct in satisfaction of the gravity knife charge and received a sentence of time served and a $120 fine. Cracco Dep. at 86-88; Branch Decl. at ¶20 and p. 3-4 of Ex. DA-12.

---

[2] In the criminal court complaint, the police officer who arrested Cracco stated under penalty of perjury that the fireworks were found underneath one of the parked cars. Branch Decl. at Ex. DA-11. Cracco attempted to deny this fact at his deposition. Cracco Dep. at 88-89.

79. Cracco then filed the instant suit in federal court challenging the gravity knife statute on the same theories of vagueness advanced in the motion that he abandoned in state court – although he added to the proposed declaration the caveat that a knife which does not open on the first attempt of the wrist flick test does not open "readily" within the meaning of *Dreyden*. ECF No. 9 at ¶¶36, 42-43, 47, 79-80.

Dated:    New York, New York
          April 21, 2017

                                    CYRUS R. VANCE, JR.
                                    District Attorney of New York County, as Special
                                    Assistant Corporation Counsel
                                    *Attorney for defendant Cyrus R. Vance, Jr.*
                                    One Hogan Place
                                    New York, New York 10013
                                    (212) 335-4210

                            By:     *EK*
                                    Elizabeth N. Krasnow
                                    Patricia J. Bailey
                                    Assistant District Attorneys