UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Joseph Cracco,

                                    Plaintiff,

                -against-

City of New York, et al.,

                                    Defendants.

14 Civ. 8235 (PAC)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR SUMMARY
JUDGMENT OF NEW YORK COUNTY DISTRICT ATTORNEY
CYRUS R. VANCE, JR.**

CYRUS R. VANCE, JR.
District Attorney of New York County
*Attorney for Defendant Cyrus R. Vance, Jr.*
One Hogan Place
New York, New York 10013
(212) 335-4210

Elizabeth N. Krasnow
Patricia J. Bailey
Assistant District Attorneys

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................1

PROCEDURAL HISTORY ..............................................................................................2

STATEMENT OF FACTS ................................................................................................4

STANDARD OF REVIEW ..............................................................................................11

ARGUMENT ....................................................................................................................12

    I.    **Facial challenges versus as applied challenges**................................................12

    II.    **The appropriate lens through which to view Cracco's claim is a prosecution involving a dispute between the officer and the defendant**........................................14

    III.    **Alternatively, assuming there was no dispute, the gravity knife statute is not vague as applied to Cracco**........................................17

        A.    *Cracco's as applied challenge for lack of notice fails*........................18

        B.    *Cracco's as applied challenge for arbitrary enforcement fails*................21

        i.    The gravity knife statute provides clear standards................21

        ii.    Cracco's conduct falls within the core of the gravity knife statute ................23

    IV.    **The declaration Cracco seeks is divorced from the record** ................24

CONCLUSION................................................................................................................26

## **TABLE OF AUTHORITIES**

*AFSCME Council 79 v. Scott,*
    717 F.3d 851 (11th Cir. 2013) ................................................................................................25

*Catholic Leadership Coalition of Tex. v. Reisman,*
    764 F.3d 409 (5th Cir. 2014)....................................................................................................24

*City of Los Angeles v. Patel,*
    __ U.S. __, 135 S. Ct. 2443 (2015).........................................................................................12

*Copeland, et al. v. Vance,*
    2017 U.S. Dist. LEXIS 11654 (S.D.N.Y. Jan. 27, 2017) ..................................3, 21, 22, 24

*Dana's R.R. Supply v. AG,*
    807 F.3d 1235 (11th Cir. 2015) ...............................................................................................24

*Diaz v. Paterson,*
    547 F.3d 88 (2d Cir. 2008) .......................................................................................................13

*Dickerson v. Napolitano,*
    604 F.3d 732 (2d Cir. 2010) ................................................................... 12, 15, 18, 21, 24

*Disc. Tobacco City & Lottery, Inc. v. United States,*
    674 F.3d 509 (6th Cir. 2012)....................................................................................................24

*Doe v. Reed,*
    561 U.S. 186 (2010)...................................................................................................................24

*Dreyden. People v. Sans,*
    26 N.Y.3d 13 (2015) ..................................................................................................................20

*EEOC v. Suffolk Laundry Servs., Inc.,*
    48 F. Supp. 3d 497 (E.D.N.Y. 2014).......................................................................................15

*Expressions Hair Design v. Schneiderman,*
    803 F.3d 118 (2d Cir. 2015) ........................................................................................... 15, 24

*Farrell v. Burke,*
    449 F.3d 470 (2d Cir. 2006) .....................................................................................................15

*Feldman v. Reagan,*
    843 F.3d 366 (9th Cir. 2016)....................................................................................................24

*Heck v. Humphrey,*
    512 U.S. 477 (1994).....................................................................................................................2

*Holder v. Humanitarian Law Project,*
    561 U.S. 1 (2010) ............................................................................... 13, 15, 21

*Mannix v. Phillips,*
    619 F.3d 187 (2d Cir. 2010) ....................................................................... 18

*New York State Rifle & Pistol Ass'n v. Cuomo,*
    804 F.3d 242 (2d Cir. 2015) ........................................................................ 12

*People v. Birth,*
    49 A.D.3d 290 (1st Dept. 2008) ................................................................... 20

*People v. Dreyden,*
    15 N.Y.3d 100 (2010) ................................................................... 9, 11, 19, 22

*People v. Herbin,*
    86 A.D.3d 446 (1st Dept. 2011) ....................................................... 19, 21, 25

*Perez v. Hoblock,*
    368 F.3d 166 (2d Cir. 2004) ........................................................................ 15

*SCR Joint Venture L.P. v. Warshawsky,*
    559 F.3d 133 (2d Cir. 2009) ........................................................................ 12

*United States v. Decastro,*
    682 F.3d 160 (2d Cir. 2012) ........................................................................ 13

*United States v. Doe,*
    145 F. Supp. 3d 167 (E.D.N.Y. 2015) ........................................................ 13

*United States v. Farhane,*
    634 F.3d 127 (2d Cir. 2011) ........................................................................ 15

*United States v. Powell,*
    423 U.S. 87 (1975) .............................................................................. 20, 22

*United States v. Rybicki,*
    354 F.3d 124 (2d Cir. 2003) ........................................................................ 13

*United States v. Smith,*
    985 F. Supp. 2d 547 (S.D.N.Y. 2010) ............................... 14, 15, 18, 20, 21, 25

*United States v. Spy Factory,*
    951 F. Supp. 450 (S.D.N.Y. 1997) ................................................... 12, 13, 15

*United States v. Williams,*
    553 U.S. 285 (2008) ............................................................................ 20, 22

*VIP of Berlin, LLC v. Town of Berlin*,
  593 F.3d 179 (2d Cir. 2010) ................................................................................................. 13, 15

*Vrljicak v. Holder*,
  700 F.3d 1060 (7th Cir. 2012) .............................................................................................. 22, 23

*Wash. State Grange v. Wash. State Republican Party*,
  552 U.S. 442 (2008) ......................................................................................................... 12, 16, 25

## PRELIMINARY STATEMENT

Plaintiff Joseph Cracco brings an as applied vagueness challenge to New York's gravity knife statute, which prohibits knives with blades that open by centrifugal force and is enforced by means of a "wrist flick test."  On October 18, 2013, Cracco was arrested by Police Officer Jonathan Correa inside the Grand Central subway station based on the officer's determination that a folding knife clipped to Cracco's clothing functioned as a gravity knife.  As reflected in the record of the underlying criminal matter, there was a dispute between Cracco and Officer Correa as to the number of times the officer attempted the wrist flick test before the knife opened.  Cracco filed a motion to dismiss the charge on this ground but abandoned it in favor of a guilty plea.  He now asks this Court to issue a declaration against New York County District Attorney Cyrus R. Vance, Jr. enjoining all "prosecutions" for possession of knives that do not open on the first attempt.

