UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-27-19

-------------------------------------------------------X

JOSEPH CRACCO,                          :
                                        :
              *Plaintiffs*,             :
                                        :
       -against-                        :
                                        :          14 Civ. 8235 (PAC)
CYRUS R. VANCE JR., in his official     :
capacity as District Attorney for the County of   :
New York,                               :          **OPINION & ORDER**
                                        :
              *Defendant*.              :
                                        :
-------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

There has long been disagreement in the state of New York over how to define and when to prosecute an individual for possession of a gravity knife. Under the Penal Law, possession of a gravity knife is illegal *per se*, but a gravity knife is defined by function and not design. A knife is not illegal because it is designed to open by the force of gravity and lock into place; the knife is illegal when it actually opens by the force of gravity and locks into place by means of a procedure used by the District Attorney's office to identify a gravity knife, called the "wrist flick test."

Because the wrist flick test is a functional one, it is difficult if not impossible for a person who wishes to possess a folding knife to determine whether or not the knife is illegal. For example, a customer might attempt, but fail at applying the wrist flick test on a common folding knife she wishes to purchase at a store in New York, and purchase the knife believing it is permissible because she was unable to get the knife to lock into place. Yet that same customer's consistent use of the knife might loosen a screw over time, making it capable of flicking into

locked position when the wrist flick test is applied. Or, a police officer who is more adept than an ordinary customer at conducting the wrist flick test could succeed in getting the knife to lock into place in the store, and the knife could be illegal at the time of purchase without the customer realizing. Or, one police officer who is less adept at the wrist flick test could test out the knife at the time of purchase and fail to flick it open, leading the customer to believe it is legal, even though a second police officer who is more adept at the wrist flick test might succeed at getting it to lock into place the very next day, and could arrest the customer for illegal possession.

The New York state legislature has attempted but failed to solve the law's inherent enforcement problems. Its last attempt at a clarifying amendment to the gravity knife statute, which is codified at N.Y. Penal Law §§ 265.01(1) and 265.00(5), was vetoed by the Governor, who found the statute would be even more confusing with the proposed amendment. Courts in New York have considered the issue, both in the context of criminal prosecutions and vagueness challenges, but have sustained the statute. Yet it appears no court has faced a true prospective, as-applied vagueness challenge to the statute, and the Second Circuit has indicated that such a case might succeed. *See Copeland v. Vance*, 893 F.3d 101, 112-13, 117 (2d Cir. 2018).

In this case, Plaintiff Joseph Cracco was arrested for possession of a gravity knife. He pleaded guilty to disorderly conduct and paid a fine. Cracco claims that it took his arresting officer four or five tries of the wrist flick test to get the knife to lock into place; Defendant Cyrus R. Vance, Jr., in his official capacity as District Attorney for the County of New York ("Vance" or the "District Attorney"), disagrees and claims that it did not take that many tries. Cracco wants to continue carrying the same type of knife that led to his arrest, but fears he will be prosecuted again. He seeks a declaratory judgment against Vance that: (1) the gravity knife statute as-applied is void for vagueness, and (2) a knife that does not open in response to the

wrist flick test on the first or second attempt cannot form the basis for a criminal prosecution under the statute.

The parties have cross moved for summary judgment. For the following reasons, the Court GRANTS Plaintiff's and DENIES Defendant's motion for summary judgment.

## FACTUAL BACKGROUND[1]

### I. The Gravity Knife Statute

#### A. Definition

Under New York law, gravity knives are *per se* illegal weapons. *See* N.Y. Penal Law § 265.01(1). A person who possesses a gravity knife is guilty of Criminal Possession of a Weapon in the Fourth Degree. *Id.* A gravity knife is defined as:

> any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device.

N.Y. Penal Law § 265.00(5).

In contrast to other weapons, a gravity knife is defined by its function and not its design. *Compare* Penal Law § 265.00(5) *with* § 265.00(11) ("'Rifle' means a weapon designed. . . ."), § 265.12 ("'Shotgun' means a weapon designed. . . ."), and § 265.14 ("'Chuka stick' means any weapon designed. . . ."). In order to determine whether a knife is a gravity knife, police officers and prosecutors utilize the "wrist flick test." Dkt. 63 ("Rather Decl.") ¶ 19; Dkt. 64 ("Correa

---

[1] Pursuant to Southern District of New York Local Rule 56.1, the District Attorney properly filed a Rule 56.1 statement, Dkt. 67, and a counter-statement to Cracco's Rule 56.1 statement, Dkt. 73, but Cracco only filed his own 56.1 statement, Dkt. 71, and did not file a counter-statement to the District Attorney's Rule 56.1 statement. Pursuant to Local Rule 56.1(c), the Court could consider the District Attorney's Rule 56.1 statement entirely admitted, since Cracco never countered it. Since Cracco, however, did file his own Rule 56.1 statement, the Court will consider Cracco's Rule 56.1 statement as both that and as a counter-statement to the District Attorney's 56.1 statement. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). Accordingly, the District Attorney's Rule 56.1 statement is admitted only to the extent that it is supported by facts from the record and its paragraphs do not conflict with Cracco's 56.1 statement.