Summary judgment should be entered in favor of the District Attorney, for several reasons.  This office does not prosecute knives that function in the manner alleged by Cracco.  Hewing closely to the circumstances of Cracco's prosecution, as is required in an as applied challenge, judgment in his favor would prohibit prosecutions any time there is a dispute between the arresting officer and the defendant as to facts bearing on the viability of the prosecution.  Such disputes, which certainly are not unique to gravity knife prosecutions, cannot form the basis of a ruling that the District Attorney has enforced a statute unreasonably – especially where, as here, the defendant pled guilty.  To hold otherwise would be to declare open season on the Penal Law and this office's ability to enforce it.  Alternatively, assuming it were undisputed that Officer Correa required five attempts to open the knife – and assuming further that this office enforced the statute against such knives – the statute and the decisions construing it provide ample notice and guidance with respect to all aspects of the statute that Cracco claims render it unconstitutionally vague.  Finally, the relief Cracco seeks is divorced from the facts of his case.  Cracco claims that Officer Correa required five attempts of the

1

wrist flick test to open his knife, yet he seeks a declaration enjoining prosecutions where the knife does not open on the first attempt. Cracco thus asks the Court to render a constitutional ruling that is both broader than the record and in further conflict with state and federal decisions finding that a knife need not open on every attempt to fall within the statute.

## **PROCEDURAL HISTORY**

Cracco filed the complaint on October 15, 2014, naming as defendants the City of New York and Officer Correa and seeking damages under §1983 for false arrest. ECF 1.[1] After Corporation Counsel's Office sought permission to move to dismiss on the ground that Cracco's guilty plea barred his damages claim, Cracco elected to file an amended complaint that sought equitable relief, as well. ECF 6, 7. The amended complaint, filed on February 17, 2015, names District Attorney Vance as a defendant and seeks a declaration that the gravity knife statute is void for vagueness "as applied" to prosecutions for possession of knives that have "a bias towards closure" and cannot be "readily" opened by centrifugal force, with a specific finding that any knife that does not open on the "first attempt" of the wrist flick test cannot be prosecuted. ECF 9 at ¶80.[2] On May 22, 2015, in separate filings, the City defendants and the District Attorney moved to dismiss. ECF 22-27. Both sets of defendants relied on Cracco's guilty plea in advocating for dismissal. *Id.*

On November 4, 2015, the Court dismissed the City and Officer Correa from the case, finding that Cracco's guilty plea barred his claim for false arrest because, under *Heck v. Humphrey*, 512 U.S. 477 (1994), a judgment in Cracco's favor would undermine his conviction. ECF 37 at p. 4-5. On December 9, 2015, the Court denied the District Attorney's motion to dismiss. ECF 38. The Court found that, despite his guilty plea, Cracco had standing to seek a declaration "that his knife choice is

---

[1]             Unless otherwise specified, ECF references are to the docket of this case.
[2]             The amended complaint also contains a claim pled against "all defendants" for injunctive relief in the form of an order directing the return of Cracco's knife. *Id.* at ¶¶75-76. Cracco has clarified that he did not intend to plead this claim against the District Attorney. ECF 32 at p. 3.

lawful" and that his vagueness challenge raised "factual questions not ripe for adjudication on a motion to dismiss." *Id.* at p. 5-6.[3]

The parties engaged in discovery from February 23 through June 22, 2016. ECF 45, 47-49. During this period, there were two external developments relevant to Cracco's claim. From March 11 through June 16, 2016, the District Attorney's Office and the City litigated a trial on the papers and an evidentiary hearing before Judge Forrest in *Copeland, et al. v. Vance*, wherein the plaintiffs similarly sought a declaration that the gravity statute is void for vagueness as applied to folding knives with a "bias towards closure" – although they, unlike Cracco, did not specify the number of attempts of the wrist flick test that would exempt a knife from prosecution. *Copeland* ECF 128 at p. 2, 9-10, and 55. Meanwhile, on June 15, 2016, the State Senate approved an amendment to the statute that, if enacted, would exclude folding knives with "a bias towards closure" from the definition of a gravity knife. *See* https://www.nysenate.gov/legislation/bills/2015/S6483 (under "Bill Text PDF").

On June 22, 2016, the Court imposed a stay pending the resolution of the *Copeland* matter and Governor Cuomo's consideration of the amendment. ECF 49, 54. On December 31, 2016, the Governor vetoed the amendment, expressing concern that an exclusion for knives with "a bias towards closure" was ambiguous and would "potentially legalize all folding knives." ECF 50 at Ex. 1.[4] On January 27, 2017, Judge Forrest entered judgment in favor of the District Attorney and the City, finding that the gravity knife statute provided clear notice to the plaintiffs as to the conduct it prohibits and clear standards to those tasked with enforcing it. *Copeland, et al. v. Vance*, 2017 U.S. Dist. LEXIS 11654, at *4 (S.D.N.Y. Jan. 27, 2017).

---

[3]      The District Attorney moved for reconsideration of the ruling that Cracco's guilty plea did not require dismissal, which the Court denied on January 28, 2016. ECF 39-40, 43, and 46.
[4]      He further lamented the Legislature's refusal to consider alternatives such as an exemption for "crafts and tradespeople" or "an affirmative defense for those who possess[ ] gravity knives with no intent to use [them] unlawfully." *Id.*

On January 31, 2017, the parties requested a conference with the Court to discuss whether to proceed via summary judgment motions (as previously proposed by the District Attorney) or a hearing (as previously proposed by Cracco).  ECF 50, 51, and 55.  On February 2, 2017, in response to a letter by Corporation Counsel's Office opposing any amendment adding the City as a defendant to the declaratory judgment claim, Cracco filed a letter announcing that he was prepared to proceed immediately to summary judgment motion practice.  ECF 56, 57 at p. 1-2.  On February 21, 2017, the parties appeared before Your Honor and agreed to submit a schedule for the filing of cross motions for summary judgment.  Minute Entry dated 2/2/17.

### STATEMENT OF FACTS[5]

Penal Law §265.01(1) provides that a person is guilty of Criminal Possession of a Weapon in the Fourth Degree when he possesses a gravity knife – thus rendering a gravity knife a *per se* illegal weapon.  ¶1.  Penal Law §265.00(5) defines a gravity knife as "any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device."  ¶2.  These two provisions (collectively, "the gravity knife statute") were added to the Penal Law in 1958 in response to the increasing use of such knives in violent felonies.  ¶3.

The statutory definition of a gravity knife has long been applied by trial courts and juries, and convictions based on possession of a folding knife are routinely upheld on appellate review.  ¶4.  In contrast to other weapons, a gravity knife is defined by its function and not its design.  ¶5.  The intended use or design of the knife by its manufacturer is not an element of the crime and is irrelevant to the issue of whether the knife is a gravity knife.  ¶6.

---

[5]        Unless otherwise specified, all citations preceded by a ¶ are to the paragraphs in the District Attorney's Local Rule 56.1 Statement.

The wrist flick test is the standard by which police officers and prosecutors assess the functionality of a potential gravity knife.  ¶7.  The test is just what its name suggests: using the force of a one-handed flick of wrist to determine whether a knife will open from a closed position.  ¶8. The direction of the flick (i.e., downwards, upwards, or sideways) is immaterial; all directions create centrifugal force as described by the statute.  ¶9.  The bill jacket for the statute includes a New York Times article from December, 1957 that describes a sponsor opening a gravity knife by "flick[ing] his wrist sharply downward."  ¶10.  Then, as now, knives which could be opened by a flick of the wrist were considered to be particularly dangerous.  ¶11.