Decl.") ¶¶ 5-6, 33; Dkt. 65 ("Branch Decl.") ¶ 3. The wrist flick test involves holding a knife by the handle and flicking one's wrist; if the blade exits the handle and locks into place automatically, it is a gravity knife under the statute. Rather Decl. ¶ 4; Correa Decl. ¶ 6; Branch Decl. ¶ 3. The wrist flick test is a procedure used by the District Attorney's office to identify gravity knives; it is not codified and there is no prescribed number of wrist flick attempts for determining what is or is not a gravity knife. *See* N.Y. Penal Law § 265.00(5).

Certain folding knives—while not necessarily intended by the designer or manufacturer to be illegal—can nonetheless function as gravity knives. Rather Decl. ¶ 24. Folding knives that were legal when purchased can begin to function as gravity knives over time, either through the wear of regular use or through intentional modification. *Id.* ¶¶ 24-25. For example, a knife with a tension screw at the fulcrum could function as a gravity knife if the screw has loosened; the owner, however, can avoid this by periodically checking the knife to ensure that the screw remains tight. *Id.* ¶ 25. Conversely, a knife that once functioned as a gravity knife may cease to function as one if, for example, the blade has been taped shut, the knife has been stored continuously in a cold or arid location, or the knife has been exposed to moisture causing corrosion on the blade or in the handle. *Id.* ¶ 26.

### B. Legislative History

N.Y. Penal Law §§ 265.01(1) and 265.00(5) (collectively, "the gravity knife statute") were enacted in 1958. Rather Decl. ¶¶ 12-13 & Ex. DA-1. At that time, Assemblyman Stanley Steingut explained that the gravity knife is "the successor of the switchblade knife," and that the amendment was needed because the gravity knife was being used to circumvent the statute prohibiting possession of certain dangerous weapons. Ex. DA-1 at 5. The New York City Police

Department ("NYPD") recommended enactment of the amendment, which it described in a

report to the Mayor as follows:

> The bill defines as a misdemeanor the manufacture, sale or possession of a gravity knife and as a felony the possession of such a knife if previously convicted of any crime. The gravity knife is one which is released from the handle or sheath thereof by gravity or by the application of centrifugal force. When released, it is locked in place by means of a button, spring, lever or other device.
>
> Under the present statutes covering dangerous and unlawful weapons, the switchblade knife is included therein while there is silence as to the gravity knife. There can be no doubt that the gravity knife is as much a hazard to the safety of the general public as the switchblade knife. Since it has been made unlawful to have and possess a switchblade knife, the gravity knife has been most attractive and useful to those engaged in criminal activity. The experience of this Department indicates that gravity knives are being used increasingly as weapons in the perpetration of such crimes as homicides, assault, rape and robbery. Naturally, since it is not unlawful to possess such a knife under present law, the person about to commit such heinous crimes has no fear of being apprehended with such knife in his possession. As a result, one of the deterrent factors in the prevention of serious crimes is lost.
>
> The gravity knife is inherently dangerous. To children and adults not versed in the use of such weapons, this knife can cause very serious injuries.
>
> For the above reasons, this Department strongly urges the enactment of this proposal.

Ex. DA-1 at 17-18.

In 2016, the New York Assembly and Senate passed an amendment to the gravity knife

statute, which would have excluded from the definition of "switchblade knife" and "gravity

knife" those knives that have "a spring, detent, or other mechanism, including but not limited to

resistance to opening designed to create a bias toward closure and that requires exertion applied

to the blade by hand, wrist, or arm to overcome the bias toward closure and open the knife." *See*