The New York Court of Appeals and the First Department of the Appellate Division have endorsed the use of the wrist flick test to identify a folding knife as a gravity knife.  ¶15.  Courts have also considered and rejected the notion that a knife must open on every attempt of the wrist flick test in order to be considered a gravity knife.  ¶16.  This premise is plainly correct as the statute does not, on its face, limit the number of applications of gravity or centrifugal force.  ¶17.

Certain folding knives – while not necessarily intended by the designer or manufacturer to be illegal – can nonetheless function as gravity knives.  ¶18.  The functionality of a knife can change over time, either through the wear of regular use or due to intentional modification. ¶20.[6]  For example, a knife with a tension screw at the fulcrum could function as a gravity knife if the screw has loosened; the owner, however, can avoid this by periodically checking the knife to ensure that the screw remains tight.  ¶21.  In rejecting a prior vagueness challenge, a Justice of the state Supreme Court commented that "[t]he fact that some knives which meet the statutory definition of a

---

[6]      Conversely, a knife that once functioned as a gravity knife may cease to function as one if, for example, the blade has been taped shut during evidence collection, the knife has been stored continuously in a cold or arid location, or the knife has been exposed to moisture causing corrosion on the blade or in the handle.  ¶22.

gravity knife are sold in local stores as 'folding knives' … for use as tools does not render the statute unconstitutionally vague," nor does it "alter [their] obvious and inherently dangerous nature." ¶19.

The continued presence of gravity knives on the streets exacerbates the ongoing problem of knife violence in New York City.  ¶12.  For example, as recently as 2009 and early 2010, a substantial portion of the homicides, assaults, and violent felonies in New York County were committed with knives – including folding knives – prompting an investigation by the District Attorney's Office that led to enforcement actions against several retail stores that were selling a high volume of illegal gravity knives.  ¶13.  By way of further example, in 2016, the City was confronted with a rise in the number of seemingly random assaults involving folding knives and other cutting instruments, creating fear in the community and among subway riders.  ¶14.

On October 18, 2013, while inside Grand Central subway station, Joseph Cracco was arrested for possession of a folding knife that, in the estimation of the arresting officer, functioned as a gravity knife.  ¶23.  Cracco, who lived in Connecticut and worked in Manhattan, commuted through Grand Central terminal each day, using the Metro North line to travel between Connecticut and Grand Central and a shuttle subway to travel between Grand Central and his place of employment.  ¶24.

At the time, Cracco worked as a sous chef at a restaurant that was preparing to open on West 27th Street.  ¶25.  Because the restaurant had not yet opened, Cracco's responsibilities at the time included unpacking boxes of kitchen equipment and inventory.  ¶28.  He used the knife to cut the packing tape on the boxes.  ¶29.  There were box cutters and scissors available in the restaurant that could have been used for the same purpose.  ¶30.

While at work, Cracco kept the knife clipped to his pants pocket so that it was readily accessible to him.  ¶26.  To open the knife from a closed position, Cracco would place his thumb in the circular hole in the blade and use his thumb to pivot the blade into an open position.  ¶27.  Cracco had owned the knife for "several years" and used it outside of work, as well, to open boxes (as he was

doing on the date of his arrest), to open beer bottles, and when working on cars or on his motorcycle. ¶32.  He never attempted to open the knife by application of the wrist flick test.  ¶33.

At approximately 4:00 p.m., Cracco and Jared Sipple – his friend, co-worker, and roommate – left the restaurant and began the commute back to Connecticut.  ¶34.  Although Cracco was carrying a messenger bag in which he could have stored the knife, and although he had no intention of using the knife during his commute, he continued to wear the knife clipped to his pants pocket as he traveled through the subway.  ¶35.  The City Administrative Code makes it unlawful for a person to wear a knife outside his or her clothing in a public place such as the subway.  ¶39.

Police Officer Jonathan Correa saw Cracco on the platform of the subway shuttle within Grand Central with the knife clip visible on his pants pocket.  ¶36.  As of the date of Cracco's arrest, Officer Correa had been with the New York City Police Department for over three years.  ¶37. He had been consistently assigned to the Transit District, which is responsible for policing the City's subway system. ¶38.  In Officer Correa's experience, gravity knives are typically clipped to the owner's clothing so as to make the knife readily accessible.  ¶40.  Officer Correa also knew gravity knives to be a common problem in the subway.  ¶41.

Officer Correa stopped Cracco, recovered the knife, and applied the wrist flick test. ¶42.  Cracco and Sipple claim that Officer Correa applied the wrist flick test unsuccessfully four times, and with increasing force, until the knife finally opened on the fifth attempt.  ¶43.  Officer Correa maintains that he applied the wrist flick test to the knife and the blade opened – as reflected in the video exhibit submitted by the District Attorney's Office depicting the officer applying the test to the knife in the exact manner that he did on the day of Cracco's arrest.  ¶44 and Ex. DA-7.

It is Officer Correa's practice to continue to test a knife that opens on the first attempt to ensure that it functions consistently as a gravity knife.  ¶45.  Officer Correa maintains that Cracco's knife has unambiguously functioned as a gravity knife on every occasion that he has applied in the

wrist flick – as reflected in a second video exhibit submitted by the District Attorney's Office depicting the officer applying the test to Cracco's knife five times in succession.  ¶46 and Ex. DA-8.

If Officer Correa had required five attempts of the wrist flick test to open the knife, it would not be consistent with his personal practice as a police officer to charge Cracco with possession of a gravity knife.  ¶47.  In fact, Officer Correa would not charge someone if he required more than two attempts to open their knife.  ¶48.  To date, Officer Correa has served as the arresting officer for seventy (70) New York County prosecutions involving a charge of possession of a gravity knife.  ¶49. Only one (1) has resulted in a termination favorable to the defendant.  *Id.*  Other than the instant lawsuit – which was barred by Cracco's guilty plea as pled against the Officer – he has never been sued by a defendant claiming to have been falsely charged with possession of a gravity knife.  ¶50.

Having, in his estimation, identified the knife to be a gravity knife, Officer Correa took Cracco into custody.  ¶51.  At the precinct, Officer Correa completed a desk appearance ticket directing Cracco to appear in Criminal Court on December 9, 2013.  ¶52.  After signing the desk appearance ticket, Cracco was free to leave.  ¶53.

On November 13, 2013, Officer Correa met with a representative of the District Attorney's Office in the Early Case Assessment Bureau to draft a criminal court complaint, which is the document that sets out the basis for the charge against a defendant.  ¶54.  Officer Correa did not tell the representative that five attempts were required to open the knife because, from the Officer's perspective, that is not what happened.  ¶55.  Officer Correa signed a criminal court complaint charging Cracco with possession of a gravity knife and reading as follows:

> I know that the knife was a gravity knife because I opened the knife with centrifugal force by flicking my wrist while holding the knife, thereby releasing the blade which locked in place by means of an automatic device that did not require manual locking.

¶56 and Ex. DA-5.  If Cracco's version of events is to be credited, the criminal court complaint is misleading in that it omits the fact that Officer Correa required multiple attempts to open the knife and creates the impression that the knife opened with the first flick of his wrist.  ¶57.