Dkt. 72 Ex. 2. The Governor vetoed the amendment, which he believed "would create more

confusion among law enforcement and knife owners based upon its ambiguous phraseology,"

and which failed to account for his proposed modifications "that would have allowed crafts and

tradespeople to possess these knives without penalty, as well as create an affirmative defense for

those who possessed gravity knives with no intent to use it unlawfully." *Id.* In his veto statement, the Governor described that the original intent of the gravity knife statute was "to outlaw a knife created in the 1950s for use by German paratroopers, which could truly open by the force of gravity alone," but that "[t]he law has been subsequently interpreted to include knives that could be opened with a flick of one hand . . . result[ing] in a definition that is both amorphous, subject to abuse and could include nearly any pocket knife." *Id.* The Governor recognized the problem of knife violence in New York, but also the "absurd" construct that purchasers of common folding knives that "are designed, marketed and sold as work tools for construction workers and day laborers at a variety of major retailers across the State . . . can be subsequently arrested and prosecuted for mere possession." *Id.*

## II. Cracco's Knife

At the time of his arrest, Cracco was in possession of a Spyderco Endura 4 folding knife, which he used for his work as a sous chef and in his daily life. Dkt. 9 ¶ 11; Dkt. 66 Ex. DA-13 ("Cracco Dep.") at 49-50, 52-53, 69-71, 73-74. Cracco had owned the knife for several years and used it open boxes, to open bottles, and when working on cars or on his motorcycle. Cracco Dep. at 69-71, 73-74. He never attempted to open the knife by application of the wrist flick test. *Id.* at 62-63.

In October 2013, Cracco worked as a sous chef at a restaurant that was preparing to open on West 27th Street in Manhattan. *Id.* at 43-44, 47-49. Cracco commuted through Grand Central terminal each day to get to the restaurant. *Id.* at 50-51, 57. While at work, Cracco kept the knife clipped to his pants pocket so that it was readily accessible to him. *Id.* at 56-57. Because the restaurant had not yet opened, Cracco's responsibilities included unpacking boxes of kitchen equipment and inventory. *Id.* at 49-50, 52-53. Cracco used the knife to cut the packing

tape on the boxes, but did not believe the residue would have had an impact on the ability to open the knife. *Id.* at 53-54, 95-97. To open the knife from a closed position, Cracco placed his thumb in the circular hole in the blade and used his thumb to pivot the blade into an open position. *Id.* at 27-28.

## III. Cracco's Arrest and Prosecution

On October 18, 2013 at approximately 4:00 p.m., Cracco and Jared Sipple, a co-worker, left the restaurant and began the commute back to their home in Connecticut. *Id.* at 40-43, 54, 56, and 79-80; Dkt. 66 Ex. DA-14 ("Sipple Dep.") at 30, 32-34, and 39-40. Cracco wore the knife clipped to his pants pocket as he traveled through the subway. Cracco Dep. at 55-57.

Police Officer Jonathan Correa saw Cracco on the platform of the subway within Grand Central with the knife clipped on his pants pocket.[2] Correa Decl. ¶ 14. Officer Correa stopped Cracco, recovered the Spyderco Endura 4 folding knife, and applied the wrist flick test. Cracco Dep. at 58-62; Sipple Dep. at 13-16, 44-45; Correa Decl. ¶ 17. Cracco and Sipple claim that Officer Correa attempted the wrist flick test four to five times in order to succeed in getting Cracco's folding knife open, and that he required increased force or violence before ultimately getting the knife open. Cracco Dep. at 60-62, 93-94; Sipple Dep. at 13-16, 44-45; Dkt. 70 Ex. 2 ¶ 2; Dkt. 80 ¶ 5. The District Attorney does not credit Cracco's and Sipple's claims, and takes the position that the number of attempts of the wrist flick test to open the knife was a factual dispute to be resolved at trial. Dkt. 65 ¶¶ 14-15.

Officer Correa maintains that he applied the wrist flick test to the knife and the blade opened, that it did not take four or five attempts of the wrist flick test to open the knife, and that

---

[2] The City Administrative Code makes it unlawful for a person to wear a knife outside his or her clothing in a public place such as the subway. Admin. Code §10-133(c).

if it had taken four or five attempts he would not have charged Cracco with possession of a gravity knife. Correa Decl. ¶ 19. Officer Correa also claims that Cracco's knife has unambiguously functioned as a gravity knife on every occasion that he has applied the wrist flick test to it, and submitted videos to the Court depicting him applying the wrist flick test to Cracco's knife. *Id.* ¶ 32 & Exs. DA-7, DA-8. None of the declarations or attached exhibits submitted by the District Attorney explicitly state that Officer Correa required only one attempt of the wrist flick test to open Cracco's knife. *See* Correa Decl.; Branch Decl.; Rather Decl.

Cracco was charged with possession of a gravity knife in violation of New York Penal Law § 265.01. Dkt. 70-1. The criminal court complaint charging Cracco was signed by Officer Correa, who asserted:

> I know that the knife was a gravity knife because I opened the knife with centrifugal force by flicking my wrist while holding the knife, thereby releasing the blade which locked in place by means of an automatic device that did not require manual locking.