After Cracco's arraignment on the criminal court complaint, Assistant District Attorney Leah Branch was assigned to the case.  ¶58.  The file ADA Branch received included a copy of the criminal court complaint signed by Officer Correa, which she reviewed.  ¶59.

On or about April 30, 2013, Cracco served a motion to dismiss that advanced the following theories of relief: (1) Cracco submitted an affidavit from Sipple claiming that Officer Correa required five attempts of the wrist flick test to open the knife; (2) Cracco argued that the Court of Appeals' decision in *People v. Dreyden*, 15 N.Y.3d 100 (2010), requires that a criminal court complaint include a reference to the officer's training and experience in identifying gravity knives; (3) Cracco argued that *Dreyden* also requires that a complaint include an observation that the knife in question can be "readily" opened by centrifugal force; and (4) Cracco argued that, without the requirements identified in *Dreyden*, the gravity knife statute is void for vagueness.  ¶60 and Ex. DA-9.

On May 14, 2014, the parties appeared in Criminal Court and the People served their opposition papers.  ¶61.  Based on her review of Officer Correa's sworn statement in the criminal court complaint and the Sipple affidavit, ADA Branch understood there to be a factual dispute between the defendant and the People as to the number of attempts that were required to open the knife.  ¶65.  In opposition, ADA Branch argued that the version of events in the Sipple affidavit did not render the criminal court complaint insufficient – which is standard that applies in the context of a motion to dismiss a criminal charge – but merely created a factual dispute with the officer's statement as to the functionality of the knife to be resolved at trial.  ¶62.

The District Attorney's Office does not prosecute individuals who possess knives that could theoretically or potentially operate by gravity or centrifugal force; rather, the Office evaluates

the actual function of each knife on a case-by-case basis in determining whether it meets the statutory definition.  ¶63.  In evaluating whether a gravity knife charge is appropriate, the assigned Assistant considers first whether the knife meets the statutory definition – i.e., can the knife be opened to a locked position by application of the wrist flick test – and, second, whether the People will be able to meet their burden of proof beyond a reasonable doubt at trial.  ¶64.

If ADA Branch were assigned to draft a criminal court complaint at the inception of a prosecution and she learned from the arresting officer that he required five attempts of the wrist flick test to open the knife in question, she would speak to a supervisor about declining to prosecute the charge.  ¶66.  If ADA Branch learned, during the course of a prosecution, that it was undisputed that the arresting officer required five attempts to open the knife in question, she would speak to a supervisor about moving to dismiss the charge and notify the officer to appear at the District Attorney's Office to test the knife in her presence.  ¶67.

Assistants regularly notify arresting officers in gravity knife prosecutions to appear at the District Attorney's Office to test the defendant's knife in their presence, most often when the case is scheduled for hearings or trial, or at the request of defense counsel.  ¶68.  In this case, after Cracco raised the allegation that Officer Correa required five attempts of the wrist flick test to open his knife, Officer Correa appeared at the District Attorney's Office at the request of ADA Branch and tested the knife in her presence.  ¶69.

Assistant District Attorney Dan M. Rather has been a prosecutor in New York County for nearly thirty-two years and presently serves as Counsel to the Trial Division.  ¶70.  He regularly advises and provides training to Assistants regarding weapon-related prosecutions and has personally prosecuted or supervised hundreds of cases involving a gravity knife charge, ranging from misdemeanor criminal possession to homicide prosecutions.  ¶71.  ADA Rather has never advised an Assistant to go to trial with a knife that the arresting officer could not open to a locked position via a

flick of the wrist, nor is he aware of any prosecution going forward where the officer could not open

the knife to a locked position by application of the wrist flick test in fewer than three attempts. ¶72.

It was not the People's position that the prosecution of Cracco for possession of a

gravity knife should, or even could, continue were it undisputed that Officer Correa required five

attempts to open Cracco's knife. ¶73. Rather, the People did not credit (and still do not credit) the

claim of Cracco and his friend that Officer Correa – who can be observed handling Cracco's knife in

Exhibits DA-7 and DA-8 and who maintains that it has never functioned other than as depicted

therein – required five attempts of the wrist flick test to open the knife. ¶74.

The parties were scheduled to appear back in Criminal Court on July 8, 2014 for a

decision on Cracco's motion to dismiss. ¶75. At approximately 1:00 am in the morning on July 6th,

Cracco lit fireworks on a public sidewalk near a row of parked cars and a twelve-year-old child. ¶76.

He was arrested while in possession of a marijuana cigarette and charged with reckless endangerment,

dealing in fireworks, and possession of marijuana. ¶77.

At the July 8th court appearance, rather than having his vagueness challenge resolved

by a state court tasked with interpreting the gravity knife statute, Cracco pled guilty to disorderly

conduct and received a sentence of time served and a $120 fine in full satisfaction of the gravity knife

charge. ¶78. He then filed the instant suit in federal court challenging the gravity knife statute on the

same theories of vagueness advanced in the motion that he abandoned in state court – although he

added to the proposed declaration the caveat that a knife which does not open on the first attempt of

the wrist flick test does not open "readily" within the meaning of *Dreyden*. ¶79.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." FED. R. CIV. P. 56(c). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quotation omitted).

## ARGUMENT

### I.      Facial challenges versus as applied challenges

Under due process, a statute "may be challenged for vagueness on its face or vagueness as applied to the defendant['s] specific conduct." *United States v. Spy Factory*, 951 F. Supp. 450, 464 (S.D.N.Y. 1997) (Sotomayor, J.). "A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles v. Patel*, __ U.S. __, 135 S. Ct. 2443, 2449 (2015). Facial challenges are disfavored for several reasons: they "often rest on speculation" and thus "raise the risk of premature interpretation;" they "run contrary to the fundamental principle of judicial restraint;" and they "threaten to short circuit the democratic process." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008). "Under the standard set forth by the Supreme Court in *United States v. Salerno*,[7] to succeed on a facial challenge, the challenger must establish that no set of circumstances exists under which the [statute] would be valid." *New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015) (quotation omitted); *see also Patel*, 135 S. Ct. at 2449 ("Under the most exacting standard the Court has prescribed for facial challenges, a plaintiff must establish that the law is unconstitutional in all its applications").

In contrast, a party bringing an as applied challenge must establish that the challenged statute either (1) "failed to provide [him] with notice that [his conduct] was prohibited," or (2) "failed to limit sufficiently the discretion of the officers who arrested [him] under the statute." *Dickerson v.*

---

[7]      Reported at 481 U.S. 739 (1987).

*Napolitano*, 604 F.3d 732, 745 (2d Cir. 2010) (emphasis in original, albeit in the plural). While the standard is more forgiving, the scope of review is limited to "the particular facts at issue" and does not include "hypothetical situations testing the limits of the [statute]." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 3, 18-19 (2010); *see also VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 189 (2d Cir. 2010) (for an as applied challenge, "a court's analysis should be confined to the litigant's <u>actual conduct</u>, and a court should not analyze whether a reasonable person would understand that certain hypothetical conduct or situations violate the statute") (emphasis in original); *Spy Factory*, *supra*, at 466 ("[O]nly the actual conduct of the defendants involved can be considered; the Court must disregard other, more innocent or questionable hypothetical conduct under the statute").