Correa Decl. ¶ 23 & Ex. DA-5.

After Cracco's arraignment on the criminal court complaint, Assistant District Attorney Leah Branch was assigned to prosecute the case. Branch Decl. ¶ 6.

On or about April 30, 2014, Cracco served a motion to dismiss, which claimed that, *inter alia*, Officer Correa required four or five attempts of the wrist flick test to open the knife, and the gravity knife statute was void for vagueness. *Id.* ¶ 8 & Ex. DA-9.

At a July 8, 2014 court appearance, Cracco pleaded guilty to disorderly conduct on the gravity knife charge and received a sentence of time served and a $120 fine. Branch Decl. ¶ 20 & Ex. DA-12 at 3-4.

## IV.    The District Attorney's Prosecutions Under the Gravity Knife Statute

The District Attorney contends that the continued presence of gravity knives on the streets and in the subway exacerbates an ongoing problem of knife violence in New York City. Rather Decl. ¶ 14; Correa Decl. ¶¶ 11, 16.   Accordingly, the District Attorney's office has procedures for how and when to prosecute criminal possession of a gravity knife.  *See* Rather Decl. ¶¶ 18-30.

Trial Bureau Assistants in the District Attorney's office are instructed on the gravity knife statute and how to enforce it, including how to apply the statute to a particular knife via the wrist flick test.  *Id.* ¶ 18.  In evaluating whether to pursue a gravity knife charge, an Assistant District Attorney considers first whether the knife meets the statutory definition—*i.e.*, can the knife be opened to a locked position by application of the wrist flick test—and second, whether the prosecution will be able to meet its burden of proof beyond a reasonable doubt at trial.  *Id.* ¶ 28; Branch Decl. ¶ 5.  Assistant District Attorney Dan M. Rather states that he has never advised an Assistant District Attorney to go to trial with a knife that the arresting officer could not open to a locked position via a flick of the wrist, and that he is not aware of any prosecution going forward where the officer could not open the knife to a locked position by application of the wrist flick test in less than three attempts.  Rather Decl. ¶ 30.

Assistant District Attorney Branch asserts that she would speak to a supervisor about declining to prosecute a gravity knife charge if she learned that an arresting officer required five attempts of the wrist flick test to open the knife in question.  Branch Decl. ¶ 11.  At the same time, however, Branch has argued that the criminal court complaint against Cracco would not be rendered insufficient even if four or five attempts of the wrist flick test were needed to open the knife, but rather that this would create a factual dispute to be resolved at trial.  *Id.* ¶ 15.

## PROCEDURAL HISTORY

On October 15, 2014, Cracco filed a complaint against Defendants the City of New York and Officer Correa, seeking damages under § 1983 for false arrest. Dkt. 2. Cracco amended his complaint on February 17, 2015, adding the District Attorney as a Defendant and a cause of action seeking a declaration that the gravity knife statute is void for vagueness as-applied to criminal prosecutions for the simple possession of any folding knife that has three specific characteristics: (a) a "bias toward closure"; (b) a "lockable" blade; and (c) the "inability to be readily . . . opened by gravity or centrifugal force." Dkt. 9 ¶ 80. Cracco further seeks a specific finding of law that the last characteristic is satisfied by any folding knife that does not open by means of a wrist-flick test on the first or second attempt. *Id.*; *see also* Dkt. 78 at 2-3.

On November 4, 2015, the Court dismissed the claims against Defendants the City and Officer Correa, finding that Cracco's guilty plea barred his claim for false arrest, and that Cracco's other causes of action against the City and Officer Correa were either barred or failed to state a claim. Dkt. 37. In a separate opinion issued on December 9, 2015, the Court denied the District Attorney's motion to dismiss, finding that: (1) Cracco had standing to pursue a declaratory judgment that his knife choice is lawful; (2) Cracco had no adequate remedies at law to remedy the harm he suffers from the threat of future prosecution arising from his inability to know which knives are prohibited; (3) Cracco's guilty plea does not affect whether he can seek declaratory judgment; and (4) Defendant Vance was not entitled to judgment on the merits at the motion to dismiss phase in this as-applied challenge. Dkt. 38. On January 28, 2016, the Court denied the District Attorney's motion for reconsideration. Dkt. 46.