Regardless how a party labels his claim, "the proper starting point for a due process vagueness challenge is as applied to the case at hand." *United States v. Doe*, 145 F. Supp. 3d 167, 177 (E.D.N.Y. 2015); *see also United States v. Rybicki*, 354 F.3d 124, 129 (2d Cir. 2003) ("Panel opinions of this Court have repeatedly held that when, as in the case before us, the interpretation of a statute does not implicate First Amendment rights, it is assessed for vagueness only as applied, i.e., in light of the specific facts of the case at hand and not with regard to the statute's facial validity") (quotation omitted) (collecting cases); *United States v. Decastro*, 682 F.3d 160, 163 (2d Cir. 2012) ("When a defendant has already been convicted for specific conduct under the challenged law, a court considering a facial challenge to a criminal statute must examine the complainant's conduct before analyzing other hypothetical applications") (quotation omitted). Where a plaintiff's as applied challenge fails, his facial challenge necessarily fails as well. *Diaz v. Paterson*, 547 F.3d 88, 101 (2d Cir. 2008) ("Because plaintiffs have failed to plead facts establishing that [the statute] is unconstitutional as applied to them, they necessarily fail to state a facial challenge").

## II.   The appropriate lens through which to view Cracco's claim is a prosecution involving a dispute between the officer and the defendant

Applying the above principles, this as applied challenge does not depend on Cracco's professed fear of the different ways that the District Attorney could enforce the gravity knife statute against him or others in the future; it depends on what Cracco has proven, or failed to prove, about the actual prosecution underlying his claim.  The complaint seeks a declaration that "prosecutions" for possession of a gravity knife are unconstitutional where the knife in question "does not open by means of the wrist-flick test on the first attempt."  ECF 9 at ¶80.  Such relief does not reflect the actual circumstances of Cracco's prosecution, for several reasons – including the fact that he claims Officer Correa required five attempts to open the knife, not one, as will be discussed in Part IV, *infra*.  But, more importantly, Cracco has sued the District Attorney seeking to enjoin prosecutions in the context of a case where there was a dispute between the arresting officer and the defendant as to a fact bearing on the propriety (and perhaps viability) of the charge – namely, the number of attempts of the wrist flick test required to open the subject knife.

At the motion to dismiss stage – where the allegations in a complaint must be accepted as true – this Court found that Cracco had alleged an "injury in fact" sufficient to confer standing because there was no dispute, at that juncture, that he could be prosecuted again for the "same conduct."  ECF 38 at p. 4.  The record is now clear that the District Attorney's Office does not prosecute knives that cannot be opened on fewer than three attempts of the wrist flick test;[8] that the assigned Assistant would not commence or continue a prosecution where the officer required five attempts to open the knife; and that this office reasonably credited Officer Correa – who can be seen

---

[8]        The fact that our office, as a matter of discretion, has adopted such a practice does not mean that to prosecute knives which require five attempts of the wrist flick test, as Cracco claims happened here, would be an "unexpected and indefensible" interpretation of the statute susceptible to a vagueness challenge, *United States v. Smith*, 985 F. Supp. 2d 547, 588 (S.D.N.Y. 2010) (quotation omitted), as argued in Part III, *infra*.

easily opening Cracco's knife in Exhibits DA-7 and DA-8 – in the dispute over the knife's functionality.  ¶¶46, 55-56, 66-67, 69, and 70-74.  This litigation has also advanced from the issue of standing to the issue of vagueness.  Perhaps Cracco – who pled guilty, thereby erasing any doubts as to the validity of his prior arrest and prosecution – could rely on a professed future injury to sufficiently allege standing, but he cannot continue to do so in the context of a motion for summary judgment on the merits of his vagueness claim (at least not where that claim is as applied as opposed to facial).

The only appropriate point of reference in this as applied challenge is the way the District Attorney enforced the gravity knife statute against Cracco.  *Holder*, *Dickerson*, *Berlin*, *Spy Factory*, p. 12, *supra*; *Expressions Hair Design v. Schneiderman*, 803 F.3d 118, 129 (2d Cir. 2015) ("Assessing a statute's constitutionality as applied to hypothetical situations not before the court … is appropriate only if the challenger is mounting a facial attack on the statute"),[9] *reversed on other grounds*, 2017 U.S. LEXIS 2186 (Mar. 29, 2017).[10]  The scenario relevant to the Court's analysis is not a prosecution where the officer required five attempts to open the knife, it is a prosecution where the defendant

---

[9]       *See also United States v. Farhane*, 634 F.3d 127, 138 (2d Cir. 2011) ("[A] person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court") (quotation omitted); *Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006) (distinguishing between "the complainant's conduct," which is relevant to an as applied challenge, and "hypothetical applications of the law," which are relevant to a facial challenge) (quotation omitted); *Perez v. Hoblock*, 368 F.3d 166, 175 (2d Cir. 2004) ("The evaluation of whether [the statute] is vague as applied to [plaintiff] must be made with respect to [plaintiff]'s actual conduct and not with respect to hypothetical situations at the periphery of the [statute]'s scope or with respect to the conduct of other parties who might not be forewarned by the broad language") (quotation omitted); *Smith*, 985 F. Supp. 2d at 593 ("[T]he Court's overarching inquiry is not into whether the term 'fiduciary duty' is sufficiently clear in <u>every</u> application; its inquiry is into whether the term 'fiduciary duty' is clear in <u>this</u> application") (emphasis in orginal); *EEOC v. Suffolk Laundry Servs., Inc.*, 48 F. Supp. 3d 497, 525-26 (E.D.N.Y. 2014) (finding that plaintiffs lacked standing to bring a vagueness challenge based on the conduct of others as they "ha[d] no direct interest in the theoretical application of the statute in [that] manner").

[10]       The reversal in *Expressions Hair Design* did not implicate the plaintiffs' as applied challenge; it was based on the fact that the statute implicated the First Amendment.  2017 U.S. LEXIS 2186, at *15-16.  Before the Supreme Court, the plaintiffs had narrowed the scope their claim to conduct that was "clearly prohibited" by the statute such that no vagueness analysis was needed and the case was remanded for consideration of the First Amendment claim, only.  *Id.* at *10-11, 16.

alleged that to be true and the officer not only disputed it but maintained that the knife functioned in a manner that undeniably satisfied the statute.  ¶¶43-44, 46-48, and 55; Ex. DA-5; Ex. DA-7; Ex. DA-8.

There are several reasons for this limitation.  A declaration resting on the premise that the District Attorney's Office would have prosecuted Cracco had Officer Correa confirmed that five attempts were required – or even three or four attempts – would be based on speculation.  *Wash. State Grange*, 552 U.S. at 450.  It would also remove the discretion of the District Attorney, who has been elected by the people of our borough to use that discretion to enforce the law, to continue prosecutions where the defendant disputes an element of the offense.  Given the posture of Cracco's prosecution and the state in which it terminated, if he were to succeed in obtaining any measure of relief against the District Attorney in this case, any defendant with a pending gravity knife charge could simply point to the resulting declaration, whether it is worded as "more than one attempt" or "more than four attempts;" claim that the officer who arrested him required more than the magic number; and claim that a federal court has therefore enjoined his prosecution.