On June 22, 2016, the Court imposed a stay pending (1) the Governor of New York's approval or veto of an amendment to the gravity knife bill that would have excluded folding

knives with "a bias toward closure" from the definition of a gravity knife, and (2) Judge Forrest's

determination following a bench trial in *Copeland et al. v. Vance*, 11 Civ. 3918 (S.D.N.Y.), a

declaratory action regarding the gravity knife statute. Dkts. 49, 54. On December 31, 2016, the

Governor vetoed the amendment. Dkt. 50 Ex. 1. On January 27, 2017, Judge Forrest found that

the plaintiffs in *Copeland* failed to show that the gravity knife statute was unconstitutionally

vague as-applied to their facts or on its face. *See Copeland v. Vance*, 230 F. Supp. 3d 232, 248

(S.D.N.Y. 2017). Following the Governor's veto and Judge Forrest's decision, the Court lifted

the stay and the parties filed cross motions for summary judgment. *See* Dkts. 59, 62, 69.

Subsequently, the *Copeland* plaintiffs appealed to the Second Circuit, and on March 2,

2018, the Court reimposed the stay pending the Second Circuit's decision. Dkt. 83. On June 22,

2018, the Second Circuit affirmed Judge Forrest's opinion under the standard for a facial

vagueness challenge to the statute. *Copeland v. Vance*, 893 F.3d 101 (2d Cir. 2018). The

plaintiffs' petition for a rehearing *en banc* was denied on August 16, 2018. *Copeland v. Vance*,

Case No. 17-474 (2d Cir.), Dkt. 145.[3]

On September 19, 2018, the Court lifted the stay, reopened the parties' summary

judgment motions, and indicated that the parties could brief their motions further if they wished.

Dkt. 89. On September 28, 2018, the parties wrote jointly to the Court and agreed to rely on

their previously filed papers. Dkt. 90.

---

[3] The *Copeland* plaintiffs have filed a petition for a writ of certiorari in the U.S. Supreme Court. *Copeland v. Vance*, Case No. 18-918 (S. Ct.) (docketed Jan. 16, 2019).

**DISCUSSION**

## I. Summary Judgment

### A. Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the burden of demonstrating the absence of any genuine dispute of material facts. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B. Analysis

The parties here assert that there is no genuine issue of material fact, and the Court agrees. While the parties vigorously dispute the number of attempts that Officer Correa took to succeed in his application of the wrist flick test to Cracco's knife, both agree that it does not matter for purposes of this challenge. As there are no issues of material fact, the question remains which party is entitled to judgment as a matter of law.

## II.    Facial v. As-Applied Challenge

### A.    Standard

People should be able to tell whether their conduct is lawful or unlawful. "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006). This is particularly important when it comes to laws that burden constitutional rights or impose criminal penalties, which are subject to a "more stringent" vagueness standard than civil regulations. *See New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015).

A criminal statute can be challenged on the basis of vagueness, on its face or as-applied to the defendant's specific conduct, under the due process clause of the Fourteenth Amendment. U.S. Const. Amend. XIV, § 1; *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 464 (S.D.N.Y. 1997). "A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2449 (2015). An as-applied challenge, by contrast, requires that a plaintiff show that the challenged statute is unconstitutional when applied to the particular facts of his or her case. *See United States v. Farhane*, 634 F.3d 127, 138 (2d Cir. 2011).

Outside of the First Amendment context, "courts generally view vagueness challenges to a statute as applied to the defendant's case." *Id.* at 138; *see also Chapman v. United States*, 500 U.S. 453, 467 (1991). "This preference for as-applied review is embedded in the traditional rules governing constitutional adjudication, notably, in the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it

may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Farhane*, 634 F.3d at 138 (internal quotation marks and citations omitted).

## B. Analysis

It is important at the outset to define the scope of Cracco's challenge. Cracco brings an as-applied challenge to the gravity knife statute based on his factual circumstances: he was prosecuted for possessing a common folding knife that took anywhere from one to five tries for a police officer to open through application of the wrist flick test. Cracco wishes to carry the same type of knife in the future, but fears he will be prosecuted again. He seeks prospective relief that would allow him more easily to determine if the knife is legal to possess.

In *Copeland*, the Second Circuit found against the plaintiffs after applying the facial vagueness standard to the gravity knife statute. *Copeland*, 893 F.3d 101. The Court, however, left open the possibility that a true prospective, as-applied vagueness challenge to the gravity knife statute could succeed. This is that case.