In defending the propriety of the charge against Cracco, the assigned Assistant assessed two conflicting narratives and chose to credit Officer Correa as to the functionality of the knife.  ¶¶62, 65-67, and 73-74; Ex. DA-10.  Cracco may claim that Officer Correa required five attempts to open the knife, but he cannot dispute that an objectively reasonable individual, having reviewed the criminal court complaint and seen the officer handle the knife, could chose to credit Officer Correa and conclude that the knife opened on the first attempt.  Despite the constitutional and statutory protections available to a defendant to compel the People to persuade a fact-finder of the wisdom of this choice beyond a reasonable doubt,[11] Cracco opted to abandon his motion to

---

[11] And if convicted, to present his theories of relief to the First Department.

dismiss and take a plea.  The District Attorney must be able to exercise this type of discretion, not just in gravity knife cases but in all cases, without triggering a collateral challenge in federal court to the way it enforces the Penal Law – especially where, as here, the People's conduct was unquestionably reasonable and the defendant plead guilty.

If it were otherwise, a convicted defendant could sue this office to prohibit prosecutions for the offense of which he was convicted on the theory that he should have been credited in relation to some element of the offense and the failure of the People to do so (or the jury, if the case went to trial) renders the statute vague.  Not only would such a scenario eliminate the autonomy of the prosecutor, it would result in a constellation of constitutional rulings from federal courts anticipating issues not yet resolved by the state courts tasked with interpreting and enforcing the Penal Law.  As it cannot be said that the District Attorney's Office, by electing to credit Officer Correa over the defense, applied the gravity knife statute in an unreasonable manner in the context of Cracco's prosecution, this as applied challenge fails.[12]

### III.    Alternatively, assuming there was no dispute, the gravity knife statute is not vague as applied to Cracco

Assuming for argument's sake that Officer Correa reported to the District Attorney's Office that he required five attempts of the wrist flick test to open Cracco's knife – and assuming further that it was our practice to prosecute a defendant who possessed such a knife – the gravity knife statute would not be void for vagueness as applied to Cracco's prosecution.

---

[12]    Your Honor has already disagreed with the District Attorney's argument that Cracco's guilty plea, standing alone, bars his as applied vagueness claim.  ECF 38 at p. 6; ECF 46 at 2 (ruling, on our motion for reconsideration, that a judgment finding the gravity knife statute void for vagueness as applied to Cracco would not undermine his conviction).  Without waiving it for purposes of a potential appeal, we will not resurrect it here.  Rather, we are incorporating the plea into our argument that the platform for Cracco's as applied vagueness challenge – which includes the factual dispute between defendant and officer – is narrower than Cracco appreciates.

### A.  Cracco's as applied challenge for lack of notice fails

The notice element, *see Dickerson*, p. 12-13, *supra*, requires that "[the] statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Mannix v. Phillips*, 619 F.3d 187, 197 (2d Cir. 2010) (quotation omitted).  "[I]t is not only the language of a statute that can provide the requisite fair notice; judicial decisions interpreting [the] statute can do so as well." *Smith*, 985 F. Supp. 2d at 588; *see also Mannix*, 619 F.3d at 199 (rejecting a vagueness claim where state courts had previously ruled that similar conduct satisfied the elements of the challenged statute).  Only an "unexpected and indefensible" interpretation of a statute that gives a defendant "no reason to even suspect that his [or her] conduct might be within its scope" will violate the notice element.  *Smith*, *supra*, at 588 (quotation omitted).  The standard is objective; it is irrelevant "whether a particular plaintiff actually received a warning that alerted him or her to the danger of being held to account for the behavior in question." *Dickerson*, 604 F.3d at 745.

Cracco had notice with respect to all aspects of his prosecution that he claims rendered the statute unconstitutionally vague as applied to him.  He had notice that his conduct – possession of a knife that could be opened by the application of centrifugal force, as measured by the wrist flick test – was criminal.  ¶¶1-2, 4, 7-11, and 15.  He had notice that the "intended use or design" of a particular brand of knife – here, the Spyderco Endura 4, which Cracco alleges is designed with a "bias towards closure," *see* ECF 9 at ¶¶11, 47 – is irrelevant to whether a knife belonging to that brand meets the statutory definition, as is the prevalence in local retail stores of that brand or other similar knives. ¶¶5-6, 18-19; *see also Dickerson*, 604 F.3d at 746-47 ("the widespread availability" of products similar to those possessed by the plaintiffs had no bearing on their challenge to the statute as applied to the

products they possessed).[13]  Finally, he had notice that New York courts have considered and rejected the crux of his claim by finding that the People can meet their burden even if multiple attempts of the wrist flick test are required to open a knife, ¶16 – which is "plainly correct as the statute does not, on its face, require any particular number of applications of gravity or centrifugal force."  ¶17, quoting *Copeland*, 2017 U.S. Dist. LEXIS 11654, at *8 n.8.

Long before Cracco ran into Officer Correa in Grand Central, the "readily open" language from *Dreyden* that he now wants to inject into the gravity knife statute had lost any conceivable significance.  *See* ECF 9 at ¶¶79, 80.  The language is dicta in the context of a challenge to the sufficiency a criminal court complaint wherein the arresting officer stated that the defendant possessed a gravity knife without any support for that conclusion, i.e., facts to show that the knife opened by gravity or centrifugal force and how the officer knew that to be true.  *Dreyden*, 15 N.Y.3d at 102, 104.  The case presented a jurisdictional issue unique to that criminal court complaint, *id.* at 103; *Dreyden* never implicated the constitutionality of the gravity knife statute.  More importantly, a year after *Dreyden* was decided and two years before Cracco was arrested, the First Department held that the statute – exactly as written – provides sufficient "notice to the public … as to the precise characteristics that bring a knife under the statutory proscription" and the Court of Appeals denied leave to appeal.  *People v. Herbin*, 86 A.D.3d 446, 446-47 (1st Dept. 2011), *lv. denied*, 17 N.Y.3d 850 (2011).  In the face of a pre-existing appellate decision sanctioning the notice afforded by the statute, Cracco attempts to transform dicta in a ruling on the sufficiency of a criminal court complaint filed in another defendant's prosecution into a declaration that the statute is void for vagueness.[14]

---

[13]     Because several variables can impact the functionality of a knife over time, including wear through use, accomplishing the goal of the statute – to keep dangerous knives off the streets – requires a definition that is based on present function, not design.  ¶¶20-22.