In relevant part, the Court in *Copeland* stated: "[W]e think that someone previously convicted for carrying what is indisputably a gravity knife should be permitted to claim that the gravity knife law cannot lawfully be applied to a different knife that she intends to carry and that responds differently to the wrist-flick test." *Id.* at 112. The plaintiffs before the Court in *Copeland* had not done so: "Plaintiffs seek, not a declaration that the statute cannot be applied to certain knives they wish to personally carry, but a declaration that the statute cannot constitutionally be applied to anyone carrying any knife in the very large 'common folding knife' category." *Id.* Since the plaintiffs had not "tailor[ed] the proof to the specific conduct that [they] would pursue but for fear of future enforcement"—*i.e.* "proof that specific knives they wished to possess responded inconsistently, if at all, to the wrist-flick test," the Court considered the

prospective relief sought a facial challenge and not an as-applied one. The Court found that the gravity knife statute was constitutionally enforced against at least one of the plaintiffs, and that the plaintiffs had thus failed to satisfy their burden to show that the statute is unconstitutional on its face. *Id.* at 113-14.

Here, by contrast, Cracco has brought a claim based on specific conduct he wants to pursue without fear of prosecution. In light of his past criminal prosecution, Plaintiff seeks a remedy that will allow him to carry the same or a similar type of common folding knife in the future without fear of criminal prosecution.

Both Cracco's manner of proof and requested relief are tailored to the facts of his actual criminal prosecution for possession of a gravity knife. Unlike the plaintiffs in *Copeland*, Cracco argues that the folding knife he possessed did not lock into place on the first try. Instead, he claims that it took four or five tries for Officer Correa to succeed in the wrist flick test. While the District Attorney disputes that it took that many attempts, Cracco did not posit hypothetical unfair enforcement actions, but rather used his own criminal prosecution as the basis for his challenge.

By its prospective nature, a prospective, as-applied challenge does not seek to redress a past unconstitutional prosecution, but rather relates to conduct that has not yet occurred, which cannot be narrowly proscribed within the tightly limited scope of the exact facts of a previous prosecution. The facts of a future prosecution may differ slightly from Cracco's past prosecution, but he has still limited his challenge to his past conduct. While "Courts consider prospective, as-applied vagueness challenges comparatively infrequently," the Second Circuit has indicated that a prospective, as-applied challenge to the gravity knife statute could look like "someone previously convicted for carrying what is indisputably a gravity knife . . . [who]

claim[s] that the gravity knife law cannot lawfully be applied to a different knife that she intends to carry and that responds differently to the wrist-flick test." *Copeland*, 893 F.3d at 101, 112; *see also Yunus v. Robinson*, No. 17-CV-5839 (AJN), 2019 WL 168544, at *13 (S.D.N.Y. Jan. 11, 2019) (recognizing that *Copeland* made clear that prospective, as-applied challenges are possible where plaintiffs posit actual rather than hypothetical scenarios that raise vagueness concerns).

Cracco's requested relief is a declaration that the law is void for vagueness when applied to criminal prosecutions for the possession of any folding knife that has a bias toward closure, a lockable blade, and the inability to be readily be opened by gravity or centrifugal force, with a specific finding that a knife is not readily opened unless it opens by means of a wrist flick test on the first or second attempt. Dkt. 9 ¶ 80; *see also* Dkt. 78 at 2-3. While this relief could conceivably apply to prosecutions other than Cracco's, it is still tailored to the facts of Cracco's prosecution—he was prosecuted for possessing a knife that he contends did not open on the first or second try when Officer Correa applied the wrist flick test. Cracco is entitled to seek such relief for a prospective challenge based on a claim that is limited to the particular circumstances of his case. *See Soglin v. Kauffman*, 295 F. Supp. 978, 984 (W.D. Wis. 1968), *aff'd*, 418 F.2d 163 (7th Cir. 1969) ("[Plaintiff] could challenge the prospective application of a vague rule and obtain a judicial declaration of its invalidity and injunctive relief against attempts to enforce it.").

The requested relief's specific finding—that a knife is not readily opened unless it opens by means of a wrist flick test on the first or second attempt—is not a perfect solution. There remains the issue that Cracco might still be unable to determine whether a knife he purchases would function as a gravity knife upon an officer's application of the wrist flick test on the first or second try. "Many statutes will have some inherent vagueness," *United States v. Smith*, 985

F. Supp. 2d 547, 588 (S.D.N.Y. 2014), *aff'd sub nom. United States v. Halloran*, 664 F. App'x 23 (2d Cir. 2016), however, and the proposed relief addresses the statute's deficiencies as-applied to Cracco. Moreover, with the proposed relief, if Cracco possesses a knife that opened on the first or second try of the wrist flick test, his conduct would be squarely within the prohibition of the statute, and he would thus be on sufficient notice that his possession was prohibited. *See infra* § III(B)(1).