[14]     Hammering the final nail into the coffin, the Court of Appeals subsequently upheld as sufficient a criminal court complaint with language nearly identical to the one signed by Officer Correa,

Against this landscape, it would not be an "unexpected and indefensible" interpretation of the gravity knife statute for the District Attorney to pursue a prosecution where the arresting officer required five attempts to open the defendant's knife. *Smith*, 985 F. Supp. 2d at 588.[15] In direct support of this point, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine <u>whether</u> the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely <u>what</u> that fact is." *United States v. Williams*, 553 U.S. 285, 306 (2008) (emphasis added). The gravity knife statute provides clear notice of the "incriminating fact" to be proven: the blade of the knife must open and lock into place in response to gravity or centrifugal force. ¶¶1-2, 7-10, and 15. The statute does not run afoul of the Fourteenth Amendment simply because the owner claims "difficult[y]" determining whether that fact has been proven. *Id.*; *see also United States v. Powell*, 423 U.S. 87, 88, 93-94 (1975) (rejecting a vagueness challenge to a statute that prohibited the mailing of firearms capable of being "concealed on the person" without specifying the person against whom to measure concealment – i.e., a large or small person, or the manner of the person's dress – brought by a woman convicted of mailing a twenty-two inch shotgun); *People v. Birth*, 49 A.D.3d 290, 290 (1st Dept. 2008) (rejecting argument that the People were obligated to prove that a knife would function as a gravity knife if the officer repeated the wrist flick test while sitting down and using his weaker hand). Aside from the fact that two panels of the First Department and two judges of this court have already clarified that a knife need not open on every attempt of the wrist flick test to trigger criminal liability, *see* ¶16, the gravity knife statute does not require a numerical limitation to satisfy the notice element of due process.

---

finding that the language adequately conveyed to the defendant the basis for the charge with no reference to the "readily open" dicta of *Dreyden*. *People v. Sans*, 26 N.Y.3d 13, 15, 17 (2015).

[15]    Cracco seeks to prohibit "prosecutions," not arrests. ECF 9 at ¶80. But if the fact that an officer required "several" or "some" attempts to open a knife does not defeat a finding of proof beyond a reasonable doubt, *see* ¶16, certainly it does not defeat a finding of the much lower threshold of probable cause to arrest.

### B.    Cracco's as applied challenge for arbitrary enforcement fails

The enforcement element, *see Dickerson*, p. 12-13, *supra*, targets only statutes that provide "virtually unlimited or unfettered discretion to those who enforce it." *Smith*, 985 F. Supp. 2d at 589.  Even a statute that provides "what may be unconstitutionally broad discretion if subjected to a facial challenge" may still be upheld on an as applied challenge "if the particular enforcement at issue [is] consistent with the core concerns underlying the [statute] such that the enforcement did not represent an abuse of the discretion afforded under the statute." *Dickerson*, 604 F.3d at 748.  An as applied challenge based on discretionary enforcement thus presents the Court with two questions: "(1) Whether the statute as a general matter provides sufficiently clear standards to eliminate the risk of arbitrary enforcement, and, if not, (2) whether, even in the absence of such standards, the conduct at issue falls within the core of the statute's prohibition." *Id.*

### i.    The gravity knife statute provides clear standards

As with the notice element, the record provides no reason for this Court to disturb prior rulings that the gravity knife statute provides sufficiently clear guidelines to law enforcement. *Herbin*, *supra*, at 447; *Copeland*, *supra*, at *39-41.  The language of the statute is definitive as to what it prohibits: Possession of a knife with a blade that opens via gravity or the application of centrifugal force and locks in place automatically.  ¶¶1-2.[16]  Assistants are trained on the statutory definition and how, consistent with appellate decisions interpreting the statute, to determine whether a knife falls within its scope.  ¶¶64, 71; Branch Decl. at ¶3; Rather Decl. at ¶¶4-6.  Prosecutions only occur once a knife has opened in response to the wrist flick test, and the witness who we have designated to speak

---

[16]    By contrast, successful vagueness challenges have involved "statutory language that tied criminal culpability to … wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings" – such as statutes that require law enforcement to determine "whether the defendant's conduct was 'annoying' or 'indecent.'" *Holder*, 561 U.S. at 20 (quotation omitted).

for the District Attorney – a thirty-year veteran of the office – has never advised an Assistant to go to trial where the officer could not open the knife in question on fewer than three attempts of the wrist flick test.  ¶¶64, 72.[17]  Prosecutions are not – and were not in this case – initiated or continued based on a theoretical possibility that a knife could or might open in response to the wrist flick test; they are commenced only if and when a knife does.  ¶¶44, 46, 56, 63, 69, and 73-74; Ex. DA-5; Ex. DA-7; Ex. DA-8; *see also Copeland*, *supra*, at *15 ("The evidence supports consistent, continued application of this historical practice under the current New York District Attorney, Cyrus Vance, Jr.").

　　　　　Even operating under the assumption that Officer Correa required five attempts to open the knife, this issue is appropriately addressed by the protections of the Criminal Procedure Law and the People's burden of proof; it does not merit a declaration re-writing the statute in a manner contrary to the way it has been interpreted by state courts.  "[As we] know from *United States v. Powell* [*see* p. 20, *supra*] and many other decisions … just because it is possible to replace a standard with a numeric rule, the Constitution does not render the standard a forbidden choice."  *Vrljicak v. Holder*, 700 F.3d 1060, 1061-62 (7th Cir. 2012) (citation omitted).  While close cases "can be imagined under virtually any statute," the issue they raise is "addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt."  *Williams*, 553 U.S. at 305-06.  If an officer requires more than four attempts of the wrist flick test to open a knife, the defense may be able to persuade the jury that the People have not proven beyond a reasonable doubt that the knife functions as a gravity knife.  The defense could also cross-examine the officer as to his experience opening knives; call an eyewitness, such as Sipple, to challenge the officer's testimony as to the functionality of the knife; or request a jury instruction that incorporates the "readily open" dicta from *Dreyden*.  All these

---

[17]　　　　As argued in Part II, *supra*, if this Office could be found, on pain of a federal declaration enjoining prosecutions, to have engaged in "arbitrary" enforcement of a criminal offense every time we credited a police officer over a defendant as what, exactly, happened during an arrest, we could not effectively do our job.

avenues are open to a defendant to attack the application of the statute to his knife, but the statute does not provide deficient guidance to law enforcement as to whether charges are appropriate because it lacks a "numeric rule." *Vrljicak*, *supra*.

### ii.   Cracco's conduct falls within the core of the gravity knife statute

Even if the Court were to find, contrary to the First Department and Judge Forrest, that the statute does not provide clear guidance, Cracco's vagueness challenge fails because his conduct falls within the core of the gravity knife statute.  The plain purpose of the statute is to prohibit knives which can be opened by the application of centrifugal force via a flick of the wrist.  ¶¶1-3, 5, 10-11, and 15.  Arrests and prosecutions under the gravity knife statute have arisen from possession of folding knives similar to the one possessed by Cracco and juries have voted for convictions after observing officers apply the wrist flick test at trial, even where the knife does not open on every attempt.  ¶¶4, 15-16, and 19; *compare* Ex. DA-3 *with* Ex. DA-6.  Such knives are regularly used to commit crimes and are often carried through subways and other public places creating potential danger to unsuspecting civilians.  ¶¶3, 12-14, 35, and 41.[18]  Of relevance here, "[s]imply because the statute reaches many defendants who claim to possess [folding] knives for legitimate purposes, and is