The District Attorney argues this is a facial challenge similar to that considered by the Second Circuit in *Copeland*, because he believes the relief sought goes beyond the facts of Cracco's case. But this argument ignores the preference for as-applied review outside of the First Amendment context, *see Farhane*, 634 F.3d at 138, and the Court is inclined to assess the challenge as Cracco asserts it—as an as-applied one, *see Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1149 (2017) ("Before us, however, the merchants have disclaimed a facial challenge, assuring us that theirs is an as-applied challenge only."). Unlike in cases that have viewed vagueness challenges as the District Attorney suggests, Cracco's claim is based on the conduct for which he was already prosecuted and does not reach beyond his own circumstances. *See John Doe No. 1 v. Reed*, 561 U.S. 186 (2010).

Just because Cracco requested a declaration that could conceivably apply to people other than him does not automatically transform this as-applied challenge into a facial challenge, such that the gate is closed on Cracco to make his showing that the statute was unconstitutionally vague as-applied to him. For example, in *Expressions Hair Design*, 137 S. Ct. 1144, the Supreme Court considered merchants' prospective vagueness challenge to a New York statute an "as-applied" rather than a facial one, because the merchants were challenging a particular pricing practice: a single-sticker regime, in which merchants "post[] a cash price and an additional credit

17

card surcharge." *Id.* at 1149. The challenge was specific to the facts of the merchants' case, but the requested relief—a finding that the statute was void for vagueness as-applied to merchants who wanted to price under a single sticker regime—would apply to others who wished to employ the same pricing practice. *See id.* Similarly here, Cracco's challenge is specific to his case, and he seeks relief that would eliminate the vague application of the gravity knife statute to folding knives that do not open and lock in response to the wrist flick test on the first or second try. This is an as-applied, prospective challenge.

## III.  As-Applied Challenge

### A.  Standard

To succeed on an as-applied vagueness challenge to a criminal statute, a plaintiff must show that that the statute either (1) failed to provide sufficient notice that his or her behavior was prohibited, or (2) authorized or even encouraged arbitrary and discriminatory enforcement. *See Dickerson v. Napolitano*, 604 F.3d 732, 745-47 (2d Cir. 2010).

With respect to notice, the Court asks "whether the law presents an ordinary person with sufficient notice of or the opportunity to understand what conduct is prohibited or proscribed." *Thibodeau v. Portuondo*, 486 F.3d 61, 67 (2d Cir. 2007). This test "does not demand meticulous specificity in the identification of the proscribed conduct. Rather, it requires only that the statutory language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Smith*, 985 F. Supp. 2d at 587-88 (quoting *United States v. Coppola*, 671 F.3d 220, 235 (2d Cir.2012)).

The second way in which a statute can be found unconstitutionally vague is if the statute does not "provide explicit standards for those who apply [it]." *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 191 (2d Cir. 2010). A criminal statute is unconstitutionally vague if it does

not provide "sufficiently clear standards to eliminate the risk of arbitrary enforcement" and the conduct at issue does not "fall[] within the core of the statute's prohibition." *Dickerson*, 604 F.3d at 748.

### B.    Analysis

#### 1.    Notice of Prohibited Behavior

The crux of Cracco's vagueness argument is that he has no reliable way of knowing whether the common folding knife he wishes to possess will be viewed as legal or illegal given the text of the gravity knife statute and the procedures used by the District Attorney to enforce the statute. Cracco's position is supported by the record. The District Attorney's argument seems to be that the statute itself and some cases in state and federal court in New York put Cracco on notice that his possession of any folding knife that might at some point respond to the wrist flick test risks criminal prosecution. But it is not the District Attorney's position that any folding knife is a gravity knife. Rather, a knife must open upon application of the wrist flick test to warrant prosecution, even though there is no specific number of attempts of the wrist flick test that is too many. Under this enforcement regime, Cracco has no way of knowing that his past conduct was, or that his intended future conduct will be, criminal under the gravity knife statute.

There are several additional factors indicating that Cracco did not have notice that carrying his knife was illegal. First, contrary to the District Attorney's claim, the case law in New York is not clear on what can be considered a gravity knife. *Compare Carter v. McKoy*, No. 09 CIV 1030 NRB, 2010 WL 3290989, at *5 (S.D.N.Y. Aug. 9, 2010) (commenting that even if an officer "needed several attempts to open the knife before it would hold in an open position, the jury's verdict must still be upheld, since under New York law, a knife need not work consistently in order to support the finding that it is a gravity knife") *with United States v. Irizarry*, 509 F. Supp. 2d 198, 210 (E.D.N.Y. 2007) ("[A common folding knife] was not

intended to be opened with centrifugal force and was not treated as a weapon by its designer, manufacturer, seller, or users. The history of the gravity knife provision as well as the legislative scheme distinguishing 'dangerous instruments' from 'per se' weapons demonstrates a plan only to ban those items designed to be used as weapons.").