---

[18]     *See also* New York City Has A Subway Slashing Problem (1/31/2016), available at http://www.cbsnews.com/news/new-york-city-has-a-subway-slashing-problem/; Who's Slashing People in the New York City Subway? (2/1/2016), available at http://www.thedailybeast.com/articles/2016/02/01/who-s-slashing-up-new-york-city-s-subways.html; New York City Slashing Attacks Continue With Three More Within 24 Hours (2/4/2016), available at http://abc7ny.com/news/new-york-city-slashing-attacks-continue-with-three-more-within-24-hours/1185281/; Dramatic Spike In NYC Slashing Attacks Frightens Citizens, Puzzles Experts (2/24/2016), available at http://www.foxnews.com/us/2016/02/24/dramatic-spike-in-nyc-slashing-attacks-frighten-citizens-puzzle-experts.html; Man Slashes Subway Rider With Knife on 4 Train in Manhattan (3/19/2017), available at http://pix11.com/2017/03/19/man-slashes-subway-rider-with-knife-on-4-train-in-manhattan/; Woman Punched, Slashed, and Robbed at Random in Subway (4/12/2017), available at http://www.nbcnewyork.com/news/local/NYC-Woman-Punched-Slashed-and-Robbed-at-Random-in-Subway-419330334.html; Person Spits in Woman's Face, Pulls Knife on J Train Platform, Police Say (4/20/2017), available at https://www.dnainfo.com/new-york/20170420/lower-east-side/j-train-essex-broadway-station-suspect-spits-threatens-with-knife.

therefore broad in scope, does not make the statute overly broad." *Fana*, 2009 N.Y. Misc. LEXIS 956, at *10. Because the enforcement of the gravity knife statute against the type of knife possessed by Cracco is "consistent with the core concerns underlying [the statute]," his as-applied vagueness challenge for lack of adequate enforcement standards fails. *Dickerson*, 604 F.3d at 479.

## IV.   The declaration Cracco seeks is divorced from the record

Cracco complains that Officer Correa required five attempts of the wrist flick test to open his knife, yet he seeks a declaration that would prohibit enforcement of the statute against knives that do not open on the first attempt. ECF 9 at ¶¶71, 80. As with the scope of review, *see* Part I, *supra*, the scope of relief in an as applied challenge is limited to the "particular circumstances" of the case. *Doe v. Reed*, 561 U.S. 186, 194 (2010). Where the relief sought reaches "beyond [those] circumstances," the plaintiff must "satisfy [the] standards for a facial challenge to the extent of that reach." *Id.*; *see also Copeland*, 2017 U.S. Dist. LEXIS 11654, at *31 ("Plaintiffs have not narrowed their challenge, however, to their specific conduct or the specific [knives] that prompted the previous enforcement actions against [them] … In this way, plaintiffs' challenge resembles a pre-enforcement facial challenge").[19] Not only does Cracco's proposed declaration fail to account for the dispute

---

[19]         *See also Feldman v. Reagan*, 843 F.3d 366, 385 n.20 (9th Cir. 2016) ("Because Feldman's claim and the relief that would follow – an injunction barring Arizona from implementing and enforcing H.B. 2023 – reach beyond the particular circumstances of these plaintiffs, it is properly characterized as a facial challenge") (quotation omitted); *Dana's R.R. Supply v. AG*, 807 F.3d 1235, 1254 (11th Cir. 2015) ("A complaint seeking relief that reaches beyond the particular circumstances of the plaintiffs must meet the standards for a facial challenge – regardless of whether the plaintiff later tries to frame it as an as applied challenge"); *Catholic Leadership Coalition of Tex. v. Reisman*, 764 F.3d 409, 426 (5th Cir. 2014) ("[T]o categorize a challenge as facial or as-applied we look to see whether the claim and the relief that would follow … reach beyond the particular circumstances of the plaintiffs. If so, regardless of how the challenge is labeled by a plaintiff, they must therefore satisfy our standards for a facial challenge to the extent of that reach") (quotation omitted); *Disc. Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 522 (6th Cir. 2012) ("[B]ecause the plaintiffs' claim and the relief that would follow … reach beyond the particular circumstances of these plaintiffs, the claims that are raised are properly reviewed as facial challenges to the Act") (quotation omitted); *Expressions Hair Design*, 803 F.3d at 130 (the plaintiffs' "general failure to focus narrowly on the actual conduct in which they are engaged or would like to be engaged" was in "significant tension" with an as-applied challenge).

between Cracco and the officer, *see* Part II, *supra*, it exceeds record, thereby triggering the stringent standard for facial relief. *Cf. AFSCME Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir. 2013) ("*Salerno* also applies when a court grants relief that is quasi-facial in nature – that is, relief that reaches beyond the plaintiffs in a case"). If the First Department has affirmed convictions where a knife requires "several" or "some" attempts to open, it cannot be said "no set of circumstances" exist in which the District Attorney's Office could constitutionally prosecute a knife that requires two attempts, or even three or four attempts – especially considering that the number of attempts relates to "whether" the incriminating fact has been proven, not "what" that fact is. *See Williams*, p. 20, *supra*.

Cracco's request for a declaration that dramatically surpasses the facts of his own case highlights the concern of the Supreme Court that facial challenges should be viewed with skepticism because they are undemocratic. *Wash. State Grange*, 552 U.S. at 451. The constitutionality of the gravity knife statute, the professed necessity to cabin the discretion of law enforcement with a limit on the number of attempts to open a knife, and the significance (or, more accurately, the lack thereof) of the design or brand of a knife to its classification under the statute are not matters of first impression – either presently or at the time of Cracco's prosecution. *Herbin*, *supra*, at 447; ¶16, *citing Cabrera*, *Smith*, and *Carter*; ¶¶6 and 19, citing *Fana*. The concerns animating the gravity knife statute remain relevant today; knives that can be opened by a flick of the wrist were then, and still are now, "considered to be particularly dangerous." ¶¶4, 12-14. Only five months ago, the Governor vetoed an amendment to the statute containing the "bias towards closure" language Cracco now proposes out of concern that it would "potentially legalize all folding knives" in the face of grave public safety concerns. ECF 50 at Ex. 1 (referencing "a staggering 4,000 stabbings and slashings" in New York City in 2015 and the use of knives in "half of the homicides" committed in New York County in the first half of 2016). Cracco may be upset that he cannot perfectly predict whether his knife – and not just any knife, a knife that he needlessly elects to wear in plain view on the subway, ¶¶35-36 – will be classified as a

gravity knife, but he is not the only person with something at stake.  It would be of little comfort to the victim of a subway slashing that the defendant who assaulted her had been stopped by Officer Correa a few weeks earlier but this office had to decline to prosecute the charge because Correa required two attempts to open the knife.  Especially when viewed against the pre-existing decisions addressing each aspect of the statute that Cracco now claims rendered it vague as applied to his prosecution, the issues raised by his claim are appropriately addressed only by the elected state and local officials who represent the interests of all New Yorkers.

## CONCLUSION

For the foregoing reasons, Cracco's due process claim against District Attorney Vance seeking to enjoin all future gravity knife prosecutions unless the knife in question does not open on the first attempt of the wrist flick test must be dismissed.

Dated:       New York, New York
             April 21, 2017

CYRUS R. VANCE, JR.
District Attorney of New York County
*Attorney for Defendant Cyrus R. Vance, Jr.*
One Hogan Place
New York, New York 10013
(212) 335-4210

By:       _____

Elizabeth N. Krasnow
Patricia J. Bailey
Assistant District Attorneys