Second, the types of knives that are prosecuted as gravity knives are sold openly in stores in New York. *See* Rather Decl. ¶ 14; Dkt. 72 Ex. 2; *see also Dickerson*, 604 F.3d at 746 (NYPD's facilitation of the sale of NYPD uniforms and other memorabilia "lends credence to the proposition that an ordinary person might think that possession of some articles that are covered by the literal words of the statute is not in fact prohibited").

Third, the gravity knife statute's purpose—to prohibit the possession of dangerous weapons used to perpetrate crimes, *see* Rather Decl. Ex. DA-1 at 15-16—supports the conclusion that the statute is vague, *see Town of Berlin*, 593 F.3d at 188. The statute was not intended to criminalize the possession of the type of ordinary folding knife that Cracco possessed, which are commonly used by cooks, craftsmen, and laborers to perform their job functions; it was intended to criminalize knives used by criminals in New York City. *See id.*

The Court cannot conclude that the gravity knife statute provided "an ordinary person with sufficient notice of or the opportunity to understand what conduct is prohibited or proscribed." *Thibodeau*, 486 F.3d at 67.

### 2. Arbitrary and Discriminatory Enforcement

The gravity knife statute does not "provide explicit standards for those who apply [it]." *Town of Berlin*, 593 F.3d at 191. The statute does not provide "sufficiently clear standards to eliminate the risk of arbitrary enforcement" and Cracco's conduct did not "fall[] within the core of the statute's prohibition." *Dickerson*, 604 F.3d at 748 (quoting *Farrell*, 449 F.3d at 494).

The District Attorney presented evidence that it would be unlikely to prosecute an individual under the gravity knife statute if it were undisputed that it took an officer four or five tries to effectively apply the wrist flick test. *See* Branch Decl. ¶ 11. The District Attorney also claims, however, that it would have the authority to prosecute such cases, but that it would be up to a jury to decide whether the knife in question falls within the statutory definition of a gravity knife. *See id.* ¶ 15 & Ex. DA-10 at 4. These are not sufficiently clear standards that eliminate the risk of arbitrary enforcement.

The conduct at issue also does not fall within the core of the gravity knife statue's prohibition. Cracco seeks to carry an ordinary folding knife offered for sale at stores in New York that does not open on the first or second attempt of the wrist flick test—not one used to advance criminal purposes. *Cf. Farrell*, 449 F.3d at 494 (Where a book was indisputably pornographic, "[n]o reasonable parole officer could have doubted that [defendant's] possession of [the book] violated the terms of his parole agreement, and therefore there was no danger that . . . enforcement would be arbitrary."); *Expressions Hair Design*, 137 S. Ct. at 1152 ("Although the merchants argue that 'no one can seem to put a finger on just how far the law sweeps,' . . . it is at least clear that [the challenged statute] proscribes their intended speech. Accordingly, the law is not vague as applied to them.").

"What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 285, 306 (2008). Under the gravity knife statute and the procedures used to enforce it, there is indeterminacy regarding what a gravity knife statute actually is. Is it a folding knife that opens and locks into place on the first try? The second? Any number of tries? The gravity knife statute

and the wrist flick test do not allow Cracco to discern whether his intended conduct will be criminally prohibited. Criminal culpability here is tied to a vague definition and functional test that could have different outcomes depending on who is performing it and when. The gravity knife statute presents a high risk of arbitrary and discriminatory enforcement in the context of Cracco's challenge.

The Court recognizes that the District Attorney must have discretion to prosecute or not to prosecute criminal matters. The combination here, however, of a statute that does not specify how Cracco can identify a gravity knife and a practice of prosecuting possession of gravity knives in an unclear and inconsistent manner provides police and prosecutors "virtually unlimited" or "unfettered" discretion to enforce the gravity knife statute. *See Smith*, 985 F. Supp. 2d at 589. Under such circumstances, and within the lens of Cracco's past prosecution and intended future conduct, the gravity knife statute is unconstitutionally vague. *See id.*

## CONCLUSION

The Court GRANTS Plaintiff's and DENIES Defendant's motion for summary judgment. The Clerk of Court is directed to close the motions at Dkts. 62 and 69, enter judgment in favor of Plaintiff and against Defendant on the Ninth Cause of Action, and close the case.

Dated: New York, New York                          SO ORDERED
      March 27, 2019

                                                PAUL A. CROTTY
                                                United States District Judge